UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

YOKO ONO LENNON, SEAN ONO LENNON,          08 CV 3813 (SHS)(FM)
JULIAN LENNON, and EMI BLACKWOOD
MUSIC, INC.,

              Plaintiffs,

     -against-

PREMISE MEDIA CORPORATION, L.P., C&S
PRODUCTION L.P. *d/b/a* RAMPANT FILMS,
PREMISE MEDIA DISTRIBUTION L.P. AND
ROCKY MONTAIN PICTURES, INC.,

              Defendants.
-------------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

SHUKAT ARROW HAFER WEBER & HERBSMAN, L.L.P.
*Attorneys for Plaintiffs*
111 West 57th Street, Suite 1120
New York, NY 10019
(212) 245-4580

TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................3

BACKGROUND FACTS ........................................................................4

THE MOVIE ...........................................................................................5

DEFENDANTS' FAILURE TO OBTAIN A LICENSE.....................................6

ARGUMENT.........................................................................................8


POINT I :

 PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION    ENJOINING
FURTHER COPYRIGHT INFRINGEMENT.............................................8

  i.  Standard for Preliminary Injunction ......................................8

  ii  Plaintiffs Are Likely to Succeed on the Merits   of Their Claim of
    Copyright Infringement .................................................10

  iii  Plaintiffs Will Suffer Irreparable Harm In the Absense of a
    Preliminary Injunction..................................................10

  iv.  The Balance of Hardships Weighs Heavily in Plaintiffs' Favor ............14


POINT II:

There Is No Fair Use Defense To Defendants' Publication of The Movie ...................16

  i.  Purpose and Character of the Use.......................................17

  ii.  Nature of the Copyrighted Work.......................................19

  iii.  Amount and Substantiality of the Portion Used...........................20

  iv.  Effect on the Market .................................................20

POINT III:

PLAINTIFFS' REQUEST FOR EXPEDITED DISCOVERY SHOULD BE GRANTED..........22

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

### Cases

A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1016 (9th Cir. 2001) .................... 21

Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1255 (3d Cir. 1983) ........................................................................................................................ 14

Arrow v. United Ind. v. Hugh Richards, Inc., 678 F.2d 410, 216 U.S.P.Q. 940 (2d Cir. 1982) ................................................................................................................... 15

Brown v. It's Entm't, Inc., 34 F. Supp. 2d 854 (E.D.N.Y. 1999) .................................... 16

Byrne v. British Broadcasting Corp., 132 F. Supp.2d 229, 234 (S.D.N.Y. 2001) ...................................................................................................................... 17,18,19

Cadence Design Systems, Inc. v. Avant! Corp. 125 F.3d 824 (9th Cir. 1997) ............. 15

Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 586, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994). ............................................................................................. 19, 20, 21

Castle Rock Entm't v. Carol Pub. Group, Inc., 150 F.3d 132, 142 (2d Cir. 1998) ...................................................................................................................... 17,19, 20

Cherry River Music Co. v. Simitar Entertainment, Inc., 38 F. Supp. 2d 310, 322 (S.D.N.Y. 1999) .......................................................................................... 13,16

Citibank v. Nyland (CF8) Ltd., 839 F.2d 93, 97 (2d Cir. 1988) ..................................... 14

Citibank, N.A. v. Citytrust, 756 F.2d 273 (2d Cir. 1985) ................................................ 11

Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 924 F. Supp. 1559, 1574 (S.D. Cal. 1996) ........................................................................................... 15

Dynamic Solutions, Inc. v. Planning & Control, Inc., 646 F. Supp. 1329, 1337 (S.D.N.Y. 1986) .................................................................................................... 12

Ellsworth Assocs., Inc. v. United States, 917 F. Supp. 841, 844 (D.C. 1996) ............. 23

EMI Records Limited and Capitol Records, LLC v. Premise Media Corporation, L.P., C&S Production L.P. d/b/a Rampant Films, Premise Media Distribution, L.P., and Rocky Mountain Pictures, Inc ......................................................................... 3

Energetics Sys. Corp. v. Advanced Cerametrics, Inc., No. 95-7956, 1996 WL 130991, at *2(E.D. Pa. Mar. 15, 1996) .................................................................................. 23

Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991) .................. 10

Fisher-Price, Inc., v. Well-Made Toy Manufacturing Corp., 25 F.3d 119 (2d Cir. 1994) ................................................................................................................................... 11

Georgia Television Co. v. TV News Clips of Atlanta. Inc., 718 F. Supp. 939, 949 (N. D. Ga. 1989) ........................................................................................................... 16

Hamil America, Inc. v. GFI, 193 F.3d 92, 98 (2d Cir. 1999) ........................................ 10

Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953) ............. 11

Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 566, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) ................................................................................ 21

Hasbro Bradley, Inc. v. Sparkel Toys, Inc., 780 F.2d 189, 192 (2d Cir. 1985) ............. 11

Ice Music v. Schuler, 95 Civ. 4669 (KMW), 1995 WL 498781 (S.D.N.Y. Aug. 17, 1995) ....................................................................................................................... 16

Infinity Broadcast Corp. v. Kirkwood, 150 F.3d 104, 107 (2d Cir.1998) ..................... 16

International Brotherhood of Teamsters v. Local Union No. 810, 19 F.3d 786 (2d Cir. 1994) ......................................................................................................................... 8

Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) ............. 10

Jacobson & Co. v. Armstrong Cork Co., 548 F.2d 438 (2d Cir. 1977) .......................... 14

Jolly v. Coughlin, 76 F.3d 468, 474 (2d Cir. 1996) ....................................................... 9

Lish v. Harper's Magazine Found., 807 F.Supp. 1090, 1100-01 (S.D.N.Y.1992) ....... 18

MCA, Inc. v. Wilson, 677 F.2d 180 (2d Cir. 1981) ........................................................ 21

Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavich, Inc., 312 F.3d 94 (2d Cir. 2002) ........................................................................................................................ 8

Paco Rabann Parfums, S.A. v. Norco Enterprises, Inc., 680 F.2d  891, 217 U.S.P.Q. 105 (2d Cir. 1982) ................................................................................................ 15

Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 908-09 (2d Cir. 1990) ............... 11

Rosenfeld v. W.B. Saunders, 728 F. Supp. at 246-247 ..................................... 11

Roy Export Co. v. Columbia Broadcasting Sys., Inc. 503 F. Supp. 1137, 1144
   (S.D.N.Y. 1980)........................................................................................... 17,19

Salinger v. Random House, Inc. 811 F.2d 90, 99 (2d Cir.), cert. denied, 484 U.S. 890
   (1987) .............................................................................................................. 21

Sandoval v. New Line Cinema Corp., 973 F. Supp. 409 (S.D.N.Y. 1997) (Stein, J.)
   ..................................................................................................................... 20,22

Schumann v. Albuquerque Corp., 664 F. Supp. 473 477 (D.N.M. 1987) .................... 19

Sheehan v. Purolator Courier Corp., 676 F.2d 877 (2d Cir. 1981)...................................... 9

Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 451, 104 S.Ct.
   774, 793, 78 L.Ed.2d 574 (1984).................................................................... 21

Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 33-34 (2d Cir.
   1995) ................................................................................................................. 9

Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 972 (2d Cir. 1989) ........... 8

Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., 155 F. Supp. 2d 1, 28
   (S.D.N.Y. 2001)................................................................................................ 12

Twentieth Century Fox Film Corp. v. Mow Trading Corp., 749 F. Supp. 473, 475
   (S.D.N.Y. 1990)................................................................................................ 23

Woods v. Universal City Studios, Inc., 920 F.Supp. 62, 65 (S.D.N.Y. 1996)..................
   ...........................................................................................13, 14,15, 16,20,22

Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 109 (2d Cir. 2001)........................... 10

## Statutes

17 U.S.C. § 106 ......................................................................................................10

17 U.S.C. § 107 ................................................................................................. 16,17

17 U.S.C. § 501(a)..................................................................................................10

17 U.S.C.A. Sec. 410(c) .................................................................... 10

Copyright Act Section 106 ............................................................... 10

Fed.R.Civ.P. 30(b) & 34(b) ............................................................. 23

Fed.R.Civ.P. 26(d) ........................................................................... 23

Fed.R.Civ.P. 65. .................................................................................. 2

Rule 65(a) ............................................................................................ 8

**Treatises**

Nimmer On Copyright § 8.02 [A] (2000) ...................................... 10

Patry on Copyright, Vol. 4, 10:13 ................................................ 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

YOKO ONO LENNON, SEAN ONO LENNON,            08 CV 3813 (SHS)(FM)
JULIAN LENNON, and EMI BLACKWOOD
MUSIC, INC.

               Plaintiff,

   -against-

PREMISE MEDIA CORPORATION, L.P., C&S
PRODUCTION L.P. *d/b/a* RAMPANT FILMS,
AND PREMISE MEDIA DISTRIBUTION L.P.

               Defendants.
-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

Plaintiffs, Yoko Ono Lennon, Sean Ono Lennon, Julian Lennon and EMI Blackwood, Inc. ("Plaintiffs"), by their attorneys, Shukat Arrow Hafer Weber & Herbsman, LLP, respectfully submit this Memorandum of Law in support of their motion for a temporary restraining order and preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining Defendants Premise Media Corporation, L.P., C&S Production L.P. *d/b/a* Rampant Films, and Premise Media Distribution L.P. (hereinafter "Defendants") from infringing the copyright in the musical composition, "Imagine". Plaintiffs also seek an order for expedited discovery necessary for the preliminary injunction.[1]

---

[1] On April 22, 2008 EMI Records Limited and Capitol Records, LLC filed an action in the Supreme Court of the State of New York against the Defendants for infringement of their common law copyright in the sound recording of "Imagine". _EMI Records Limited and Capitol Records, LLC v._

## PRELIMINARY STATEMENT

On April 22, 2008 Plaintiffs filed this action alleging, *inter alia*, copyright infringement in the musical composition "Imagine" ("Imagine" or "the Song") reproduced in Defendants' movie "Expelled: No Intelligence Allowed" (the "Movie"). At no time did Defendants seek or obtain any right, license or permission of any kind to use the Song.

Not only did Defendants prominently feature John Lennon's music, but they reproduced lyrics from "Imagine" as a "subtitle," both totally gratuitous uses of Plaintiffs' copyrighted material.[2]

Plaintiffs move this Court for immediate relief to enjoin Defendants Premise Media Corporation, L.P., C&S Production L.P. d/b/a Rampant Films, Premise Media Distribution L.P. and Rocky Mountain Pictures, Inc. (collectively, "Defendants") from infringing Plaintiffs' copyright in one of the most important songs in the annals modern music history, John Lennon's immortal anthem "Imagine".

Because Plaintiffs will suffer irreparable harm for which no other adequate remedy exists, because the balancing of hardships weighs strongly in favor of issuing this relief, Plaintiffs request a preliminary injunction: (i) prohibiting Defendants from further copyright infringement; (ii) directing Defendants to remove all of Plaintiff's copyrighted material in connection with the song "Imagine" that presently appears in the Movie, marketing materials, promotional materials and

---

Premise Media Corporation, L.P., C&S Production L.P. d/b/a Rampant Films, Premise Media Distribution, L.P., and Rocky Mountain Pictures, Inc. Index No. 601209/08. The Plaintiffs therein have also filed an order to show cause for a preliminary injunction and the case has been assigned to J.S.C Ira Gammerman. *See* Declaration of Dorothy M. Weber dated April 30, 2008 ("Weber Decl.") Exhibit C. (the "EMI Records Action").

the like; (iii) directing Defendants to return immediately to Plaintiffs all materials used in connection with their unauthorized use of the Song in the Movie and (iv) recall or edit all copies of the Movie presently out in distribution.

Plaintiffs also request a temporary restraining order enjoining Defendants from expanding its infringing activities by increasing distribution of the Movie to additional theaters other than those in which it has currently been released.

To expedite these proceedings and to minimize the continuing irreparable harm caused by Defendants ongoing copyright infringement, Plaintiffs also respectfully request an order granting certain narrowly drawn, expedited discovery in order to permit Plaintiffs to determine the full nature and extent of Defendants' improper and continuing infringing activities.

## BACKGROUND FACTS

John Lennon was a musician, artist and political activist whose status as an artistic genius and musical icon of the twentieth century is irrefutable.  His achievements as a musician, writer, artist and humanitarian are legendary and were cut short by his tragic and shocking assassination in 1980.The distinctive artistic brilliance that has come to be associated with John Lennon's music is of inestimable value to his heirs.

"Imagine" appeared on John Lennon's album entitled "Imagine."  The December 4, 2004 issue of Rolling Stone magazine entitled the "500 Greatest Songs of all Time" ranked the Song at number three (3).  Imagine has sold multi-millions

---

[2] Defendants have also infringed the sound recording, which is the subject of the EMI Records Action.

of copies -- both singles and albums -- worldwide since its release in 1971, and is one of the most recognizable songs in the world today.

Plaintiffs' ability to grant licenses for certain uses or more importantly, to <u>refrain</u> from issuing other licenses is absolutely critical to the preservation of Lennon's legacy.  As set forth in the accompanying affidavits of Yoko Ono Lennon and representatives of EMI Blackwood Music, Inc. (the exclusive administrator of the publishing rights of the John Lennon catalog) licenses for "Imagine" are granted very judiciously.

Through the promotion of charitable and educational events, such as the John Lennon Educational Tour Bus for Children and the Imagine Peace Tower, and other marketing and licensing activities, the legacy of John Lennon continues to be preserved.

As a result of publicity, advertising and marketing efforts with respect to Imagine, it has acquired secondary meaning as Lennon's "signature" song. Members of the general public are aware and associate "Imagine" with Plaintiffs and it is synonymous with John Lennon.

## **THE MOVIE**

The Plaintiffs learned of the Movie for the first time on or about April 15, 2008 when press reports were posted on Internet sites stating (incorrectly) that Plaintiffs had licensed or otherwise authorized the use of the Song in a motion picture entitled "Expelled: No Intelligence Allowed" (the "Movie").  Defendants are the producers, distributors or otherwise involved with and profit from the Movie.

5

Believing that Plaintiffs had licensed the use, Internet "bloggers" immediately began accusing Mrs. Lennon of "selling out" by permitting the use in the Movie.

At no time did any of the Defendants seek authorization or approval, nor have Plaintiffs provided authorization or approval, for copying of the Song for use in the Movie. *See* accompanying Affidavits of Yoko Ono Lennon and Darnetha L. M'Baye, sworn to April 29, 2008.

The Movie prominently featured the use of John Lennon's original recording, reproducing the music and lyrics and printing subtitles of a portion of the lyrics on the screen. The Movie also contains other musical compositions, including the musical compositions entitled "All Along The Watchtower" written by Bob Dylan, "Spirit In The Sky" written and performed by Norman Greenbaum "All These Things That I've Done" written by Brandon Flower, Dave Brent Keuning, Mark August Stoermer and Ronnie Vannucci, Jr. and performed by the artist "The Killers" and "Personal Jesus" written by Martin Lee Gore and performed by the artist "Depeche Mode." On information and belief, the filmmakers obtained synchronization licenses for the use of many, if not most of the musical compositions and masters, but did not seek or obtain permission for use of "Imagine."

## DEFENDANTS' FAILURE TO OBTAIN A LICENSE

The facts pertinent to this motion cannot be disputed. In 1971, John Lennon released Imagine to widespread critical and public acclaim.

The Movie, released for the first time on April 18, 2008, is a critique of the scientific establishment's adherence to Darwinian evolution theory and rejection of

"Intelligence Design," a competing theory which posits that aspects of the universe are best explained by an "intelligent" cause. Ben Stein, the Movie's narrator, references "Imagine" and approximately 15 to 20 seconds of "Imagine" is played. A portion of the lyrics to "Imagine" is also printed on the screen. The credits at the end of the Movie acknowledged ownership and credit information for "Imagine".

Defendants have admitted in several statements, to the press, that they did not seek permission to use "Imagine" on the grounds that their use is a "fair use". The facts, however, are contrary. The use of "Imagine" is prominently featured, and no less in duration, than many clips that are licensed and paid for by legitimate film producers every year. Indeed, Defendants licensed and paid fees for other copyrighted materials reproduced in the Movie.

Defendants' unilateral decision to include "Imagine" without seeking the appropriate license was a calculated decision to usurp Plaintiffs' exclusive rights which they now cloak in the guise of "fair use". If these Defendants, or indeed any potential licensee, were free to misappropriate Plaintiffs' intellectual property rights in this manner, the exclusive rights of copyright owners would be eviscerated.

It is respectfully submitted that for these reasons, and the reasons set forth in the accompanying Affidavits and Declaration, the Court should enter the temporary restraining order and preliminary injunctions.

## ARGUMENT

## POINT I

## PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ENJOINING FURTHER COPYRIGHT INFRINGEMENT[3]

i.    **Standard for Preliminary Injunction**

Under the law of the Second Circuit, a party seeking preliminary injunctive relief pursuant to Rule 65 (a) must establish the following elements: (1) irreparable harm; and (2) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation, and (b) a balance of hardships tipping decidedly in the moving parties favor.

See <u>Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavich, Inc.</u>, 312 F.3d 94 (2d Cir. 2002); <u>International Brotherhood of Teamsters v. Local Union No. 810</u>, 19 F.3d 786 (2d Cir. 1994); <u>Tucker Anthony Realty Corp. v. Schlesinger</u>, 888 F.2d 969, 972 (2d Cir. 1989). *See also* <u>Woods v. Universal City Studios</u>, 920 F. Supp. 62, 64 (S.D.N.Y. 1996) (granting a preliminary injunction against theatrical motion picture enjoining copyright infringement).

To the extent that this motion seeks relief in the form of a mandatory preliminary injunction (i.e. a recall or edit the existing copies of the Movie)[4], where (1) the injunction sought will alter, rather than maintain, the *status quo*; or (2) the injunction sought will provide the movant with substantially all the relief sought,

---

[3] Plaintiffs seek preliminary relief pursuant to this order to show cause on the basis of their copyright infringement claim. Plaintiffs have also stated a valid claim pursuant to Section 43(a) of the Lanham Act, upon which Plaintiffs are also likely to prevail on the merits thereof. Accordingly, Plaintiffs specifically reserve any and all rights to proceed in connection with that claim as well.

and that relief cannot be undone even if the defendant prevails at a trial on the merits, the moving party must meet the standard of 'clear' or 'substantial' showing of a likelihood of success. *See, e.g* <u>Jolly v. Coughlin</u>, 76 F.3d 468, 474 (2d Cir. 1996) (*quoting* <u>Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.</u>, 60 F.3d 27, 33-34 (2d Cir. 1995)).

It is respectfully submitted that the Plaintiffs have indeed shown a clear and substantial likelihood of success on the merits is set forth herein.

The decision on whether or not to grant injunctive relief is within the vast discretion of the Court. *See, e.g.* <u>LeBlanc-Sternberg v. Fletcher</u>, 67 F.3d 412 (2d Cir. 1995). Pursuant to that discretion, a Court exercising its equitable powers may provide whatever relief is necessary and proper to do complete justice under the circumstances between the parties. *See* <u>Chambers v. NASCO</u>, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 2132-33, 115 L.Ed.2d 27 (1991); <u>Sheehan v. Purolator Courier Corp.</u>, 676 F.2d 877 (2d Cir. 1981).

In the absence of preliminary injunctive relief granted by this Court, Plaintiffs will continue to be irreparably harmed by Defendants' unauthorized use of "Imagine" in connection with the marketing and distribution of the Movie. Plaintiffs satisfy all three prongs of this test.

---

[4] The Temporary Restraining Order requested by Plaintiffs, on the other hand, seeks specifically to maintain the *status quo*.

**ii.    Plaintiffs Are Likely to Succeed on the Merits
of Their Claim of Copyright Infringement**

To establish a *prima facie* claim of copyright infringement, Plaintiffs must

demonstrate: (1) that they own a valid copyright interest in the work being

infringed, and that (2) Defendants violated at least one of Plaintiffs' exclusive rights

in the work under 17 U.S.C. § 106. *See* 17 U.S.C. § 501(a); Yurman Design, Inc. v.

PAJ, Inc., 262 F.3d 101, 109 (2d Cir. 2001) (citation omitted); Hamil America, Inc.

v. GFI, 193 F.3d 92, 98 (2d Cir. 1999). *See also* Feist Publications, Inc. v. Rural Tel.

Serv. Co., 499 U.S. 340, 361 (1991) (requiring showing of "(1) ownership of a valid

copyright, and (2) copying of constituent elements of the work that are original");

Melville Nimmer and David Nimmer, 2 Nimmer on Copyright § 8.02 [A] (2000)

("'copying' is 'shorthand for the infringing of any of the copyright owner's five

exclusive rights' set forth in Section 106 of the Copyright Act.").

A certificate of registration from United States Register of Copyrights is

*prima facie* evidence of ownership of valid copyright. 17 U.S.C.A. Sec. 410(c); Hamil

America, Inc., 193 F.3d at 98 (alleged infringer bears the burden of rebutting

presumption of copyright validity). Here, Plaintiffs possess a valid Certificate of

Copyright Registration and Renewal Copyright Registration with respect to the

Song - *prima facie* evidence of Plaintiffs' ownership of valid copyrights.

**iii.    Plaintiffs Will Suffer Irreparable Harm
In the Absence of a Preliminary Injunction**

Irreparable harm means injury for which a monetary award cannot be

adequate compensation. Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70,

72 (2d Cir. 1979). A showing of irreparable harm is usually considered to be the most

important factor in the consideration of whether or not to grant a preliminary injunction. Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 908-09 (2d Cir. 1990); Citibank, N.A. v. Citytrust, 756 F.2d 273, 275 (2d Cir. 1985).

As the Second Circuit noted in Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953):

> To justify a temporary injunction it is not necessary that the plaintiff's
> right to a final decision, after a trial, be absolutely certain, wholly
> without doubt…it will ordinarily be enough that the plaintiff
> has raised questions going to the merits so serious, substantial,
> difficult and doubtful, as to make them a fair ground for litigation
> and thus for more deliberate investigation.

Where preliminary injunctive relief is sought to enjoin the infringement of a plaintiff's rights under the Copyright Act, irreparable harm is generally presumed once the plaintiff establishes a likelihood of success on the merits. *See* ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 64 (2d Cir. 1996) ("[W]hen a copyright plaintiff makes out a prima facie showing of infringement, irreparable harm may be presumed") (citation omitted); Fisher-Price, Inc., v. Well-Made Toy Manufacturing Corp., 25 F.3d 119 (2d Cir. 1994) (irreparable harm presumed when infringed copyright creates confusion in marketplace); Hasbro Bradley, Inc. v. Sparkel Toys, Inc., 780 F.2d 189, 192 (2d Cir. 1985) ("irreparable harm may ordinarily be presumed from copyright infringement.") (citations omitted). As explained by the court in Rosenfeld v. W.B. Saunders, 728 F. Supp. 236, 246-247 (S.D.N.Y. 1990), *aff'd* 923 F.2d 845 (2d Cir. 1990):

> In copyright infringement cases, the standard of issuance of injunctive
> relief is less rigorous that the traditional inquiry into irreparable
> harm and likelihood of success on the merits. A copyright plaintiff
> need not set forth a detailed showing of irreparable harm to obtain a
> preliminary injunction. Rather, the general rule in the Second Circuit

> is that a prima facie case of copyright infringement raises a
> presumption of irreparable harm.

(citations omitted.)

Even in the absence of such a presumption, Plaintiffs have amply demonstrated that irreparable harm already has occurred and, in the absence of an injunction issued by this Court, will continue to flow from Defendants' unauthorized publication of the Movie. Irreparable harm is harm "which is actual and imminent, not remote and speculative, and may only be demonstrated where the amount of damages will be largely indeterminate, or not precisely calculable in monetary terms." <u>Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.</u>, 155 F. Supp. 2d 1, 27-28 (S.D.N.Y. 2001), <em>aff'd in part</em> 227 F.3d 253 (2d Cir. 2002). There can be no question about the immediacy of the harm to Plaintiffs. The negative press to the Plaintiffs, including charges of Mrs. Lennon "selling out" John Lennon's legacy, amply demonstrates the irreparable harm being done to Plaintiffs. Defendants' use tarnishes Plaintiffs' reputation and undermines the integrity of Plaintiffs' licensing activities, both in the music industry and others.

Defendants' infringing activity wrongfully deprives Plaintiffs of their leverage as the lawful and exclusive licensor of the Song. In <u>Dynamic Solutions, Inc. v. Planning & Control, Inc.</u>, 646 F. Supp. 1329 (S.D.N.Y. 1986), a computer software company moved for a preliminary injunction enjoining defendant consulting company from further use of the plaintiff's software programs. The court issued a preliminary injunction upon finding that that defendant's continued unauthorized use of plaintiff's copyrighted computer programs "satisfies the irreparable harm requirement even without the benefit of this presumption." <u>Id</u>. at 1337. Specifically,

12

the court found that the defendant's infringing activity deprived the Plaintiff of its leverage as sole lawful licensor:

> Defendants contend that DSI has brought this evil upon itself by seeking to terminate PCI's right to use the disputed software. This argument misses the point. Despite the complications arising from these parties' prior dealings, DSI seeks to enforce essentially the same rights that many copyright claimants pray courts to enforce: the right to use the exclusivity of its copyrights as leverage in negotiations with one who, but for lawful license, would be barred from using that work. *The monetary worth of that leverage in such negotiations would be difficult, at best, to determine. That is sufficient to satisfy the irreparable harm requirement.*

Id. at 1337 (emphasis added).

By copying and offering Plaintiff's Song in theatrical release and in any unauthorized format such as a DVD release, Defendants are causing Plaintiffs irreparable harm that can only be cured by the issuance of a preliminary injunction.

To ensure that Plaintiffs are not harmed by Defendants' conduct, this Court should require Defendants to edit the Infringing Movie to remove the infringing material or recall all existing copies. Where the Plaintiffs have established a strong likelihood of success, the Court may issue a recall order to ensure that Plaintiffs are not deprived of effective relief. Cherry River Music Co. v. Simitar Entertainment, Inc., 38 F. Supp. 2d 310, 324 (S.D.N.Y. 1999); Woods v. Universal City Studios, Inc., 920 F.Supp. 62, 65 (S.D.N.Y. 1996). This is particularly appropriate here where, as in Cherry River Music, the Defendants have "sailed in[to] harm's way" by refusing to cease shipping their videos after receiving a cease and desist letter from New Line. Cherry River, 38 F. Supp.2d at 323.

It is critical that the temporary restraining order and preliminary injunction

issue immediately so that no further damage occur and the *status quo* may be preserved. *See* <u>Cheever v. Academy Chicago, Ltd.</u>, 690 F. Supp. 281 (S.D.N.Y. 1988).

**iv.     The Balance of Hardships Weighs**
**Heavily in Plaintiffs' Favor**

As set forth more fully below, the balance of the hardships tips decidedly in favor of the Plaintiffs. *See* <u>Citibank v. Nyland (CF8) Ltd.</u>, 839 F.2d 93, 97 (2d Cir. 1988); <u>Jacobson & Co., Inc. v. Armstrong Cork Co.</u>, 548 F.2d 438, 445 (2d Cir. 1977).

Defendants have the ability to seek compensatory, monetary damages. If the preliminary injunction issues, the inconvenience to Defendants would be primarily economic, in the form of delayed profits from the anticipated sales. This threat of economic loss -- even if significant in value -- does not warrant tipping the balance in Defendants' favor and is a necessary consequence of protecting Plaintiffs' rights. *See* <u>Woods</u>, 920 F. Supp. at 65 ("Universal argues that it will suffer considerable financial loss if a preliminary injunction is granted. Copyright infringement can be expensive. The Copyright Law does not condone a practice of 'infringe now, pay later.' ") (citation omitted); <u>Apple Computer, Inc. v. Franklin Computer Corp.</u>, 714 F.2d 1240, 1255 (3d Cir. 1983) (a preliminary injunction must issue even where it has a "devastating effect" on an infringer's business; otherwise, "a knowing infringer would be permitted to construct its business around its infringement, a result we cannot condone."). Given the probable outcome of this action, any loss Defendants may experience as a result of the preliminary injunction Plaintiffs seek is a loss which the law justifiably may call upon it to bear. Defendants made a calculated decision to license and pay for certain uses and, likewise, freely chose to simply

usurp "Imagine".

If Plaintiffs are right, without the injunction, protected and valuable rights of the Plaintiffs will continue to be infringed and full redress rendered virtually impossible - this is the clearest form of irreparable harm. *See*, <u>Arrow v. United Ind. v. Hugh Richards, Inc.</u>, 678 F.2d 410, 216 U.S.P.Q. 940 (2d Cir. 1982), <u>Paco Rabanne Parfums, S.A. v. Norco Enterprises, Inc.</u>, 680 F.2d 891, 217 U.S.P.Q. 105 (2d Cir. 1982); <u>Woods v. Universal City Studios, Inc.</u>, 920 F.Supp. 62, 65 (S.D.N.Y. 1996).

The irreparable injury that Plaintiffs will suffer should the marketing and publication Defendants' Movie continue far outweighs any hardship to Defendants should the injunction sought by Plaintiffs issue.

The inability of these infringing Defendants to profit from the sale of an infringing work is not a hardship that will defeat a preliminary injunction. <u>Woods v. Universal City Studios, Inc.</u>, 920 F. Supp. 62, 65 (S.D.N.Y. 1996) (granting preliminary injunction against movie studio despite hardship to it caused by delayed release of major motion picture); <u>Cadence Design Systems, Inc. v. Avant! Corp.</u> 125 F.3d 824 (9th Cir. 1997) (reversing denial of preliminary injunction even though injunction could seriously jeopardize defendant's ability to survive); <u>Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.</u>, 924 F. Supp. 1559, 1574 (S.D. Cal. 1996), *aff'd*, 109 F.3d 1394 (9th Cir. 1997) (granting preliminary injunction even though "[d]efendant may lose some profits and goodwill with distributors"); <u>Georgia Television Co. v. TV News Clips of Atlanta. Inc.</u>, 718 F. Supp. 939, 949 (N.

D. Ga. 1989) (hardships favored plaintiff even though injunction could destroy defendant's business).

Plaintiffs' motion for a preliminary injunction should therefore be granted to prevent Defendants from infringing Plaintiffs' copyright. *See* <u>Woods v. Universal City Studios, Inc.</u>, 920 F.Supp. 62, 65 (S.D.N.Y. 1996); <u>Ice Music v. Schuler</u>, 1995 WL 498781 (S.D.N.Y. Aug. 17, 1995) (granting preliminary injunction enjoining defendant from manufacturing and distributing an album infringing plaintiff's copyright in a musical composition); <u>Brown v. It's Entm't, Inc.</u>, 34 F. Supp. 2d 854 (E.D.N.Y. 1999) (enjoining defendant from exploiting costumes which infringed plaintiffs rights in cartoon characters); <u>Cherry River Music Co. v. Simitar Entertainment, Inc.</u>, 38 F. Supp. 2d 310, 322 (S.D.N.Y. 1999) (enjoining defendant from distributing infringing album).

## **POINT II**

### **There Is No Fair Use Defense To Defendants' Publication of The Movie[5]**

Defendants' use of "Imagine" does not survive analysis under the four statutory Fair Use factors in any event: (1) the purpose of the use; (2) the nature of the copyrighted work; (3) amount and substantiality of the portion used; and (4) the effect on the market. 17 U.S.C. Sec 107.

---

[5] While the burden of proving "fair use" pursuant to 17 U.S.C. § 107 rests squarely on the alleged infringer, *see* <u>Infinity Broadcast Corp. v. Kirkwood</u>, 150 F.3d 104, 107 (2d Cir.1998), Plaintiffs address this issue herein as the Defendants have publicly asserted a "fair use" defense in the media since this lawsuit was commenced one (1) week ago. Weber Decl. Exhibit B.

i.    **Purpose and Character of the Use**

The first factor set forth in the statute to consider is "the purpose and character of the [allegedly infringing] use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1).

As noted by leading fair use scholar William Patry, "the first factor directs the courts to examine whether the particular use made of copyrighted material was necessary to the asserted purpose of criticism, comment, etc., or instead, whether defendant's purpose could have been accomplished by taking nonprotectible material such as facts, ideas, or less expression." 4 Patry on Copyright, 10:13 (emphasis added). *See also* Roy Export Co. v. Columbia Broadcasting System, Inc., 672 F.2d 1095, 1100 (2d Cir. 1982).

Clearly, use of "Imagine" was not necessary to further any debate on theories of evolution. Indeed, nothing in the Song itself relates to the specific focus of the Movie: a dispute over the origin of life and the theory of Intelligent Design. The Filmmakers use of the Song amounts to nothing more than "set dressing" – it was clearly not necessary to use Imagine. There was absolutely no reason whatsoever to print Imagines' lyrics.

The two most common inquiries in analyses of this factor are whether the use was for a commercial purpose and the extent to which the use was "transformative," i.e., "whether the allegedly infringing work 'merely supersedes' the original work 'or instead adds something new, with a further purpose or different character, altering the first with new ... meaning [ ] or message.' " Castle Rock Entm't v. Carol Pub. Group, Inc., 150 F.3d 132, 142 (2d Cir. 1998)(citations omitted); *see also* Byrne v.

British Broadcasting Corp., 132 F. Supp.2d 229, 234 (S.D.N.Y. 2001)(Stein, J.). The extent to which the use is transformative is "the more critical inquiry." Id.

Defendants are entities engaged in the business of film production for the purpose of making money. The fact that they characterize their movie as a "documentary" is of no moment. Defendants' use of the Song was not "non-commercial," and was instead "for nonprofit educational purposes." The question under factor one is the purpose and character of the use, not of the alleged infringer." Lish v. Harper's Magazine Found., 807 F.Supp. 1090, 1100-01 (S.D.N.Y.1992).

Clearly, not all unlicensed uses of copyrighted material for inclusion in broadcasts or films that present material of interest to the public are protected by the fair use doctrine, even if they are labeled as such by Defendants. As this Court noted in Byrne, 132 F. Supp.2d at 234:

> If the purpose of the use was to entertain, rather than inform or if equally informative non-infringing alternatives were available, then the first fair use factor tips in favor of the plaintiff.

Id. (citations omitted).

The fact that the narrator, Ben Stein, might wish to make a reference to John Lennon or his music does not make use of the Song either necessary or transformative.

In denying the BBC's motion for summary judgment, this Court held that the use was not *per se* transformative simply because it was part of a documentary about a serious political subject.  "[I]f equally informative non-infringing alternatives were available, then the first fair use factor tips towards plaintiff."

18

<u>Byrne</u> at 234 (<i>citing</i> <u>Schumann v. Albuquerque Corp.</u>, 664 F. Supp. 473 477 (D.N.M. 1987) and <u>Roy Export Co. v. Columbia Broadcasting Sys., Inc.</u> 503 F. Supp. 1137, 1144 (S.D.N.Y. 1980))(emphasis added.)  Rejecting the claim that the use was inherently transformative, the court held that a jury might find the use of the song "wholly unnecessary" to reporting on the Irish-American media, that the song "did not directly pertain to the topic of the story," that recording it was not "fortuitous, but a calculated attempt to obtain entertaining footage only tenuously related to [BBC's] news reporting purpose," and most significantly, that "there were equally informative non-infringing alternatives available" such as "on air statements of the radio show's hosts and guests." <u>Id</u>.

The use of the Song was plainly to entertain, rather than to inform. The existence of equally informative non-infringing alternatives are relevant to this analysis as well. <u>Id</u>. p. 235.

ii.    <u>**Nature of the Copyrighted Work**</u>

The second factor set forth in the statute is "the nature of the copyrighted work." It cannot be disputed that "Imagine" is a creative work, and, thus, the type of work at "the core" of copyright law's protection. <i>See</i> <u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 586, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994); <u>Byrne</u>, 132 F. Supp.2d at 235. Where the allegedly infringing use is minimally transformative, however, the creative nature of a copyrighted work remains significant. <u>Castle Rock Entm't</u>, 150 F.3d at 144.

19

iii.     **Amount and Substantiality of the Portion Used**

Courts must examine the third fair use factor-"the amount and substantiality of the portion [of the copyrighted work] used in relation to the copyrighted work as a whole"-in context. <u>Castle Rock Entm't</u>, 150 F.3d at 144. "The inquiry must focus upon whether '[t]he extent of ... copying' is consistent with or more than necessary to further 'the purpose and character of the use.' " <u>Id</u>. (*quoting* <u>Campbell</u>, 510 U.S. at 587-87, 114 S.Ct. 1164).

Defendants use approximately 15-seconds of the Song, with the accompanying lyrics printed out on the screen. The Song "Imagine" is immediately recognizable by its title alone, much less from the first note played. For this particular work, the use of it in the Movie is far more than a "de minimis" use. *See* <u>Woods v. Universal City Studios, Inc.</u>, 920 F.Supp. 62 (S.D.N.Y. 1996);  *see also, generally,* <u>Sandoval v. New Line Cinema</u>, 147 F.3d 215, 217 (2d Cir.1998).

iv.     **Effect on the Market**

The fourth factor is the effect of the use upon the potential market for or value of the copyrighted work.  When evaluating this factor the court must "consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact on

the potential market" for the original or derivative works. <u>Campbell</u>, 510 U.S. at 590, 114 S.Ct. 1164.[6]

This factor requires courts to consider not only the extent of market harm caused by the specific use in question, but the effect that would occur if that type of use became widespread. *See* <u>Harper & Row Publishers, Inc. v. Nation Enters.</u>, 471 U.S. 539, 568, 105 S.Ct. 2218, 2234, 85 L.Ed.2d 588 (1985); <u>Sony v. Universal City Studios, Inc.</u>, 464 U.S. 417, 451, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). Here, the Defendants' instantly recognizable use of the Song within the Movie supports that the value of and market potential for this work has been usurped, since the public is keenly aware after viewing the Movie, that they have heard and seen the music and lyrics of the Song, integrated into the Movie. The immediate, widespread belief that Plaintiffs had licensed the Song Defendants use, seriously encroaches upon the potential market for this work, and this factor weighs decidedly in Plaintiffs' favor.

This factor is "undoubtedly the single most important element of fair use. <u>Harper & Row Publishers, Inc. v. Nation Enterprises</u>, 471 U.S. 539, 566, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); <u>Salinger v. Random House, Inc</u>. 811 F.2d 90, 99 (2d Cir.), cert. denied, 484 U.S. 890 (1987). Because the purpose of the Copyright Act is to "assure contributors to the store of knowledge a fair return for their labors," <u>Harper & Row</u>, 471 U.S. at 546, a fair use analysis must "provid[e] the artist with the financial motivation for creativity that flows from a limited form of monopoly." <u>MCA, Inc. v. Wilson</u>, 677 F.2d 180 (2d Cir. 1981)

---

[6] Where, as here, the purpose of the defendants' work is commercial, "the likelihood [or market harm] may be presumed." <u>A&M Records, Inc. v. Napster, Inc.</u>, 239 F.3d 1004, 1016 (9th Cir. 2001)(*quoting* <u>Sony Corp. of America v. Universal City Studios, Inc.</u>, 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984)).

Plaintiffs decision to license "Imagine" for certain uses, or to refrain from doing so is a choice within Plaintiffs' sole discretion.  It is clear that Defendant's intent in reproducing "Imagine" was motivated purely by saving what would have been a substantial licensing fee or worse, a calculation as a publicity stunt cloaked in the guise of fair use and constitutional rights.

As Judge Cedarbaum noted in <u>Woods v. Universal City Studios, Inc.</u>, 920 F. Supp. 62, 67 (S.D.N.Y. 1996):

> While an injunction is not the automatic consequence of infringement and equitable considerations are always germane to the determination of whether an injunction is appropriate, in the vast majority of cases, an injunction is justified "because most infringements are simple piracy."

(citations omitted). The same reasoning applies here.[7]


## POINT III

### PLAINTIFFS' REQUEST FOR
### EXPEDITED DISCOVERY SHOULD BE GRANTED

District courts have broad power to permit expedited discovery to allow for early depositions and to require early document productions in appropriate cases.[8]  Expedited discovery may be granted when the party seeking it demonstrates: (1)

---

[7] The facts upon which this Court decided the parties' cross motions for summary judgment in <u>Sandoval v. New Line Cinema Corp.</u>, 973 F. Supp. 409 (S.D.N.Y. 1997) (Stein, J.), <i>aff'd</i>, 147 F.3d 215 (2d Cir. 1998) are far removed from the facts in this case.  While "Imagine" is a song which is instantly recognizable, the copyrighted works (previously unpublished photographs) which were the subject of <u>Sandoval</u> appeared for thirty (30) seconds and the photographs were "not discernible to even an individual viewing the scene with an eye toward identifying the copyrighted works; they [were] even less identifiable to the average viewer concentrating on the foreground action. This fleeting and obscured use of plaintiff's work did not and cannot capture the essence or value of the plaintiff's work." Id. at p. 413.
[8] <i>See</i> Fed. R. Civ. P. 30(b) & 34(b).

irreparable injury; (2) some likelihood of success on the merits; (3) some connection between expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury will result without expedited discovery looms greater than the injury that defendant will suffer if expedited relief is granted. *See* Twentieth Century Fox Film Corp. v. Mow Trading Corp., 749 F. Supp. 473, 475 (S.D.N.Y. 1990).

Plaintiffs request that expedited discovery be taken of the Defendants to determine the full nature and extent of the Defendants' improper activities. In light of the ongoing nature and irreparable character of the harm, Plaintiffs' request should be granted. Pursuant to Federal Rule of Civil Procedure 26(d), the Court has wide discretion to govern the sequence and timing of discovery.

Expedited discovery is proper in cases involving requests for information necessary to bring a motion for a preliminary injunction or other immediate relief. *See, e.g.* Energetics Sys. Corp. v. Advanced Cerametrics, Inc., 1996 WL 130991, at *2(E.D. Pa. Mar. 15, 1996); Ellsworth Assocs., Inc. v. United States, 917 F. Supp. 841, 844 (D.C. 1996) ("Expedited Discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings").

This is an appropriate case for expedited discovery because Plaintiff seeks only limited, highly relevant discovery so that it can present a full and complete record to this Court at the hearing for a preliminary injunction. As detailed in the Order to Show Cause, the narrow discovery Plaintiff seeks is (1) the Movie, and (2) the production of documents concerning the production of the Movie, documents in

connection with third-party rights that were obtained in connection therewith, opinions supporting Defendants defense and their decision to copy Plaintiffs' Song for use in the Movie without authorization, and Defendants' revenues.

This discovery will enable the expedited consideration of Plaintiffs' request for a preliminary injunction which, for the reasons discussed above, is necessary in light of the continuing and irreparable harm at issue in this matter.

Defendants should have no objection to compliance with an order of expedited discovery herein: indeed, if Plaintiff has not stated an adequate ground upon which the relief herein is sought, they should be anxious to produce any and all documents which will vindicate them.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for a temporary restraining order and a preliminary injunction should be granted in its entirety:

1. enjoining and prohibiting the Defendants, their officers, agents, servants, employees and attorneys and all persons in active concert and participation with them, from further use of any portion, or the music or lyrics, in any media, of the musical composition written by John Lennon entitled "Imagine", or committing any further copyright infringement with respect thereto;

2. recalling for destruction or editing out of any and all references to the Song "Imagine" any and all copies of the Movie from all third-party distributors or editing those copies to remove the infringing Song; and

3. awarding to the Plaintiffs costs, attorneys fees and such other and further relief as this Court may deem just and proper.

To accelerate these proceedings and minimize the irreparable harm caused by the Defendants continued breaches and malfeasance, Plaintiffs also respectfully requests an order granting expedited discovery in this case.

Dated:                New York, New York
                      April 30, 2008

                              Respectfully Submitted,

                      By: _____
                          Dorothy M. Weber (DW 4734)
                          SHUKAT ARROW HAFER WEBER &
                          HERBSMAN, L.L.P.
                          Attorneys for Plaintiffs
                          111 West 57th Street
                          Suite 1120
                          New York, New York  10019
                          212-245-4580

25

**Westlaw.**

Not Reported in F.Supp.                                                                                                    Page 1
Not Reported in F.Supp., 1995 WL 498781 (S.D.N.Y.), 1995 Copr.L.Dec. P 27,465
**(Cite as: Not Reported in F.Supp., 1995 WL 498781)**

**H**Ice Music, Ltd. v. Schuler
S.D.N.Y.,1995.

United States District Court, S.D. New York.
ICE MUSIC LTD., Plaintiff,
v.
Michael SCHULER and Coral Studios, Defendants.
**95 CIV. 4669 (KMW).**

Aug. 21, 1995.
KIMBA M. WOOD, District Judge.

OPINION AND ORDER

*1 Plaintiff Ice Music Ltd. ("Ice Music") moves for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 enjoining defendants from infringing plaintiff's copyright in a musical composition entitled "On the Road" ("the Song"). For the reasons set forth below, plaintiff's motion is granted.

*Background*

Plaintiff Ice Music is a music publishing company incorporated in the British West Indies. Defendant Michael Schuler ("Schuler") is described by plaintiff as the "owner," and by defendants as the "managing director," of defendant Coral Sound Studio (referred to in the caption as "Coral Studios") in Trinidad. Plaintiff states that it owns a valid copyright in a song entitled "On the Road" written by one Austin Lyons ("Lyons"). Plaintiff alleges that defendants have manufactured and distributed a compilation album, "Soca Party 3" ("the Album"), which includes an unauthorized recording of the Song by a group known as "Massive Chandelier."

Defendants, though served in Trinidad, did not appear at the initial hearing on this matter on July 5, 1995. At that time the court entered a Temporary Restraining Order enjoining defendants from "manufacturing, distributing, advertising, selling or shipping any copy of, or derivative work based upon, plaintiff's copyrighted Song." Plaintiff was required to post a $1000.00 security bond.

Defendants have since appeared and do not dispute that the song recorded on the Album is a version of the song alluded to by plaintiff. However, defendants claim that they "duly licensed" the Song from the composer, Lyons.

In support of its motion, plaintiff has submitted a copy of a "Song Assignment Agreement" ("the Assignment") dated December 1, 1994 between itself and Lyons. In the Assignment, Lyons assigns all present and future copyright rights in "On the Road" to plaintiff. The Assignment appears to bear the witnessed signature of Lyons. Plaintiff has also submitted a copy of its United States certificate of copyright registration for "On the Road." The application was received by the Copyright Office on May 26, 1995, and the effective date of registration is June 2, 1995.

*Discussion*

The standard in this circuit for granting a preliminary injunction is clear: The movant must demonstrate (a) irreparable harm if the court denies injunctive relief, and (b) either (1) a likelihood of success on the merits; or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in movant's favor. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). The Second Circuit has stated that "[i]rreparable harm may ordinarily be presumed from copyright infringement." *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985). Thus, if plaintiff can show a likelihood of success on the merits of its claim by establishing a prima facie case of copyright infringement, irreparable harm will be presumed, and a preliminary injunction will generally issue. *Id.; see also Wainwright Securities Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91, 94 (2d Cir.1977) ("if probable success of a prima facie case of copyright infringement can be shown, the allegations of irreparable injury need not be very detailed, because such injury can normally be presumed when a copyright is infringed").

*2 "A prima facie case of copyright infringement consists of proof that plaintiff owns a valid copyright

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 2
Not Reported in F.Supp., 1995 WL 498781 (S.D.N.Y.), 1995 Copr.L.Dec. P 27,465
**(Cite as: Not Reported in F.Supp., 1995 WL 498781)**

and the defendant has engaged in unauthorized copying." *Novelty Textile Mills, Inc. v. Joan Fabrics Corp., 558 F.2d 1090, 1092 (2d Cir.1977).* In this case, it is undisputed that defendants were not authorized by plaintiff to record a version of "On the Road" and that they did so. Therefore, in order to establish a prima facie case, plaintiff need only show that it owns a valid copyright.

According to 17 U.S.C. § 410(c):

In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.

By submitting its certificate of registration, plaintiff has produced prima facie evidence that it owns a valid copyright and, hence, prima facie evidence of copyright infringement. If defendants are unable to rebut this prima facie case, then plaintiff has established a likelihood of success on the merits and is entitled, as well, to a presumption of irreparable harm.

Defendants have failed to submit a memorandum of law. They have submitted an attorney's affirmation in opposition to the motion for a preliminary injunction, and defendant Schuler's affidavit in opposition with attached exhibits. Defendants argue that plaintiff will fail to succeed on the merits because, based on the affidavit of Schuler, "On the Road" was duly licensed from its composer Lyons.[FN1] Specifically, Schuler states:

In late December, 1994, Austin Lyons (p/k/a Superblue) entered into an agreement (the "Agreement") with Sorrel Records [a Trinidadian record company not affiliated with defendants] and [defendant] Coral Sounds to write a musical composition to be performed by a musical artist known as Ronnie Mackintosh with the band Massive Chandelier on an album entitled "Soca Party 3".....

Austin Lyons commenced writing the musical composition in late December, 1994, which at that time was called "Leggo." Austin Lyons attended the recording sessions of Massive Chandelier at Coral Sounds Studio on January 3rd and 4th, 1995, at which time he completed writing the musical

composition, which was renamed "On the Road".....

Pursuant to the Agreement, Austin Lyons was paid an aggregate sum of over Seven Hundred (U.S. $700.00) U.S. Dollars for the right to mechanically reproduce the Composition on the Album in 12 vinyl and CD formats.

(Schuler Aff. ¶¶ 4, 7, 8.)

Surprisingly, although Schuler attaches the "Song Assignment Agreement" between plaintiff and Lyons as an exhibit to his affidavit, he fails to attach a copy of the agreement between Sorrel Records, Coral Sounds and Lyons which he refers to in his affidavit. Schuler then goes on to attack the validity of the "Song Assignment Agreement," dated December 1, 1994, based on his own unsupported statements that Lyons did not start writing the song until late December 1994 and did not finish it until January 1995. Defendants cannot overcome plaintiff's documentary evidence with Schuler's self-serving affidavit. I find that plaintiff has established a likelihood of success on the merits on its claim of copyright infringement.

**\*3** As noted above, the likelihood of success on the merits of plaintiff's copyright infringement claim leads to a presumption of irreparable harm. Unless defendants can rebut this presumption, the preliminary injunction will issue. Defendants argue that even if they have infringed plaintiff's copyright, damages are minimal. Defendants assert that, to date, less than 3,000 copies of the Album have been sold, and that less than 1,000 of those sales were in the United States. Defendants then calculate plaintiff's damages based on these sales as $33.00. I need not assess the accuracy of these figures, because, even if they are accepted, defendants have failed to rebut the presumption of irreparable harm. Regardless of what past sales may have been, defendants have not attempted to make a showing that there would be few future sales of the Album if the preliminary injunction did not issue. Furthermore, defendants have not even attempted to rebut plaintiff's argument that, in addition to loss of royalties, plaintiff will suffer "the dilution of the value of Ice Music's copyrights,""the deprivation of Ice Music's right to control the timing and manner of use of its properties,""damage to its business relationships with its clients," and "the creation of confusion among

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 498781 (S.D.N.Y.), 1995 Copr.L.Dec. P 27,465
**(Cite as: Not Reported in F.Supp., 1995 WL 498781)**

consumers as to Ice Music's clients' association with or sponsorship of defendant and its infringing record album." (Pl.Mem.Law at 9-10.)

*Conclusion*

For the reasons stated above, I find that plaintiff is entitled to a preliminary injunction. Defendant Coral Sound and defendant Michael Schuler in his capacity as owner and/or managing director of Coral Sound, and their agents, affiliates and distributors, are hereby enjoined from:

1) manufacturing, distributing, advertising, importing, selling or shipping any copy of, or derivative work containing, the musical composition "On the Road," including but not limited to the "Soca Party 3" album (in all recorded formats); and

2) using any material copied from and substantially similar to the musical composition "On the Road" in any of defendants' audio and/or audio-visual products.

Based on defendants' showing in open court today, plaintiff shall post additional security of $34,000, bringing the total amount of security to $35,000, by five o'clock p.m., Monday, August 21, 1995.

SO ORDERED.

> FN1. Defendants also assert that plaintiff will fail to succeed on the merits because the court does not have personal jurisdiction over Schuler in his individual capacity. I need not decide this issue at this time because a preliminary injunction could issue against Coral Sound and Schuler, in his capacity as owner and/or managing director of Coral Sound. However, I note that if Schuler, as the owner and/or managing director of Coral Sound, played a significant role in targeting New York for the allegedly infringing records, then personal jurisdiction over him would exist under New York law. *See Pilates, Inc. v. Pilates Institute, Inc., 94 Civ. 4796 (KMW), 1995 WL 410995 (S.D.N.Y. July 10, 1995).*

S.D.N.Y.,1995.
Ice Music, Ltd. v. Schuler

Not Reported in F.Supp., 1995 WL 498781 (S.D.N.Y.), 1995 Copr.L.Dec. P 27,465

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in F.Supp.                                                                                      Page 1
Not Reported in F.Supp., 1996 WL 130991 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp., 1996 WL 130991)**

**H**Energetics Systems Corp. v. Advanced
Cerametrics, Inc.
E.D.Pa.,1996.
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
ENERGETICS SYSTEMS CORP.
v.
ADVANCED CERAMETRICS, INC.
No. CIV. A. 95-7956.

March 15, 1996.

MEMORANDUM AND ORDER

PADOVA, J.
**\*1** AND NOW, this 5th day of March, 1996, upon
consideration of the following motions and all papers
filed in support of and in opposition thereto, and after
a telephone conference held today with counsel, IT IS
HEREBY ORDERED THAT Defendant's Motion for
Expedited Discovery (Doc. No. 9), Defendant's
Motion for a Protective Order (Doc. No. 15), and
Plaintiff's Motion for an Order Expediting,
Scheduling, and Limiting Discovery Until
Defendant's Motion for a Preliminary Injunction is
Heard (not yet docketed) are GRANTED IN PART
AND DENIED IN PART in accordance with the
memorandum that follows. Plaintiff's Motion for
Additional Time (Doc. No. 16) is DENIED.

1. Plaintiff Energetics Systems Corp. (hereinafter
"ESC") filed the instant suit against Defendant
Advanced Cerametrics Inc. (hereinafter "ACI")
asserting various claims of breach of contract,
misrepresentation, and fraud, and seeking a
declaratory judgment from the Court as to the parties'
rights and obligations under a contract (hereinafter
"the Contract") entered into by the parties on
December 24, 1992. ESC alleges that under the
Contract, ESC acquired an exclusive license to ACI
technology for the production of electrically
conductive fiber material for use in the manufacture
of batteries. ESC further alleges that ACI failed to
develop, produce, and deliver customized fiber
material for battery manufacture to ESC as required
under the Contract. ESC asserts that as inducement to
enter into the Contract, ACI misrepresented to ESC
its capacity to develop and produce such fibers, and

ACI's rights to the technology that was the subject of
the ESC license.

2. ACI denies ESC's allegations, has raised
counterclaims for breach of contract and fraud
against ESC and David James, a principal of ESC,
and seeks declaratory and injunctive relief from the
Court. ACI asserts that it is developing a novel
process to manufacture electrically conductive
ceramic materials that is the subject of a pending
patent application. ACI alleges that the Contract
called for ACI to work with battery scientists hired
by ESC to design an optimal fiber for ESC's use.
Toward this end, ACI claims that it delivered lots of
fibers to ESC for testing by ESC's battery scientists.
ACI alleges that ESC misrepresented to ACI that it
possessed the financial resources and scientific staff
to produce test batteries to adequately evaluate the
ACI-developed fibers. ACI claims that ESC has
failed to provide these resources and payments as
required by the Contract and, as a result, ESC's
license to ACI's proprietary technology has expired.
ACI alleges that ESC continues to represent to third
partes that ESC holds a valid license to ACI's
proprietary technology and is, in fact, entering into
sublicensing agreements, and that ESC has filed
patent applications based on ACI's intellectual
property.

3. ACI filed a motion for a preliminary injunction
against ESC, asking the Court to enjoin ESC from
using ACI proprietary technology disclosed to ESC
pursuant to the Contract, representing to third parties
that ESC holds a valid license to that intellectual
property and granting sublicenses, and filing or
prosecuting any patent application that is based on
the same. A hearing on that motion is scheduled for
March 27, 1996 before this Court.

**\*2** 4. Currently before the Court are the following
motions: (a) ACI's motion for expedited discovery;
(b) ACI's motion for a protective order to prohibit the
parties from using or disclosing for any purpose
except the instant litigation those discovery materials
that the parties designate as confidential; (c) ESC's
motion for expedited discovery and to limit the scope
of discovery for ESC's preliminary injunction
motion; and (d) ESC's motion to postpone the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 130991 (E.D.Pa.)
(Cite as: Not Reported in F.Supp., 1996 WL 130991)

preliminary injunction hearing and extend other deadlines accordingly.

5. At a February 20, 1996 conference in chambers and in a proposed case management plan submitted to the Court, ESC represented that ESC no longer claims a valid license to ACI's technology. Based on ESC's representations, ACI acknowledges that the scope of its motion for a preliminary injunction has narrowed. ACI now seeks to enjoin ESC from filing or prosecuting any patent application based on ACI's proprietary technology, and a primary issue at the preliminary injunction hearing will be whether ESC is, in fact, engaged in such contact.

6. For this reason, I will grant in part ACI's motion for expedited discovery insofar as ACI seeks discovery to present its motion to preliminarily enjoin ESC and David James from filing or prosecuting any patent application based on ACI proprietary technology. ESC and James shall produce to ACI by 5:00 PM on March 14, 1996 those documents and answers to interrogatories requested by ACI that relate to the subject matter of the preliminary injunction hearing. The Court specifically notes that ESC and James shall produce to ACI by 5:00 PM on March 14, 1996 any patents and/or patent applications that ESC filed during the three-year term of the Contract, as it was extended by the parties, or following the three-year term of the Contract. ACI shall schedule depositions accordingly.

7. I also grant in part ESC's motion for expedited discovery and to limit the scope of discovery for the preliminary injunction hearing. As noted above, only that discovery that relates to the narrow focus of the preliminary injunction hearing will proceed on an expedited basis. Towards that end, ACI shall produce to ESC by 5:00 PM on March 14, 1996 the answers to questions 1, 20, 21, and 22 of ESC's first set of interrogatories, and those documents in ESC's first request for production of documents that relate to questions 1, 20, 21, and 22 of the first set of interrogatories. ESC shall schedule depositions accordingly.

8. I will decline to sign the proposed protective orders submitted by the parties.[FN1] The proposed orders would allow the parties themselves to designate discovery materials as confidential, and call for a party contesting a designation to petition the Court for a ruling as to whether the said material is confidential as that term is defined in the orders. I predict that such an arrangement in the instant litigation would entangle the Court in lengthy disputes as to what is confidential, and thus would prove to be inefficient.[FN2]

> FN1. Although ESC did not file a motion for a protective order, ESC submitted to the Court its own proposed protective order with its response to ACI's motion for the same.

> FN2. I also make special note of at least two problems inherent in broad, self-executing protective orders such as those proposed by the parties. First, they are inconsistent with the federal discovery rules, which contemplate extraordinary protection and secrecy in narrow circumstances. Second, they delegate substantial judicial discretion to private parties.

**\*3** 9. Fed.R.Civ.P. 26(c)(7) empowers a federal district court to enter a protective order restricting disclosure and use of "trade secret[s] or other confidential research, development or commercial information" obtained through discovery upon good cause shown. The parties have demonstrated to the Court the potential harm that could result if a protective order restricting use and dissemination is not imposed on the discovery that is the subject of this Order. Therefore, pursuant to Fed.R.Civ.P. 26(c), I will enter this Protective Order applicable to all discovery produced in preparation for the preliminary injunction hearing as required by this Order. The provisions of the Protective Order are as follows:

a. The Protective Order shall govern all discovery material produced pursuant to this Order. It shall also apply to deposition testimony that relates to the discovery material produced pursuant to this Order.

b. Discovery material produced pursuant to this Order, and deposition testimony that relates to that discovery material, shall be designated as "Confidential." "Confidential" material shall only be used and disclosed by the receiving party for the purposes of this litigation, and the receiving party is prohibited from using or disclosing such material for any other purpose, except that to the extent the receiving party has previously used the designated

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                            Page 3
Not Reported in F.Supp., 1996 WL 130991 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp., 1996 WL 130991)**

"Confidential" material, this Order does not bar such continued use.

c. "Confidential" discovery material produced pursuant to this Order shall be disclosed to and viewed only by the Court, counsel of record for the receiving parties and their legal staff, the principals of the parties, and any expert retained or consulted in connection with this litigation (collectively hereinafter, "Authorized Persons") and only in connection with the instant litigation. Before any Authorized Person, other than counsel of record and their legal staff, is given access to "Confidential" material, that person shall be furnished with a copy of this Order and shall sign at the end thereof the following statement:

I have read the foregoing Protective Order, understand all of its terms and provisions, and agree to be bound thereby in all respects.

A copy of each signed statement shall be retained by counsel for the receiving party.

d. "Confidential" discovery material, as it is defined by this Order, shall be designated as such by stamping the word "Confidential" on the face of the writing, or otherwise clearly marking the writing with the word "Confidential," before such material is produced to the opposing party.

e. No discovery material shall be filed with the Court except as provided in the Local Rules of this Court. Any "Confidential" discovery material, as that term is defined in this Order, that is filed with the Court, including motions, pleadings, and other papers filed with the Court that disclose such "Confidential" material, shall be filed under seal and kept under seal until further order of the Court. Such documents shall, however, be available to the Court and counsel of record. Every such document shall be filed under seal in an envelope on the face of which shall be stamped or written the following:

CONFIDENTIAL

**\*4** This document is filed under seal and, unless otherwise ordered by the United States District Court for the Eastern District of Pennsylvania, shall not be reproduced for, or shown to, persons other than those

entitled to access to "Confidential" discovery material under the Protective Order dated March 5, 1996 in Civil Action No. 95-7956, *Energetics Systems Corp. v. Advanced Cerametrics, Inc.*

f. Upon final disposition or termination of this litigation, including any appeals, the parties shall return to the producing party or person any discovery material that has been designated "Confidential" pursuant to this Order, including any copies.

g. Violation by any person of any term of this Protective Order is punishable as contempt of this Court.

10. ESC requests that the Court postpone the preliminary injunction hearing and adjust other deadlines accordingly until it is able to obtain new litigation counsel in this case. ESC argues that it would be prejudiced given the enormous amount of discovery that must be completed before the March 27th hearing. However, I note that ESC was aware on February 20, 1996-two weeks ago-that it would need to obtain new litigation counsel to prepare for the March 27th hearing. Moreover, this Order effectively narrows the scope of the expedited discovery to be completed before that hearing, thus reducing the burden on both parties. For these reasons, I will deny ESC's motion for additional time.

11. The parties shall submit to the Court by March 22, 1996 the following materials in preparation for the preliminary injunction hearing scheduled on March 27, 1996:(a) proposed findings of fact and conclusions of law; (2) hearing memoranda with cited authorities; and (3) a joint stipulation of uncontested facts.

12. All other deadlines imposed by this Court remain unchanged and in effect.

IT IS SO ORDERED.

E.D.Pa.,1996.
Energetics Systems Corp. v. Advanced Cerametrics, Inc.
Not Reported in F.Supp., 1996 WL 130991 (E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.