UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

YOKO ONO LENNON, SEAN ONO LENNON, JULIAN LENNON, and EMI BLACKWOOD MUSIC, INC.,

Plaintiffs,

-against-

PREMISE MEDIA CORPORATION, L.P., C&S PRODUCTION L.P. *d/b/a* RAMPANT FILMS, PREMISE MEDIA DISTRIBUTION L.P. AND ROCKY MONTAIN PICTURES, INC.,

Defendants.

-------------------------------------------------------------------x

08 CV 3813 (SHS)(FM)

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION**

SHUKAT ARROW HAFER WEBER & HERBSMAN, L.L.P.
*Attorneys for Plaintiffs*
111 West 57th Street, Suite 1120
New York, NY 10019
(212) 245-4580

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....... 1

ARGUMENT ....... 3

A. Plaintiffs Have Made a Clear and Substantial Showing of a Likelihood of Success On the Merits on Their Copyright Claim ....... 3

B. Defendants Have Failed to Show a Fair Use ....... 3

C. First Factor - Purpose and Character of the Use ....... 3

i. Commercial Purpose ....... 3

ii. Transformative Purpose ....... 4

iii. "Propriety of the Defendants' Conduct" ....... 4

D. Second Factor - Nature of the Copyrighted Work ....... 5

E. Third Factor - Amount and Substantiality of the Portion Used ....... 5

F. Fourth Factor - Effect on the Market ....... 7

G. The Balance of Hardships Favors Plaintiffs ....... 7

i. Harm to the Plaintiffs ....... 7

ii. Harm to Defendants ....... 8

CONCLUSION ....... 10

# TABLE OF AUTHORITIES

## Cases

A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1016 (9th Cir. 2001) ..................... 8

Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1255 (3d Cir. 1983) ..................... 9

Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605 (2d Cir. 2006)...... 4, 7

Blanch v. Koons, 467 F.3d 244 (2d Cir. 2006) ..........................4

Byrne v. British Braodcasting Corp., 132 F. Supp.2d 229, 235 (S.D.N.Y. 2001) .................... 3,4,5

Cadence Design Systems, Inc. v. Avant! Corp. 125 F.3d 824 (9th Cir. 1997) .............................. 9

Castle Rock Ent. v. Carol Pub. Group, Inc., 150 F.3d 132, 141 (2d Cir. 1998) ............................ 3

Cherry River Music v. Simitar Ent. Corp.,, 38 F. Supp. 2d 310, 324 (S.D.N.Y.1999) ............... 8

Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 924 F. Supp. 1559, 1574 (S.D. Cal. 1996) ..................... 9

Dynamic Solutions, Inc. v. Planning & Control, Inc., 646 F. Supp. 1329, 1337 (S.D.N.Y. 1986) 8

Georgia Television Co. v. TV News Clips of Atlanta. Inc., 718 F. Supp. 939, 949 (N. D. Ga. 1989) ..................... 9

Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal, 546 U.S. 418, 429 (2006)............ 4

Hamil America, Inc. v. GFI, 193 F.3d 92, 98 (2d Cir. 1999)........................................................ 4

Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 562, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) ..................... 6,7,8

Infinity Broadcast Corp. v. Kirkwood, 150 F.3d 104, 107 (2d Cir.1998)..................................... 4

Iowa State Univ. Research Foundation, Inc. v. American Broadcasting Companies, Inc., 621 F.2d 57 (2d Cir. 1980); Meeropol v. Nizer, 560 F.2d 1061 (2d Cir. 1977) ....................................... 7

New Era Publications International, ApS v. Henry Holt and Co., 873 F.2d 576, 584 (2d Cir. 1989) ..................... 2

Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc., 166 F.3d 65, 74 (2d. Cir. 1999) ........... 2

Roy Export Co. Estab. Of Vaduz, Liechtenstein v. Columbia Broadcasting Sys., Inc., 672 F.2d 1095, 1099-1100 (2d Cir.), *cert. denied*, 459 U.S. 826 (1982) ................................................ 2

Sandoval v. New Line Cinema Corp., 973 F. Supp. 409 (S.D.N.Y. 1997) (Stein, J.)... 8

Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984)........................................................................... 9

Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., 155 F.Supp.2d 1, 47 (S.D.N.Y. 2001) .......................................................................................................................... 7

Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1378 (2d Cir. 1993)..................5

Woods v. Universal City Studios, Inc., 920 F. Supp. 62, 65 (S.D.N.Y. 1996)...................... 7,9,10

**Statutes**

17 U.S.C. § 304(a)...........................................................................................3

17 U.S.C. § 410(c) ............................................................................................................ 4

## PRELIMINARY STATEMENT

Defendants would have this Court amplify a narrow statutory exception to the exclusive protection afforded to a copyright proprietor under the Copyright Law.

Each affidavit submitted by Defendants (all of whom have a personal stake in the profits from the Movie), wave their first amendment flags with a fury, notwithstanding that this circuit has on numerous occasions held that a first amendment defense is subsumed within fair use. *See* Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc., 166 F.3d 65, 74 (2d. Cir. 1999); New Era Publications International, ApS v. Henry Holt and Co., 873 F.2d 576, 584 (2d Cir. 1989), *cert. denied*, 493 U.S. 1094 (1990); Roy Export Co. Estab. Of Vaduz, Liechtenstein v. Columbia Broadcasting Sys., Inc., 672 F.2d 1095, 1099-1100 (2d Cir.), *cert. denied*, 459 U.S. 826 (1982).

Defendants' allegations that the expense and time to edit the Movie would be devastating, are belied by the independent analysis of an award-winning documentary filmmaker and editor who states to the contrary. *See* Declaration of Walter "Chip" Cronkite dated May 16, 2008 ("Cronkite Decl.").

While Defendants claim:

> We the filmmakers believe there is no greater, more popular or more recognizable communication of these ideas than the song Imagine as sung by John Lennon.[1]

Assuming *arguendo* that this statement is true, it begs the question of why it is "necessary" to use "Imagine" in three different ways: (i) the original sound recording featuring John Lennon's performance;[2] (ii) the music and the lyrics as background music; and (iii) a visual reprint of the lyrics in the form of a subtitle.

There is no irreparable harm to Defendants by the editing out of "Imagine." They admit

[1] Declaration of John Sullivan dated May 13, 2008 ("Sullivan Decl."), p. 16.
[2] As set forth in the underlying papers, this particular issue is subject to a separate litigation commenced by EMI Records. See Ex. C to the Declaration of Dorothy M. Weber dated April 30, 2008.

that have not even completed the negotiations for the agreement for the DVD sales, which sales will not even commence until October, 2008. Declaration of A. Logan Craft dated May 13, 2008 ("Craft Decl."), ¶ 33. They admit that the Canadian release is weeks away. Although, Mr. Craft estimates the costs of recutting the film to be "several hundred thousand dollars" (Craft Decl. ¶ 35), no independent evidence is submitted to support that contention. Likewise, although Mr. Craft states that it will take "four weeks to recut" (Craft Decl. ¶ 35), he does not articulate why. Both statements, however, are belied by the declaration of Mr. Cronkite. Cronkite Decl. ¶¶ 13 - 21. While arguing that they have spent multi millions of dollars on marketing, they admit they did not use Imagine in the marketing or advertising.

It is submitted that the use of "Imagine" was not even necessary to further any debate on theories of religion, evolution, creationism or intelligent design: nothing in the Song itself relates to the theme or narrative of the Movie: a dispute over the origin of life, the theory of Intelligent Design and academic freedom.[3] See lyrics to "Imagine," Weber Decl. Ex. D. The Movie's use of the Song amounts to nothing more than a gratuitous use – or "set dressing."

The fact that Defendants will be inconvenienced and such inconvenience will include costs to them, clearly does not defeat the need for injunctive relief (See Sullivan Decl. ¶ 23).

[3] In the Movie, Ben Stein states precisely what Defendants set out to do - to "Lift" a page from the John Lennon's songbook. Indeed, Defendants made their choice to spend their budget traveling to Europe and the Galapagos instead of incurring at the expense of obtaining the appropriate license for Imagine (made all that more confounding by the fact that they apparently approached every other copyright proprietor of music). While it is difficult to ascertain what fees were actually paid, the documents support that permission was sought and fees were negotiated for the every song title listed in the credits at the end of the Movie with the exception of Imagine. In fact, the credit sheet and documents supplied by the Defendants verifies that permission was obtained for the use of every song titles with the exception of "Imagine." Declaration of Dorothy M. Weber dated May 16, 2008 ("Weber Decl."). Ex. A.

## ARGUMENT

### A. Plaintiffs Have Made a Clear and Substantial Showing of a Likelihood of Success On the Merits on Their Copyright Claim

Plaintiffs' copyright registration is prima facie evidence of the validity of their copyright. 17 U.S.C. §410(c); Hamil America, Inc. v. GFI, 193 F.3d 92, 98 (2d Cir. 1999).[4] There is no dispute as to Defendants' copying.

### B. Defendants' Fair Use Defense Fails

On a preliminary injunction motion, the burdens of proof "track the burdens at trial." Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal, 546 U.S. 418, 429 (2006). Accordingly, Defendants must prove that they are likely to succeed on its fair use defense, which it is submitted they cannot do. *See* Infinity Broadcast Corp. v. Kirkwood, 150 F.3d 104, 107 (2d Cir.1998)

### C. First Factor - Purpose and Character of the Use

#### i. Commercial Purpose

Defendants do not dispute the commercial nature and purpose of the Movie (see Def. Mem. p. 14) – a factor which weighs against a finding of fair use. *See* Castle Rock Ent. v Carol Pub. Group, Inc., 150 F.3d 132, 141 (2d Cir. 1998). Clearly, not all unlicensed uses of copyrighted material for inclusion in broadcasts or films that present material of interest to the public are protected by the fair use doctrine. See, e.g., Byrne v. British Broadcasting Corp., 132 F. Supp.2d 229, 234 (S.D.N.Y. 2001)(Stein, J.). The nature of the use herein does not rise to the

---

[4] Defendants spuriously question the validity of Plaintiffs' renewal rights – indeed, they have also asserted it as an affirmative defense in their Answer. The termination of transfer provisions in 17 U.S.C. §304 provide that if the author dies before the renewal term, those renewal rights vest in the widow, widower, and children as a class. Since John Lennon died before the renewal terms in the Song, those rights properly vested in the Plaintiffs Yoko Ono Lennon, Sean Ono Lennon and Julian Lennon. Notwithstanding the statute, the assignments of copyright in and to "Imagine" from Northern Songs, Ltd. to Ono Music, and ultimately to Lenono Music is a matter as public record. Weber Decl. Ex. B.

level of the "extraordinary" – as the Zapruder film of the Kennedy assassination might. *See* Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1378 (2d Cir. 1993),

**ii. Transformative Purpose**

There is nothing "transformative" about the use of the Song in the Movie: in fact, the "cut and paste" nature of the use is revealed by the ease with which the infringing potion of the Movie can be excised seamlessly and at very little cost. *See* Cronkite Decl. ¶¶ 10; 13-21 and Ex. B thereto.[5]

The Movie simply infringes "Imagine" in three different ways: it uses John Lennon's performance, it uses his music and lyrics and it visually reprints a portion of the lyrics on the screen. It is disingenuous to argue that all three uses were necessary.

This Court has rejected defenses such as Defendants', where the finder of fact might determine that use was "wholly unnecessary" to the subject matter of the infringing work – or that it "did not directly pertain to the topic of the story" and "a calculated attempt to obtain entertaining footage" Byrne, 132 F. Supp.2d 229, 235.

**iii. "Propriety of the Defendants' Conduct" and Defendants' Wilfull Conduct**

Pursuant to the Court's April 30, 2007 Order, Defendants produced its "agreements, licenses and contracts with third parties in connection with rights and permissions for all musical compositions. It appears that Defendants sought and/or obtained licenses for the use of the music for every song used in the film ***with the exception of Imagine***.

---

[5] Defendants' reliance on Blanch v. Koons, 467 F.3d 244 (2d Cir. 2006) and Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605 (2d Cir. 2006) is misplaced. These cases dealt with works of visual art – not music – which were utilized in the creation of entirely different works.

The fact that Defendants sought licenses and permission for the use for each and every other song other than Imagine – the most well-known and presumably the most expensive to license – speaks volumes as to their true intentions.[6]

The Supreme Court spoke precisely to this issue in its landmark decision in Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 562, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) where it held that:

> Also relevant to the "character" of the use is "the propriety of the defendant's conduct. Fair use presupposes 'good faith' and 'fair dealing.'

(citations omitted). Licensing the other music clearly shows Defendants' lack of good faith.[7]

Defendants' decision to include "Imagine" without seeking the appropriate license was a calculated risk and, it is submitted, neither done in good faith nor with any reasonable basis. If these Defendants, or indeed any potential licensee, were free to misappropriate Plaintiffs' intellectual property rights in this manner, the exclusive rights of copyright owners would be eviscerated.

## D. Second Factor - Nature of the Copyrighted Work

There is no dispute that "Imagine" is a creative work, and, thus, the type of work at "the core" of copyright law's protection. *See* Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 586, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994); Byrne, 132 F. Supp.2d at 235.

Defendants, however, dismiss the significance of this factor by, once again, summarily characterizing their infringing use as "transformative."

## E. Third Factor - Amount and Substantiality of the Portion Used

---

[6] Defendants did produce a letter from a lawyer which purported to support a "fair use" defense in connection with certain "unlicensed copyrighted materials" used in the Movie, the letter never identified with any specificity to which copyrighted materials it referred. It never mentioned Defendants' use of the song "Imagine" - or any music or song whatsoever. Defendants' "catch all" affirmative defenses that the Plaintiffs have, *inter alia*, acted in bad faith or misused their copyrights are untenable.

[7] Defendants' arguments amount to the theory that because Imagine is an iconic work it somehow became an easier target for the taking. That position is supported by neither by the law of this Circuit nor the legislative intent of the Copyright Act.

Defendants' assessment of this factor ("10 words and fifteen seconds of the song") and the fact that their use comprises only "roughly 0.27%" of the Movie, does not consider the qualitative portion of the Song that was used. Defendants' analysis of the amount used in relation to the length of the Movie has been soundly rejected by this Court and this Circuit: the statutory language clearly directs courts to evaluate the substantiality of the taking in relation to Plaintiffs' work, not Defendants' infringing work. [8]

The portion of "Imagine" that appears in the Movie is comprised of the most repeated vocal and piano phrases in the entirety of "Imagine." Consequently, the reproduction of ***the music alone references almost 50% of "Imagine."*** *See* Declaration of Lawrence Ferrara, Ph.D. dated May 14, 2008 ("Ferrara Decl.") ¶16. (emphasis added).[9]

Courts in this Circuit have routinely rejected fair use claims when defendant copied a small but qualitatively significant portion of the work. *See, eg.*, Harper & Row, 471 U.S. at 564-65; Iowa State Univ. Research Foundation, Inc. v. American Broadcasting Companies, Inc., 621 F.2d 57 (2d Cir. 1980); Meeropol v. Nizer, 560 F.2d 1061 (2d Cir. 1977); Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., 155 F.Supp.2d 1, 47 (S.D.N.Y. 2001).

"Imagine's" lyrics are, of course, immediately recognizable. For this particular work, the use of it in the Movie is clearly not a "de minimus" use. *See* Woods v. Universal City Studios, Inc., 920 F.Supp. 62 (S.D.N.Y. 1996); *see also, generally,* Sandoval v. New Line Cinema, 147 F.3d 215, 217 (2d Cir.1998). [10] See also Ferrara Decl. ¶ 12..

[8] Defendants' assertions that claims with respect to the percentage of the Movie which is comprised by Plaintiffs' Song is unavailing. NXIVM Corp. v. Ross Inst., 364 F.3d 480 (2d Cir. 2004). *See also* Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49 (2d Cir. 1936)( "no plagiarist can excuse the wrong by showing how much of his work he did not pirate").

[9] This analysis, of course, does not even factor in the visual reproduction of the lyrics as subtitles in the Movie. Even if Defendants' position has any merit, they offer no explanation of why they used "Imagine" is three (3) significant ways.

[10] The facts upon which this Court decided the parties' cross motions for summary judgment in Sandoval v. New

**F. Fourth Factor - Effect on the Market**

Once again, Defendants circularly assert that since their use qualifies as "transformative", market harm cannot be assessed because Plaintiffs would not have a right to receive licensing revenues for such uses in any event.[11]

This factor requires courts to consider not only the extent of market harm caused by the specific use in question, but the effect that would occur if that type of use became widespread.[12] *See* Harper & Row, 471 U.S. 539, 568.

> [T]o negate fair use one need only show that if the challenged use 'should become widespread it would adversely affect the *potential* market for the copyrighted work.' This inquiry must take account not only of harm ot the original but also of harm to the market for derivative works.

Id. at p. 568 (citations omitted).

As set forth in the Declaration dated April 30, 2008 of Nancy Weshkoff of Plaintiff EMI Blackwood it is precisely in this type of secondary market – where the harm to Plaintiffs extends to the perception that third parties need not properly license intellectual property. Moreover, Defendants' position - if accepted by the Court – would enable anyone to argue that because "Imagine" is iconic, it is available to everyone for any purpose they could choose to articulate.

**G. The Balance of Hardships Favors Plaintiffs**

**i Harm to the Plaintiffs**

---

Line Cinema Corp., 973 F. Supp. 409 (S.D.N.Y. 1997) (Stein, J.), *aff'd*, 147 F.3d 215 (2d Cir. 1998) are far removed from the facts in this case. While "Imagine" is a song which is instantly recognizable, the copyrighted works (previously unpublished photographs) which were the subject of Sandoval appeared for thirty (30) seconds and the photographs were "not discernible to even an individual viewing the scene with an eye toward identifying the copyrighted works; they [were] even less identifiable to the average viewer concentrating on the foreground action. This fleeting and obscured use of plaintiff's work did not and cannot capture the essence or value of the plaintiff's work." Id. at p. 413.

[11] Defendants' reliance on Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605 (2d Cir. 2006) is, once again, misplaced. The plaintiff in that action was deemed unlikely to compete with the defendants' works, or there was at least a question as to whether such a market existed. Bill Graham, 448 F.3d at 615. Here there is no question as to either – Plaintiff has licensed "Imagine" as well as other John Lennon songs.

[12] Where, as here, the purpose of the defendants' work is commercial, "the likelihood [or market harm] may be presumed." A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1016 (9th Cir. 2001)(*quoting* Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984)).

Defendants' use undermines the integrity of Plaintiffs' licensing activities, both in the music industry and others. It wrongfully deprives Plaintiffs of their leverage as the lawful and exclusive licensor of the Song. *See* Dynamic Solutions, Inc. v. Planning & Control, Inc., 646 F. Supp. 1329 (S.D.N.Y. 1986)(finding that the defendant's infringing activity deprived the Plaintiff of its leverage as sole lawful licensor):

> The monetary worth of that leverage in such negotiations would be difficult, at best, to determine. That is sufficient to satisfy the irreparable harm requirement.

Id. at 1337.

Moreover, as set forth in the Declarations of Darnetha L. B'Baye and Nancy Weshkoff, both dated April 30, 2008, submitted in support of Plaintiffs motion on behalf of Plaintiff EMI Blackwood Music, Inc., Imagine is used very discriminately in licensing.

Where, as here, the Plaintiffs have established a strong likelihood of success, the Court may issue a recall order (and, in this case, only a handful of copies) to ensure that Plaintiffs are not deprived of effective relief. Cherry River Music Co. v. Simitar Entertainment, Inc., 38 F. Supp. 2d 310, 324 (S.D.N.Y. 1999); Woods v. Universal City Studios, Inc., 920 F.Supp. 62, 65 (S.D.N.Y. 1996). This is particularly appropriate here where, as in Cherry River Music, the Defendants have "sailed in[to] harm's way" by refusing to cease shipping their videos after receiving a cease and desist letter from New Line. Cherry River, 38 F. Supp.2d at 323.

**ii Harm to Defendants**

Defendants' declarations focus on the harm they will irreparably suffer by loss of negotiation time for the DVD market on a contract which has not even been negotiated for an October 2008 release date. They argue that several weeks from now they need to open in Canada. By their own admission, the attrition rate of the theatrical release in the United States is

down from the 10 theatres in April to 100 theatres beginning Friday May 23, 2008. Declaration of R. Rogers dated May 12, 2008, ¶12(e).

Moroever, the inability of these infringing Defendants to profit from the sale of an infringing work is not a hardship that will defeat a preliminary injunction. Woods v. Universal City Studios, Inc., 920 F. Supp. 62, 65 (S.D.N.Y. 1996) (granting preliminary injunction against movie studio despite hardship to it caused by delayed release of major motion picture); Cadence Design Systems, Inc. v. Avant! Corp. 125 F.3d 824 (9th Cir. 1997) (reversing denial of preliminary injunction even though injunction could seriously jeopardize defendant's ability to survive); Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 924 F. Supp. 1559, 1574 (S.D. Cal. 1996), *aff'd*, 109 F.3d 1394 (9th Cir. 1997) (granting preliminary injunction even though "[d]efendant may lose some profits and goodwill with distributors"); Georgia Television Co. v. TV News Clips of Atlanta. Inc., 718 F. Supp. 939, 949 (N. D. Ga. 1989) (hardships favored plaintiff even though injunction could destroy defendant's business).

If Plaintiffs are wrong, Defendants have the ability to seek compensatory, monetary damages. This threat of economic loss -- even if significant in value -- does not warrant tipping the balance in Defendants' favor and is a necessary consequence of protecting Plaintiffs' rights. *See* Woods, 920 F. Supp. at 65 ("Universal argues that it will suffer considerable financial loss if a preliminary injunction is granted. Copyright infringement can be expensive. The Copyright Law does not condone a practice of 'infringe now, pay later.' ") (citation omitted); Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1255 (3d Cir. 1983) (a preliminary injunction must issue even where it has a "devastating effect" on an infringer's business; otherwise, "a knowing infringer would be permitted to construct its business around its infringement, a result we cannot condone.").

Defendants also articulate the concern that there is a "substantial public interest" in the right to receive information on an issue of public importance. It is respectfully submitted that the elimination of the "Imagine" portion of the Movie will not diminish the message of the Movie or Defendants' ability to apostletize their cause.

As set forth hereinabove, Plaintiffs will suffer irreparable injury absent injunctive relief.[13]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be granted in its entirety:

Dated: New York, New York
May 16, 2008

Respectfully Submitted,

By: [signature]

Dorothy M. Weber (DW 4734)
SHUKAT ARROW HAFER WEBER & HERBSMAN, L.L.P.
Attorneys for Plaintiffs
111 West 57th Street
Suite 1120
New York, New York 10019
212-245-4580

[13] eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S.Ct. 1837 (2007) did not, as Defendants suggest, overturn this Circuit's longstanding rebuttable presumption of irreparable injury upon the finding of likelihood of success on the merits in copyright and trademark cases. Plaintiffs, in any event, have not relied on that presumption, and have met their burden of establishing irreparable harm.