Allen C. Wasserman (AW-4771)
LOCKE LORD BISSELL & LIDDELL, LLP
885 Third Avenue, 26th Floor
New York, NY 10022
(212) 947-4700 Telephone

**Of Counsel:**
Anthony Falzone
Julie Ahrens (JA-0372)
Center for Internet and Society
STANFORD LAW SCHOOL
559 Nathan Abbott Way
Stanford, CA 94305-8610
(650) 736-9050 Telephone

Roy W. Hardin
April R. Terry
LOCKE LORD BISSELL & LIDDELL, LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000 Telephone

Attorneys for Defendants Premise Media Corporation, L.P.,
C&S Production L.P. d/b/a Rampant Films, Premise Media Distribution L.P.,
and Rocky Mountain Pictures, Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                        :
YOKO   ONO   LENNON,   SEAN   ONO                       :
LENNON,  JULIAN  LENNON,  and  EMI        :    1:08-CV-03813-SHS
BLACKWOOD MUSIC, INC.,                                  :
                                                        :
                          Plaintiffs,                   :    **MEMORANDUM OF LAW IN**
                                                        :    **SUPPORT OF DEFENDANTS'**
         -against-                                      :    **MOTION TO DISMISS**
                                                        :
PREMISE   MEDIA   CORPORATION,   L.P.,    :
C&S  PRODUCTION  L.P.  d/b/a  RAMPANT     :
FILMS,  PREMISE  MEDIA  DISTRIBUTION      :
L.P.  and  ROCKY  MOUNTAIN  PICTURES,     :
INC.,                                                   :
                          Defendants.                   :
------------------------------------------------------- x

eg

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

PLAINTIFFS' ALLEGATIONS ...........................................................................2

ARGUMENT ........................................................................................................3

I.     The Lanham Act Does Not Protect Unauthorized Copying of the Song Clip ....................4

II.    If the Lanham Act Does Apply, the Complaint Ignores the Required Balancing
       of Public Interest in Free Expression and is Therefore Legally Insufficient ....................7

       A.     Defendants' Expressive Use of *Imagine* is Protected Against Lanham Act
              Liability as a Matter of Law...............................................................8

              1.     The Rogers Test Applies Here ................................................11

              2.     The Rogers Test  Precludes Plaintiffs' Lanham Act Claim ......................11

                     a.     The First Amendment Interest in Free Expression is Great...........12

                     b.     The Risk of Consumer Confusion is Slight ...................................13

III.   The Song Cannot Serve as a Trademark for Lennon..........................................15

CONCLUSION..................................................................................................16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .................................................7

*Butler v. Target Corp.*, 323 F. Supp. 2d 1052 (C.D. Cal. 2004).....................................15

*Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211 (3d Cir. 2005).........................14

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group, Inc.*, 886 F.2d 490
    (2d Cir. 1989)..............................................................................................9, 10

*Dastar Corp. v Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) .......................1, 3, 5, 6, 7

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 444 F. Supp. 2d 1012
    (C.D. Cal. 2006)...................................................................................................10

*ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915 (6th Cir. 2003) .....................................10

*Famous Horse, Inc. v. 5th Avenue Photo, Inc.*, No. 07 Civ. 7818, 2008 WL 2156727
    (S.D.N.Y. May 19, 2008)........................................................................................8

*G.M.L., Inc. v. Mayhew*, 188 F. Supp. 2d 891 (M.D. Tenn. 2002)...............................15

*Johnson & Johnson Consumer Cos., Inc. v. Aini*, 540 F. Supp. 2d 374 (E.D.N.Y. 2008) ..............9

*Landry v Atlantic Recording Corp.*, No. Civ. A. 04-2794, 2007 WL 4302074
    (E.D. La. Dec. 12, 2007)........................................................................................6

*Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003)................................10

*Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56 (2d Cir. 2001).......................................4, 15, 16

*Papasan v. Allain*, 478 U.S. 265 (1986) ..........................................................................7

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989).......................................................9, 11, 12

*S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188 (E.D.N.Y. 2007)..............14, 15

*Seale v. Gramercy Pictures*, 949 F. Supp. 331 (E.D. Pa. 1996) .....................................10

*The New Kids on the Block v. News America Publ'g, Inc.*, 745 F. Supp. 1540
    (C.D. Cal. 1990)...................................................................................................10

*The New Kids on the Block v. News America Publ'g Inc.*, 971 F.2d 302 (9th Cir. 1992).............14

*The Romantics v. Activision Publ'g, Inc.*, 532 F. Supp. 2d 884 (E.D. Mich. 2008) ....................15

*Yankee Publ'g, Inc. v. News America Publ'g, Inc.*, 809 F. Supp. 267
(S.D.N.Y. 1992) ..........................................................................................................10, 11, 13

## FEDERAL STATUTES

15 U.S.C. §§ 1114 .......................................................................................................................8

15 U.S.C. § 1115(b)(4) ...............................................................................................................4

15 U.S.C. § 1125(a)(1).............................................................................................................3, 8

## OTHER

3 McCarthy on Trademarks § 23:11.1 .......................................................................................4

## PRELIMINARY STATEMENT

Defendants Premise Media Corporation, L.P., C&S Production L.P. d/b/a Rampant Films, Premise Media Distribution L.P., and Rocky Mountain Pictures, Inc. (collectively, "Defendants") are the producers and distributors of *Expelled: No Intelligence Allowed* ("*Expelled*" or the "Film"). *Expelled* is a controversial film about a highly contentious issue – whether proponents of the theory of intelligent design are being unfairly silenced in academia and beyond.

Plaintiffs Yoko Ono Lennon, Sean Ono Lennon, Julian Lennon, and EMI Blackwood Music, Inc. (collectively, "Plaintiffs") allege copyright and Lanham Act claims against Defendants based on their use of fifteen seconds of the song *Imagine*, written and performed by the late John Lennon. By agreement of the parties, Defendants' response to the Third Claim for relief under the Lanham Act was extended until now to allow the parties to focus on the copyright and injunction issues. In denying Plaintiffs' motion for preliminary injunction, this Court held Plaintiffs are unlikely to succeed on the merits of their copyright claim because Defendants use *Imagine* for the purpose of criticizing that song, and the ideas it represents.

Plaintiffs' Lanham Act claims fare no better. The claim that unauthorized copying of a portion of the song *Imagine* triggers liability under the Lanham Act is legally baseless. The Lanham Act does not apply to claims of confusion of association made by an author of an artistic work that has been used to produce a new product. *Dastar Corp. v Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31-38 (2003). Thus, Plaintiffs' allegations that there can be confusion as to "origin," as that term is used in the Lanham Act, fail as a matter of law.

Further, the song and its title are used for a plainly expressive purpose – to criticize the song and the ideas it represents. Courts have consistently rejected the idea that using a song for

an expressive or critical purpose violates the Lanham Act because those protections must give way to the First Amendment interest in free expression.

Finally, the allegation that a song such as *Imagine* can be protected as a trademark identifier for its performer (Lennon) has been expressly rejected as a matter of law by the Second Circuit. For these reasons, no plausible set of facts can be alleged that would support a Lanham Act claim.

## PLAINTIFFS' ALLEGATIONS

The Complaint alleges that the word title "Imagine" is a protectable mark used in the sale and advertising of unnamed products and services of Plaintiffs and that the song itself, written and recorded by Lennon, has acquired secondary meaning and is closely associated with Plaintiffs. Complaint at ¶¶ 15-16. In short, Plaintiffs assert that Lanham Act protection should be accorded to (1) the word title *Imagine,* and (2) the musical composition itself.

As to the one word title *Imagine*, Plaintiffs contend that the credit information included at the end of the Film, for which "the 'permission granted' line was omitted in the case of the [music and lyrics to the song *Imagine*]," (because, in fact, permission was neither sought nor granted) confuses the public into believing that use of the sound recording "was approved by the owners of the intellectual property associated with 'Imagine.'" *Id.* at ¶¶ 25-26. In other words, Plaintiffs allege that accurately identifying the song as "Imagine" in the Film's credits "is likely to cause confusion and/or mistake among consumers by falsely suggesting and implying that the Film is authorized, approved and/or sponsored by the Plaintiff or is in some way affiliated, connected or associated with [sic] unauthorized uses." *Id.* at ¶ 45.

As to the *Imagine* song itself, Plaintiffs allege that its use in the Film is likely to cause confusion "as to the source or sponsorship of the Film" and that the Film "usurps and perverts

the market for licensed uses of the [music and lyrics to the song 'Imagine']." *Id.* at ¶ 47. This, according to the Complaint, is because, "[a]s a result of publicity, advertising and marketing efforts with respect to the Song, it has acquired secondary meaning as Lennon's 'signature' song." *Id.* at ¶16. To sustain a claim under the Lanham Act, Plaintiffs must allege that Defendants made a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion . . . as to the origin . . . of his or her goods." 15 U.S.C. § 1125(a)(1).

The only "goods" whose origin is allegedly causing confusion is the movie *Expelled* itself as distributed and shown in theaters. The only use of the alleged marks by the movie is the 15 second song clip (accompanied by a printed version of the lyrics on screen) and the credit information at the end of the movie that accurately identifies the author and owner of the song clip, but does not claim that any permission was granted for its use.

## ARGUMENT

Plaintiffs' Lanham Act cause of action fails as a matter of law for two independent reasons. First, the Lanham Act does not extend to claims of confusion as to the "origin of goods" made by an author whose work was copied into and used in an independent product. The Supreme Court in *Dastar* held that those types of claims are limited to copyright actions, and that the Lanham Act simply cannot be used to protect against such uses. *Dastar*, 539 U.S. at 31-38. Second, if the Lanham Act were to be applied, First Amendment interest in free expression implicated by the Film's criticism of *Imagine* and the viewpoint it represents outweighs any potential consumer confusion. Plaintiffs simply ignore the controlling law on this point, the balancing test developed by the Second Circuit, and the obvious protection it affords the Film here. In addition, and in any event, a song cannot serve as a trademark for a performer. On the

3

contrary, the Second Circuit has considered and rejected the notion that trademark protections should be expanded to songs that are closely associated with their performers. *See Oliveira v. Frito-Lay, Inc.,* 251 F.3d 56 (2d Cir. 2001) (rejecting "false implied endorsement" claim based upon use of famous "signature song"). In *Oliveira,* the Second Circuit, recognizing that trademark law is not intended to provide rights to performers in their musical works, stated that "[w]e can see no justification for now altering the commercial world's understanding of the scope of trademark rights in this fashion." *Id.*

Plaintiffs' Lanham Act claim cannot survive the pleading stage of this controversy. The Lanham Act simply does not cover these types of claims. Even if it did, there is no plausible case for consumer confusion that would outweigh Defendant's First Amendment rights to both criticize and use those elements in a transformative way to communicate their own social and political views. And even if the song *Imagine* is closely associated with Plaintiffs as an identifier for John Lennon, the protections of the Lanham Act simply do not extend to it.

**I.    The Lanham Act Does Not Protect Unauthorized Copying of the Song Clip**

At its base, Plaintiffs' Complaint argues that use of the song clip and its title violates their alleged trademarks because the public will be mislead into believing that the goods, namely, the Film, are authorized, approved and/or sponsored by Plaintiff. But Defendants, as producers of the Film, are clearly the "origin of the goods" and there is no allegation that Defendants or anyone else has ever actively represented that Lennon or Plaintiffs are the source or sponsors of the Film. So the question becomes whether, by incorporating a clip of the song *Imagine* into their own goods (the Film), Defendants are subject to a charge that they are causing confusion regarding the "origin of goods" as that phrase is used in the Lanham Act. The Supreme Court has answered that question in the negative as follows:

But as used in the Lanham Act, the phrase "origin of goods" is in our view *incapable of connoting the person or entity that originated the ideas or communications that the "goods" embody or contain*. Such an extension would not only stretch the text, but it would be out of accord with the history and purpose of the Lanham Act and inconsistent with precedent.

*Dastar,* 539 U.S. at 32 (emphasis supplied). Thus, the fact that the "goods," in the form of the movie *Expelled,* "embody or contain" a portion of the communicative song *Imagine* is simply not a violation of the Lanham Act.

In *Dastar* there had been a wholesale copying of an earlier television series recounting General Eisenhower's World War II European campaign directly into a video series that was repackaged and published without attribution or acknowledgement of the earlier work. *Id.* at 25-28. Compared to the fifteen second music clip at issue here, in *Dastar* essentially all of the earlier work was copied, edited, re-titled and republished as the work of the defendant. In *Dastar,* as here, there was a companion claim for copyright infringement. Although the copyright in the duplicated television series had expired, the copyright claim based on Eisenhower's underlying book was still a live question on remand. *Id.* at 37-38. In this case, Plaintiffs do not own the copyright in the actual sound recording from which the clip from *Imagine* was taken, and only assert their alleged copyright in the musical composition itself.

The Supreme Court explained in *Dastar* that reading the "origin of the goods" provision of the Lanham Act (which was not designed to protect originality and creativity) in light of the patent and copyright laws (which were) led to the conclusion that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods. *Id.* at 32-37. Thus, in this case, because the Lanham Act requires confusion as to the "origin of the goods," Defendants cannot be liable for merely saying they are the producers of *Expelled. See id.* at 38 ("For merely saying it is the

producer of the video, however, no Lanham Act liability attaches to Dastar"); *see also Landry v Atlantic Recording Corp.,* No. Civ. A. 04-2794, 2007 WL 4302074 at *8 (E.D. La. Dec. 12, 2007) (*sua sponte* dismissal of Lanham Act claim citing *Dastar*).

The *Dastar* Court also foresaw the dilemma the issue of attribution would present to film producers if authors of creative works were allowed to charge Lanham Act violations based on use of the author's works in the producers' films.  On the one hand, producers could face Lanham Act charges for failing to credit such authors, and on the other hand they could face Lanham Act liability for crediting such authors if that should be regarded as implying the author's "sponsorship or approval" of the copy. *Dastar,* 539 U.S. at 36.

Thus, it is the precise charge that Plaintiffs use here regarding the credits in the movie *Expelled* that the *Dastar* Court sought to eliminate with its decision not to extend Lanham Act protection to the copying of artistic works into communicative products such as films and movies. If Defendants here had not made any attribution of *Imagine's* author and owner in the credits of the Film, there would undoubtedly be a charge that such a listing was avoided because the use was unlicensed and Defendants wanted to hide that fact from the public.  Having chosen to accurately attribute the Song's author and owner and not claim a license, Defendants now face a charge that they did so in an effort to misleadingly associate the Film with Plaintiffs.  This "Hobson's choice" scenario was exactly the game that the *Dastar* Court decided should not be allowed to be played under the auspices of the Lanham Act.  Because Plaintiffs have no Lanham Act claim based on incorporation of the fifteen second sound clip into the movie, they also have no cause of action based on the truthful attribution statement in the credits.

Finally, the Supreme Court in *Dastar* foreclosed any extension of the Lanham Act into areas traditionally protected by either copyright or patent law.  To do so "would create a species

of mutant copyright law," and is an "over-extension" of trademark law. *Dastar*, 539 U.S. at 33-34. Yet that is precisely what Plaintiffs here attempt to do, by seeking a trademark remedy for the use of an excerpt of a song, along with its title, in a motion picture. Plaintiffs cannot use the Lanham Act as a substitute for their deficient copyright claim.

## II.    If the Lanham Act Does Apply, the Complaint Ignores the Required Balancing of Public Interest in Free Expression and is Therefore Legally Insufficient

The first reason why the Lanham Act claims must be dismissed is because that Act simply does not apply here. If, however, the difference in facts between *Dastar* and this case justify application of the Lanham Act, those same differences prove that First Amendment concerns for freedom of expression trump any possible harm that would be cognizable under the Lanham Act. In *Dastar*, there was wholesale copying of a prior artistic communicative work and a republishing of same for commercial gain of the same kind sought by the original authors. Here, the fifteen second sound clip was used solely to create a communicative message – a message that directly criticizes the underlying ideas of the song *Imagine*. Yet Plaintiffs' Complaint ignores this critical factual distinction and, in doing so, fails to allege facts necessary to state any claim under the Lanham Act.

To withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). This requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 127 S. Ct. at 1964-65 (2007); *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 286. The "[f]actual allegations must be enough to raise the right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.

On a motion to dismiss, the Court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Famous Horse, Inc. v. 5th Avenue Photo, Inc.*, No. 07 Civ. 7818, 2008 WL 2156727 at \*1 (S.D.N.Y. May 19, 2008) (slip copy) (internal citations omitted) (noting that the Court has "declined to read *Twombly's* flexible 'plausibility standard' as relating only to antitrust cases"). "A court's consideration on a motion to dismiss is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Id.*

Here, Plaintiffs alleged there was unauthorized use of the *Imagine* song title and song clip, and then baldly asserted a likelihood of consumer confusion. But, in a case involving issues of free speech, the law requires more. Not every unauthorized use of a purported trademark is actionable, because the possibility for consumer confusion must be balanced against the public interest in free expression whenever First Amendment speech issues are implicated. The Complaint ignores this requirement and makes no allegation that the possibility of consumer confusion outweighs First Amendment considerations. As shown below, this is not a mere oversight. There simply is no plausible basis to allege that concerns for consumer confusion could trump Defendants' critical, expressive and protected use of the alleged trademarks.

**A.    Defendants' Expressive Use of *Imagine* is Protected Against Lanham Act Liability as a Matter of Law**

In a typical case, in order to prevail on a trademark infringement claim under sections 32 and 43(a) of the Lanham Act (15 U.S.C. §§ 1114 and 1125(a), respectively), a plaintiff must demonstrate the following two elements: (1) ownership of a valid trademark and (2) a likelihood

of confusion by consumers. In addition, the plaintiff must show that defendants used its mark in commerce. *Johnson & Johnson Consumer Cos., Inc. v. Aini*, 540 F. Supp. 2d 374, 388 (E.D.N.Y. 2008).

In Lanham Act cases in which First Amendment speech issues are implicated, however, the typical "likelihood of confusion" test gives way to the far more stringent analytical framework established first by the Court of Appeals for the Second Circuit in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). In *Rogers*, the Court initially recognized that "[c]onsumers of artistic works . . . have a dual interest: They have an interest in not being misled and they also have an interest in enjoying the results of the author's freedom of expression." *Id.* at 998. The Court went on to conclude that the Lanham Act must be construed narrowly so as to avoid conflicting with the speech rights afforded by the First Amendment. *Id.* Accordingly, the Court held that, "in general the [Lanham] Act should be construed to apply to artistic works *only* where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Id.* at 999 (emphasis added). In the case of titles such as those at issue in *Rogers*, the Lanham Act would not apply unless "the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work . . . . A misleading title with no artistic relevance cannot be sufficiently justified by free expression interest." *Id.* at 999.

Since *Rogers* was decided, it has been expanded to apply generally whenever a Lanham Act claim is intertwined with competing First Amendment rights. "[I]n deciding the reach of the Lanham Act in any case where an expressive work is alleged to infringe a trademark, it is appropriate to weigh the public interest in free expression against the public interest in avoiding consumer confusion." *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group, Inc.*, 886 F.2d

490, 494 (2d Cir. 1989). The *Cliffs Notes* Court thus held that "the *Rogers* balancing approach is generally applicable to Lanham Act claims against works of artistic expression, a category that includes parody. This approach takes into account the ultimate test in trademark law, namely, the likelihood of confusion as to the source of the goods in question. At the same time, a balancing approach allows greater latitude for works such as parodies, in which expression, and not commercial exploitation of another's trademark, is the primary intent, and in which there is a need to evoke the original work being parodied." *Id.* at 495.

As a result, it is now the law that when a trademark is used in the communication of an expressive message the *Rogers* test is triggered. This Court has affirmed that "where the [allegedly] unauthorized use of a trademark is for expressive purposes of comedy, parody, allusion, criticism, news reporting, and commentary, the law requires a balancing of the rights of the trademark owner against the interests of free speech." *Yankee Publ'g, Inc. v. News America Publ'g, Inc.,* 809 F. Supp. 267, 276 (S.D.N.Y. 1992). "The message of these cases [*Rogers* and *Cliffs Notes*] is not merely that *parody* is accorded First Amendment deference, but rather that the use of a trademark in the communication *of an expressive message* is accorded such deference." *Id.* at 279 (emphasis in original); *see also The New Kids on the Block v. News America Publ'g, Inc.,* 745 F. Supp. 1540, 1545 (C.D. Cal. 1990) (applying *Rogers* test in rejecting "false endorsement" theory); *Seale v. Gramercy Pictures,* 949 F.Supp. 331, 340 (E.D. Pa. 1996) (same); *ETW Corp. v. Jireh Publ'g. Inc.,* 332 F.3d 915 (6th Cir. 2003) (same); *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.,* 444 F. Supp. 2d 1012 (C.D. Cal. 2006) (noting that "the *Rogers* test is not an 'absolute necessity' or an 'alternative means' test. *Rogers* simply requires that defendants' use of the trademark or trade dress bear *some* artistic relevance to the work"); *Mattel, Inc. v. Walking Mountain Productions,* 353 F.3d 792 (9th Cir. 2003).

1.    **The Rogers Test Applies Here**

The *Rogers* court made clear that "[m]ovies, plays, books, and songs are all indisputably works of artistic expression and deserve protection." *Rogers,* 875 F.2d at 997. There can be no serious debate concerning the status of the *Expelled* motion picture as an expressive, artistic work, and subject to the full protections of the First Amendment. *E.g.,* Opinion and Order on Motion for Preliminary Injunction [Docket No. 46] at 3-5. Further, as this Court has previously recognized, the Film "incorporates an excerpt of 'Imagine' for purposes of criticism and commentary." *Id.* at 12. Thus, while the complaint acknowledges that it is only the Film itself that is the alleged unauthorized use, Plaintiffs completely ignored the balancing test that applies. Application of that balancing test demonstrates that no plausible claim under the Lanham Act can be made in this case.

2.    **The Rogers Test  Precludes Plaintiffs' Lanham Act Claim**

Application of the *Rogers* test leaves no doubt that Plaintiffs' Lanham Act claim is precluded here. Indeed, this case is far easier than *Rogers*. In *Rogers* the defendants had purposefully used the title "Ginger and Fred" to evoke a memory or association with the famous dance team of Ginger Rogers and Fred Astair. The movie was not authorized by Ms. Rogers, nor was it even about Ms. Rogers and Mr. Astair. Instead, it told the story of a pair of fictional Italian dancers who, in their heyday, imitated Rogers and Astair and became known in Italy as "Ginger and Fred." *Rogers,* 875 F.2d at 996-97. The use of the "Ginger and Fred" title by the defendants in *Rogers* has been termed "highly susceptible to consumer confusion, [and] many consumers may have assumed that the movie was in fact an authorized story of Ginger Rogers and Fred Astaire. Nothing about that title made it obvious it was otherwise." *Yankee Publ'g, Inc. v. News America Publ'g, Inc.,* 809 F. Supp. 267, 280 (S.D.N.Y. 1992). Still, because the storyline of the movie dealt with a topic related to the title, the *Rogers* court found that, absent an

11

explicitly misleading statement, Lanham Act protections did not apply. *Rogers,* 875 F.2d at 1001. Thus, in *Rogers,* the use of a title with a very probable ability to mislead was exempted from coverage by the Lanham Act solely by the author's desires to express themselves by naming their movie in way that was artistically relevant to its content.

The *Rogers* balancing test requires courts to construe the Lanham Act "to apply to artistic works *only* where the public interest in avoiding consumer confusion *outweighs* the public interest in free expression." *Rogers,* 875 F.2d at 999 (emphasis added). In this case, the expressive value of the Film as a means of communicating the independent and controversial pro-religious statement of the producers of the Film is apparent on its face, as this Court has previously recognized. Opinion and Order on Motion for Preliminary Injunction [Docket No. 46] at 3-5, 12-16. As for possible confusion, one watching the movie's use of the fifteen second sound clip would be highly unlikely to believe that the severe criticism aimed at the song was authorized or approved by Plaintiffs. Further, accurate attribution of the author and the owner displayed in the same manner as other credits for fractions of a minute is nominative fair use of the title because it identifies that product and does nothing more.

### a.     The First Amendment Interest in Free Expression is Great

As noted above, the Complaint is completely silent on the issue of the public's interest in freedom of expression of the authors of *Expelled.* Rather than an oversight or a correctable omission, any recitation of facts relating to the public interest in how the alleged marks were used in *Expelled* would prove just how weighty that consideration is in this case. Any recitation would have to admit that a viewer would see the active criticism leveled at the message of the Song. The transformative use of the clip from *Imagine* with background photography and surrounding commentary to make the independent point of *Expelled* – that society without

religion can be a dangerous place – would have to be acknowledged. The public's interest in this social and political commentary, a protected expressive communication, is very large.

As compared to the use of the title "Ginger and Fred" in *Rogers*, where nothing about that use indicated anything other than association or authorization by Ginger Rogers, facts regarding the use of *Imagine* made in *Expelled* would leave little doubt that it was <u>not</u> approved or authorized by Plaintiffs. Consumers would not be fooled, they would be enlightened regarding the dangerous message of the Song. That is why no such facts were included in the Complaint and why the Complaint fails to state a claim.

### b.    The Risk of Consumer Confusion is Slight

Turning to the facts that are alleged in the Complaint regarding likelihood of confusion, there is still a failure to make a plausible case that any such confusion could possibly outweigh the freedom of expression interests. This is because there was no misleading use at all in *Expelled*, and the use that was made is allowed, even under trademark law, as nominative fair use.

The allegation that the Film's credits accurately reflect the author and ownership information but omit the "permission granted" line is a complaint about accuracy, not inaccuracy. There was no reason or requirement for Defendant's to label their use of *Imagine* as "critical fair use" in the credits or otherwise.

In *Yankee Publ'g, Inc. v. News America Publ'g, Inc.*, 809 F. Supp. 267, 281 (S.D.N.Y. 1992), this court considered and rejected the argument that the defendant was under a duty to label its use as a parody or joke in order to enjoy the protections of the First Amendment. While such a label can be helpful in avoiding confusion, the court held there was no requirement for such a label, noting that there had been no subtitle for the movie in the *Rogers* case that would dispel authorization by the real Ginger and Fred. And again, the Complaint provides no facts

other than mere speculation that any actual consumers have been, or would likely be, confused by the credits at the end of the Film.

Finally, the doctrine of "nominative fair use" shields users of trademarks from liability when their use is for purposes of identifying the goods or services of the mark holder. At best, and at most, that is what happened here. Nominative fair use is said to occur "when the alleged infringer uses the trademark holder's [mark], even if the alleged infringer's ultimate goal is to describe his own product." *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 214 (3d Cir. 2005) (internal citations omitted). Nominative fair use also occurs "if the only practical way to refer to something is to use the trademarked term." *Id.* The nominative fair use doctrine evolved in the Ninth Circuit's holding in *The New Kids on the Block v. News America Publ'g Inc.*, 971 F.2d 302 (9th Cir. 1992). *See S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188, 207 (E.D.N.Y. 2007) (internal citations omitted). In *New Kids,* the Ninth Circuit held that "a commercial user" who is not using someone else's mark to refer to his own product is entitled to a nominative fair use defense provided he meets the following three requirements: (1) the product must be one not readily identifiable without use of the trademark; (2) only so much of the mark may be used as is reasonably necessary to identify the product; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *The New Kids on the Block,* 971 F.2d at 308; *see also S&L Vitamins,* 521 F. Supp. 2d at 207.

It cannot be seriously contested by Plaintiffs that the title of the *Imagine* work is the most logical and ordinary manner in which to identify the sound recording. Indeed, aside from the true and correct title, one is hard-pressed to identify any sound recording with any degree of certainty. Further, it is plainly obvious that Defendants used only so much of the title of the

work as necessary to identify the song, inasmuch as the title consists of a single word. Finally, Defendants included nothing in conjunction with the listing of *Imagines'* "ownership and credit information" to suggest any endorsement of the Film on the part of Plaintiffs. Complaint at ¶ 25. As Plaintiffs admit, "the 'permission granted' line was omitted in the case of the Song" in the credits. *Id.* In any event, the Complaint asserts that the *Imagine* song title has been used by Plaintiffs "in connection with the sale and advertising of Plaintiff's products and services," as well as "John Lennon's [undefined] vision." Complaint at ¶¶ 15, 17. The mere nominative use of the title in the credits of the Motion Picture, however, implicates nothing beyond the song itself. Thus, the simple listing of the true and correct title of the *Imagine* work in the credits of the Film, a pure nominative use of the purported trademark, is protected fair use. *S&L Vitamins,* 521 F. Supp. 2d at 207.

## III.    The Song Cannot Serve as a Trademark for Lennon

For all the reasons set forth above, the use of the song clip from *Imagine* is a use protected from the reach of the Lanham Act. But independent of that fact, Plaintiffs' Complaint fails to state a claim as a matter of law with respect to the Song itself because the Lanham Act does not provide protection of a song as a trademark for its performer.

Musical recordings – even world-famous or "signature" songs – do not serve as protectable trademarks signifying the performer as the source of the work. *See Oliveira v. Frito-Lay, Inc.,* 251 F.3d 56 (2d Cir. 2001) (rejecting "false implied endorsement" claim based upon use of famous "signature song"). In *Oliveira,* the Second Circuit, recognizing that trademark law is not intended to provide rights to performers in their musical works, held: "[w]e can see no justification for now altering the commercial world's understanding of the scope of trademark rights in this fashion." *Id.; see also G.M.L., Inc. v. Mayhew,* 188 F. Supp. 2d 891, 897 (M.D. Tenn. 2002); *Butler v. Target Corp.,* 323 F. Supp. 2d 1052, 1058-59 (C.D. Cal. 2004); *The*

*Romantics v. Activision Publ'g, Inc.,* 532 F. Supp. 2d 884, 889-90 (E.D. Mich. 2008).

Here, Plaintiffs assert that the Song has "acquired secondary meaning as Lennon's 'signature' song." Comp. at ¶ 16. In *Olivera*, the singer of the song "Girl From Ipanema" alleged that the public recognized the song as a mark designating her as a singer. In her case, as in this one, the sound recording was made prior to expansion of the federal copyright act to sound recordings in 1972. The Court, in affirming dismissal of the Lanham Act claim, held:

> We perceive no need in the interests of fairness to so expand the scope of trademark, because the law affords performing artists a number of other protections-even for performances made before the federal copyright statute was expanded in 1972 to cover sound recordings- including significant protections that may be secured by contract. We therefore affirm the district court's dismissal of the Lanham Act claim.

*Oliveira,* 251 F.3d at 63.

In this case there is a companion action pending in state court regarding this same sound recording. Plaintiffs' rights in that recording, if any, are covered by contracts with the Plaintiffs there, and the law of this Circuit does not allow them to claim trademark rights in the Song in this case.

## CONCLUSION

Even construing the Complaint in a light favorable to Plaintiffs, no facts are alleged for which any purported Lanham Act violation may be sustained. First, the Lanham Act simply does not apply to claims of an author regarding use of his work in a separately produced communicative product such as the movie *Expelled*. Beyond that, the Complaint fails to take into account the required balancing test when dealing with a movie protected by First Amendment concerns. There are no facts that could be plead that would tip the balance in favor of Lanham Act protection in this case. Alternatively, the purely nominative use of the purported trademark in the *Imagine* song title is a protected and fair use of the mark. Finally and simply,

16

the song itself is not protectable as a trademark.  Accordingly, the Lanham Act Count of the

Complaint should be dismissed with prejudice.

Dated: New York, New York
       June 20, 2008

                                        Respectfully submitted,

                                        Allen C. Wasserman (AW-4771)
                                        LOCKE LORD BISSELL & LIDDELL, LLP
                                        885 Third Avenue, 26th Floor
                                        New York, NY  10022
                                        (212) 947-4700 Telephone
                                        (212) 947-1202  Facsimile
                                        Email: awasserman@lockelord.com



**Of Counsel:**

Anthony Falzone
Julie Ahrens (JA-0372)
Center for Internet and Society
STANFORD LAW SCHOOL
559 Nathan Abbott Way
Stanford, CA  94305-8610
(650) 736-9050 Telephone
(650) 723-4426  Facsimile
Email: Anthony.Falzone@stanford.edu
Julie.Ahrens@stanford.edu


Roy W. Hardin
April R. Terry
LOCKE LORD BISSELL & LIDDELL, LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
(214) 740-8000 Telephone
(214) 740-8800  Facsimile
Email: rhardin@lockelord.com
aterry@lockelord.com