UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                          :

YOKO ONO LENNON, SEAN ONO LENNON,         08 CV 3813 (SHS)(FM)
JULIAN LENNON, and EMI BLACKWOOD    :
MUSIC, INC.,

                          :

              Plaintiffs,

                          :

    -against-

                          :

PREMISE MEDIA CORPORATION, L.P., C&S
PRODUCTION L.P. *d/b/a* RAMPANT FILMS,  :
PREMISE MEDIA DISTRIBUTION L.P. AND
ROCKY MONTAIN PICTURES, INC.,

                          :

             Defendants.
-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO VOLUNTARILY DISMISS PURSUANT TO RULE 41(a)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE

SHUKAT ARROW HAFER WEBER & HERBSMAN, L.L.P.
*Attorneys for Plaintiffs*
111 West 57th Street, Suite 1120
New York, NY  10019
(212) 245-4580

## TABLE OF CONTENTS

Procedural History.......................................................................................3

      A.    The Federal Court Action....................................................3

POINT I:    This Action Should Be Dismissed........................... .....................4

POINT II:   A Voluntary Dismissal at This Stage of the Litigation Does Not Render Defendants the 'Prevailing Parties'..............................................6

Conclusion...........................................................................................11

i

# TABLE OF AUTHORITIES

## Cases

Ackerman v. Pascal, 2002 WL 31496206, at *2, (S.D.N.Y. Nov.7, 2002) .................... 10

Bridgeport Music, Inc. v. London Music, U.K., 345 F.Supp.2d 836, 838-39
(M.D.Tenn. 2004) ........................................................................................................ 9,10

Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532
U.S. 598 (2001) ........................................................................................................ 7,8,9

Chambers v. Time Warner, Inc., 279 F.Supp.2d 362, 365 n. 4 (S.D.N.Y. 2003) .......... 8

Espada v. Rosado, 2001 WL 1020549, at *2 (S.D.N.Y. Sept.5, 2001) ............................ 7

Fernandez v. Southside Hosp., 593 F.Supp. 840, 843 (E.D.N.Y. 1984) ........................ 7

Great Am. Fun Corp. v. Hosung N.Y. Trading, Inc., 1997 WL 129399, at *2
(S.D.N.Y. March 21, 1997) ............................................................................................ 7

Hinfin Realty Corp. v. Pittston Co., 206 F.R.D. 350, 357 (E.D.N.Y. 2002) ................... 5

In re Petition of Shavit, 197 B.R. 763, 769 (S.D.N.Y. 1996) ............................................ 5

J.C. v. Reg'l School Dist. 10, Bd. of Educ., 278 F.3d 119, 123-24 (2d Cir.2002) ........... 8

Matthew Bender & Co., Inc. v. West Publ'g Co., 240 F.3d 116, 121 (2d Cir. 2001) .. 10

Massengill v. Waltz, 1996 WL 419907, at *2 (July 26, 1996, S.D.N.Y.) .................... 5

Philadelphia Stock Exch. v. Int'l Sec. Exch., 2005 WL 2923519 at *2 (S.D.N.Y. Nov.
2, 2005) ........................................................................................................................... 9

Securities and Exchange Commission v. American Board of Trade, 750 F.Supp. 100,
105 (S.D.N.Y. 1990) ....................................................................................................... 5

Silberstein v. Digital Art Solutions, Inc., 2003 WL 21297291, at *1 (S.D.N.Y. 2003) 7

TRF Music, Inc. v. Alan Ett Music Group, LLC, 2006 WL 1376931 (March 18, 2006)
........................................................................................................................................... 9

Warner Bros., Inc. v. Dae Rim Trading, Inc., 877 F.2d 1120, 1126 (2d Cir.1989) ....... 6

Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990)................................................ 5

## Statutes

Copyright Act, 17 U.S.C. § 505 ...............................................................................7, 11

## Rules

Fed.R.Civ.P. 41(a)(2) ..........................................................................................4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                :

YOKO ONO LENNON, SEAN ONO LENNON,       08 CV 3813 (SHS)(FM)
JULIAN LENNON, and EMI BLACKWOOD
MUSIC, INC.

                Plaintiff,        :

                                  :

   -against-

                                  :

PREMISE MEDIA CORPORATION, L.P., C&S
PRODUCTION L.P. *d/b/a* RAMPANT FILMS,  :
AND PREMISE MEDIA DISTRIBUTION L.P.

                                  :

              Defendants.
----------------------------------------------------------------x


### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO VOLUNTARILY DISMISS PURSUANT TO RULE 41(a)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE

     Plaintiffs, Yoko Ono Lennon, Sean Ono Lennon, Julian Lennon and EMI

Blackwood, Inc., by their attorneys, Shukat Arrow Hafer Weber & Herbsman, LLP,

respectfully submit this Memorandum of Law in support of their motion for a Order

pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, for voluntary

dismissal with prejudice of the above-captioned action and without costs and

attorney's fees and for a return of the bond posted on May 20, 2008 in connection

with the temporary restraining order. Plaintiffs seek to resolve the issue of fees and

costs since no stipulation can be reached on this issue with Defendants.

## PROCEDURAL HISTORY

This action was commenced just a little over five (5) months ago. For the reasons set forth herein, the Plaintiffs have made a determination to end the litigation, precipitated by the recent lifting of the temporary restraining order in the State Court Action. (*See* Declaration of Peter S. Shukat ("Shukat Decl.") ¶ 2). In pursuing this Action, the Plaintiffs can, at best, achieve an expensive, pyrrhic victory since the Defendants have already entered into a distribution deal for the Film, which is now available for pre-order on an October 21, 2008 release date. (See Shukat Decl., Exhibit A).

### A.    The Federal Court Action

On April 22, 2008 – four (4) days after they first ever viewed the Film - Plaintiffs filed this action, together with a motion for a temporary restraining order ("TRO") and preliminary injunction brought by order to show cause, in order to prevent the Defendants from using Imagine (the "Song") in "Expelled" (their Film).[1]

On consent of the parties, the Court herein issued the TRO, which remained in place until the date of the hearing on the preliminary injunction – May 19, 2008.[2] On that date the Defendants withdrew their consent to the TRO, and it was continued by order of the Court, until its Opinion and Order denying the preliminary injunction was entered on June 2, 2008 (the "Order").[3]

---

[1] Plaintiffs voluntarily dismissed, by stipulation of the parties, their third claim for relief in the Complaint pursuant to section 43(a) of the Lanham Act, on July 16, 2008.

[2] The defendants' consent to the terms of the TRO included their consent to the expedited production of documents and materials, in advance of the preliminary injunction hearing.

[3] While Plaintiffs filed a Notice of Appeal on June 11, 2008, the appeal was voluntarily withdrawn by

3

Although the parties exchanged their initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure, as well as their respective initial written requests for the production of documents, no discovery has commenced.

On August 26, 2008 – before any formal discovery had been exchanged and before the Defendants had served any written responses to discovery in this case – Plaintiffs advised the Defendants of their decision to voluntarily dismiss the action, with prejudice, and sought to so stipulate. The Defendants refused to do so without the unlimited and undefined reservation of their claimed rights to seek hundreds of thousands of dollars in legal fees.  (Shukat Decl. ¶ 5).

## POINT I

## THIS ACTION SHOULD BE DISMISSED

Plaintiffs seek to dismiss this action with prejudice. This action was commenced less than five (5) months ago, and Plaintiffs have brought this motion immediately after the events that led to their decision not to pursue the action. In the instant litigation discovery has not even been produced and no depositions have been taken.[4]

Rule 41(a)(2) provides that except where all parties agree to a stipulation of dismissal, "an action shall not be dismissed at the Plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2). While the decision upon what terms the motion is granted is

---

stipulation filed on August 26, 2008, before any briefs were filed.

clearly within the district court's sound discretion, <u>Zagano v. Fordham Univ.</u>, 900 F.2d 12, 14 (2d Cir. 1990),  here, where the Plaintiffs have agreed that the dismissal is with prejudice, the Defendants clearly are not prejudiced.  See also <u>Securities and Exchange Commission v. American Board of Trade,</u> 750 F.Supp. 100, 105 (S.D.N.Y. 1990) (citations omitted)(voluntary dismissal with prejudice of some of plaintiff's claims pursuant to Rule 41( a)( 2) would be granted, since no adverse effect would result to the defendants).

Because plaintiffs herein are willing to dismiss the litigation *with prejudice*, there is no risk of relitigation or other prejudice to the defendants and no other interests are at stake here, plaintiffs' motion to discontinue the action with prejudice should be granted. *See also,* <u>Massengill v. Waltz</u>, 1996 WL 419907, at *2 (July 26, 1996, S.D.N.Y.).

Plaintiffs' primary rationale for their request to dismiss this case is that the issue of preventing the release of the Film DVD with John Lennon's "Imagine", is now moot.

Moreover, upon information and belief, the Defendants may lack the financial resources to satisfy a potential judgment. *See* <u>In re Petition of Shavit</u>, 197 B.R. 763, 769 (S.D.N.Y. 1996) (plaintiff "could at best achieve an expensive Pyrrhic victory"). "Economic concerns, such as those raised by the plaintiff[s] herein, almost always dictate the course of litigation, and this case is no exception." *See* <u>Hinfin Realty Corp. v. Pittston Co.</u>, 206 F.R.D. 350, 357 (E.D.N.Y. 2002).  In addition,

---

[4] In fact, no depositions were even scheduled to commence until October.

discovery, for both sides, will be enormously expensive.  In fact, no less than eight

depositions in both New York and Texas were being discussed.


## POINT II

### A VOLUNTARY DISMISSAL AT THIS STAGE OF THE LITIGATION DOES NOT RENDER DEFENDANTS THE 'PREVAILING PARTIES'

Plaintiffs brought this action in good faith.  While the Court did ultimately

hold that the Plaintiffs did not show a clear likelihood of success on the merits at

the preliminary injunction stage, it made other findings of fact and conclusions of

law which supported the merit to plaintiffs' claims, *to wit*:

> Because, as discussed below, plaintiffs have made out a prima facie case of copyright infringement, there is a presumption that they will be irreparably harmed absent the injunction … (Order p. 7)

> [P]laintiffs have established a prima facie case of copyright infringement. (Order p. 10)

> Defendants in this case concede that "Expelled" is a commercial film from which they seek to profit. (Order p. 12)

> Defendants here concede, as they must, that "Imagine" is a creative work and, as such, is at the "core" of copyright protection. (Order p. 17)

The Copyright Act provides that a court, in its discretion, may award

attorney's fees to a prevailing party. *See* 17 U.S.C. § 505. "Generally, the prevailing

party is one who succeeds on a significant issue in the litigation [.]" Warner Bros.,

Inc. v. Dae Rim Trading, Inc., 877 F.2d 1120, 1126 (2d Cir.1989). A party's success

on a claim that is 'purely technical or *de minimus*' does not qualify him as a

'prevailing party." ' Id. (citations omitted).

Where the case terminates because the plaintiff filed a Notice of Voluntary Dismissal, a court must examine the circumstances surrounding the voluntary dismissal to determine if the defendant may properly be considered a "prevailing party." As the Court stated in <u>Fernandez v. Southside Hosp.</u>, 593 F.Supp. 840, 843 (E.D.N.Y. 1984):

> Certainly, it cannot be said that a defendant always prevails when a plaintiff voluntarily dismisses his lawsuit without prejudice. It would be incorrect and illogical, however, to hold that a defendant never prevails upon such a voluntary dismissal. The answer, we believe, lies in examining the circumstances surrounding the voluntary dismissal. For example, where the complaint is clearly frivolous or there have been proceedings on the merits or substantial discovery, defendants have a stronger argument that they prevail when plaintiff voluntarily discontinues suit.

<i>See also</i> <u>Great Am. Fun Corp. v. Hosung N.Y. Trading, Inc.</u>, 1997 WL 129399, at *2 (S.D.N.Y. March 21, 1997); <u>Silberstein v. Digital Art Solutions, Inc.</u>, 2003 WL 21297291, at *1 (S.D.N.Y. 2003). A defendant is not considered a "prevailing party," where for example, the plaintiff voluntarily dismissed because, for tactical reasons, it chose to bring its claims in state court rather than federal court, or where discovery of adverse facts or a change in the law caused the plaintiff to voluntarily dismiss. <i>See</i> <u>Espada v. Rosado</u>, 2001 WL 1020549, at *2 (S.D.N.Y. Sept.5, 2001).

In <u>Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598 (2001), the Supreme Court held that, in order to be considered a prevailing party for purposes of federal fee shifting statutes, a party must "secure a judgment on the merits or a court-ordered consent decree." <u>Id</u>. at 600. The Court reasoned that, while a voluntary change in one party's conduct might effectively

7

result in the other party receiving all the relief it sought in the suit, the term "prevailing party" as used by Congress requires a "judicially sanctioned change in the legal relationship of the parties." Id. at 605. Thus, in Buckhannon, the Court held that plaintiffs were not entitled to attorneys' fees where defendants' motion to dismiss an action as moot had been granted by the district court after the West Virginia legislature amended state law to eliminate provisions which plaintiffs had challenged as violating the federal Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3601 et seq., and Americans with Disabilities Act ("ADA"), 42 U.S.C. §2101 et seq. Id. at 601. Though Plaintiffs might have been said to have accomplished what they set out to achieve in filing the suit, i.e., compelled a change in state law, the Court held that they did not "prevail" in the sense that term is used in the fee-shifting provisions of the various federal statutes which contain such provisions. Id. at 605-06; see also Id. at 620 (Scalia, J., concurring) ("One does not prevail in a suit that is never determined.").

Though Buckhannon dealt with the attorneys' fee provisions under the FHAA and ADA, the Court made clear that its holding was equally applicable to the "[n]umerous federal statutes [that] allow courts to award attorney's fees and costs to the 'prevailing party.' " Buckhannon, 532 U.S. at 600; see also J.C. v. Reg'l School Dist. 10, Bd. of Educ., 278 F.3d 119, 123-24 (2d Cir.2002) (recognizing the Buckhannon decision "expressly signaled [the] wider applicability" of its definition of "prevailing party"). The requirements for "prevailing party" status set forth in Buckhannon have been applied to the fee-shifting provision under the Copyright Act. See, e.g., Chambers v. Time Warner, Inc., 279 F.Supp.2d 362, 365 n. 4

(S.D.N.Y. 2003) ("Although <u>Buckhannon</u> concerned the fee-shifting provisions of the Fair Housing Amendments Act of 1988 and the Americans with Disability [sic] Act of 1990, it is clear that <u>Buckhannon</u> applies with equal force to the fee-shifting provision of the Copyright Act.") (citations omitted); <u>Philadelphia Stock Exch. v. Int'l Sec. Exch.</u>, 2005 WL 2923519 at *2 (S.D.N.Y. Nov. 2, 2005) ("This definition of 'prevailing party' applies to that term as it is used in the Copyright Act.") (citations omitted); <u>TRF Music, Inc. v. Alan Ett Music Group, LLC</u>, 2006 WL 1376931 (March 18, 2006); <u>Bridgeport Music, Inc. v. London Music, U.K.</u>, 345 F.Supp.2d 836, 838-39 (M.D.Tenn. 2004).

Here, defendants cannot be said to have prevailed under the standard set forth in <u>Buckhannon</u>. This kind of voluntary dismissal "lacks the judicial *imprimatur*" to render defendants prevailing parties. <u>Buckhannon</u>, 532 U.S. at 605. In <u>Philadelphia Stock Exchange</u>, the court had initially granted a Temporary Restraining Order ("TRO") for a period of 24 hours, preventing trading of options on a certain commodities index created by defendant, which plaintiff contended was an "unauthorized copy" of its own index. After review of the parties' submissions, the court declined to extend the TRO. Plaintiff then filed an amended complaint in which it withdrew its claim for copyright infringement. <u>Philadelphia Stock Exch.</u>, 2005 WL 2923519 at *1. The court held that the refusal to extend the TRO and subsequent withdrawal of the copyright claim was insufficient to render defendant a prevailing party for purposes of Section 505. "[S]ince plaintiff's decision to withdraw its claim was completely voluntary and thus lacking the requisite judicial *imprimatur,* as a matter of law, defendant could not be the prevailing party on

plaintiff's copyright claim and would not be entitled to attorney's fees under the Copyright Act." Id. at *2.

Both of these cases involved significantly more judicial action prior to the ultimate dismissal than did this case, and the courts nevertheless recognized that they could not, consistent with Buckhannon, award attorneys' fees to the defendants. Though defendants in those cases were likely pleased after the dismissals, and likely considered themselves the victors, "it is the nature of the judicial involvement in the outcome, rather than its practical effects, that determine whether one party has prevailed." Bridgeport Music, 345 F.Supp.2d at 839.

"In exercising its discretion under 17 U.S.C. § 505, a court should consider factors such as frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Ackerman v. Pascal, 2002 WL 31496206, at *2, (S.D.N.Y. Nov.7, 2002). The Second Circuit has given the "objective reasonableness" factor substantial weight in the calculus. See Matthew Bender & Co., Inc. v. West Publ'g Co., 240 F.3d 116, 121 (2d Cir. 2001); Ackerman, 2002 WL 31496206, at *2.

## CONCLUSION

The Plaintiff commenced this action to enforce its invaluable intellectual property right in connection with one of John Lennon's important musical works, "Imagine". For all the foregoing reasons, Plaintiffs' motion should be granted in its entirety.

Dated:        New York, New York
              September 5,  2008


                          Respectfully Submitted,



                          SHUKAT ARROW HAFER WEBER &
                          HERBSMAN, L.L.P.
                          Attorneys for Plaintiffs
                          111 West 57th Street
                          Suite 1120
                          New York, New York  10019
                          212-245-4580

              By:    _____
                          Dorothy M. Weber (DW 4734)

TO:    Anthony Falzone, Esq.
       Stanford Law School
       559 Nathan Abbott Way
       Stanford, CA
       650-736-9050
       Attorneys for Defendants

       Roy W. Hardin, Esq.
       Locke Lord Bissell & Liddell, LLP
       2200 Ross Avenue, Suite 2200
       Dallas, Texas 75201
       Attorneys for Defendants

Westlaw.

Not Reported in F.Supp.                                                                    Page 1
Not Reported in F.Supp., 1996 WL 419907 (S.D.N.Y.)
 **(Cite as: 1996 WL 419907 (S.D.N.Y.))**

C Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Lora MASSENGILL, Plaintiff,
v.
Joseph M. WALTZ, M.D. and Neuromed, Inc.,
Defendants.
Dorothy SWOB and Ronnie Swob, Plaintiffs,
v.
Joseph M. WALTZ, M.D. and Neuromed, Inc.,
Defendants.
**No. 94 CIV. 3171 (DAB), 94 CIV. 3172 (DAB).**

July 26, 1996.

*MEMORANDUM and ORDER*

BATTS, District Judge.

**\*1** Plaintiffs in each of these consolidated actions
and Defendant Neuromed, Inc. ("Neuromed"), jointly
move for dismissal of all claims against Defendant
Neuromed and dismissal of the cross-claims of
Defendant Joseph M. Waltz, M.D. ("Waltz"). In his
cross-motion dated April 3, 1996, Waltz asks the
Court for leave to serve non-party discovery and
deposition subpoenas upon the attorneys for
Neuromed and for an order permitting him to
introduce evidence at trial that he alleges will show
that any liability in this proceeding attaches solely to
Neuromed. In its opposition to this cross-motion,
Neuromed argues that Waltz' request for discovery
and deposition subpoenas should be denied because
of Waltz' previous reluctance to seek this
information, Neuromed's desire to relieve themselves
of the cost of further litigation, and the lack of any
specific request for documents, interrogatories, or
notices of deposition.

For the reasons set forth below, Plaintiffs' claims
against Neuromed and Waltz' cross-claims are
dismissed, and Waltz' request that Neuromed's
attorneys be required to accept service of discovery
requests and deposition notices is denied.

I. BACKGROUND
All parties agree to the basic facts of this case. [FN1]

Both female plaintiffs suffer from Dystonia
Musculorum Deformans. (Massengill's 2d
Am.Compl. ¶ 7; Swob's 2d Am.Compl. ¶ 7.) Both
claim to have sustained injuries as a result of medical
malpractice performed by Waltz and from alleged
defects in certain transcutaneous nerve stimulation
systems manufactured by Neuromed which were
implanted in the bodies of the female plaintiffs by
Waltz in the course of his attempt to remedy their
condition. (Pls.' and Neuromed's Aff. ¶ 3.) Waltz
also performed revision procedures on each female
plaintiff in an attempt to fix problems with these
devices after implantation. (*Id.* ¶ 3.)

> FN1. Waltz states that the plaintiffs' and
> Neuromed's Affidavit sufficiently sets forth
> the nature of the action for the purposes of
> his cross motion. (Waltz' Aff. in Supp. of
> Cross-Mot. ¶ 3.) This section relies
> primarily on this Affidavit.

Except for the dates of the implantation and the
revisions, the Second Amended Complaints are
substantially the same for both female plaintiffs.
[FN2] The plaintiffs both claim that they suffered
severe pain, discomfort, and disability as a result of
the implant device. (Massengill's 2d Am.Compl. ¶
12; Swob's 2d Am.Compl. ¶ 12.) Their first cause of
action seeks compensation from Neuromed based
upon a claim of negligent design, manufacture, and
inspection of the implant device. (Massengill's 2d
Am.Compl. ¶ 21; Swob's 2d Am.Compl. ¶ 22.)
Their second cause of action seeks recovery from
Neuromed based on a claim of strict products liability
and breach of warranty. (Massengill's 2d Am.Compl.
¶ 39; Swob's 2d Am.Compl. ¶ 39.) The third cause
of action is against Waltz and alleges medical
malpractice in connection with his implantation of
the respective devices. (Massengill's 2d Am.Compl.
¶ 47; Swob's 2d Am.Compl. ¶ 47.) The fourth cause
of action alleges a claim against Waltz as a
distributer, retailer and/or seller of the device,
premised on strict products liability. (Massengill's 2d
Am.Compl. ¶ 49, 56; Swob's 2d Am.Compl. ¶ 49,
56.)

> FN2. The Swob Second Amended
> Complaint also includes a fifth cause of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 419907 (S.D.N.Y.)
**(Cite as: 1996 WL 419907 (S.D.N.Y.))**

action regarding Ronnie Swob's loss of services due to his wife's injuries. The Massengill Second Amended Complaint does not make a similar derivative claim.

**\*2** In September 1995, Plaintiffs and Neuromed agreed to settle the two actions. (Pls.' and Neuromed's Mem. at 3.) In the two Settlement Agreements and Releases, dated February 26, 1996, and signed by the respective plaintiffs and Neuromed, the plaintiffs stipulated to the dismissal of each action against Neuromed and the dismissal of claims against Waltz that held him liable as a distributor or seller of the medical implants. (Massengill's Stip. ¶ 1-3; Swob's Stip. ¶ 1-3.) Plaintiffs and Neuromed claim that this was done in order to dispose of all claims against Neuromed, including defendant Waltz' cross-claims that seek contribution and/or indemnification if Waltz is held liable. (Massengill's Stip. ¶ 4; Swob's Stip. ¶ 4.) Accordingly, plaintiffs and Neuromed move this Court to dismiss these claims.

In his cross-motion dated April 3, 1996, Waltz does not dispute the dismissal of these claims. [FN3] (Waltz' Aff. in Supp. of Cross-Mot. ¶ 3.) However, he does request that the Court grant an order permitting service of non-party document discovery and depositions on Neuromed's attorneys. (*Id.*) In addition, he also requests that the Court permit him to introduce evidence at trial that he alleges will show that any liability in this proceeding attaches solely to Neuromed. (*Id.* ¶ 7.)

> FN3. Counsel for Defendant Waltz' states his position on this matter clearly:
> Your affiant [counsel for Waltz] does not quarrel with defendant Neuromed's motion for judgment dismissing the cross claims of defendant Waltz against him in the absence, to date, of a written indemnity agreement.
> (Waltz' Aff. in Supp. of Cross-Mot. ¶ 3.)

Neuromed has responded to these requests with an Affidavit in Opposition to Cross Motion of Defendant Waltz dated April 9, 1996, arguing that Waltz' request for discovery and depositions should be denied because he did not request such proceedings at the appropriate time, he did not specify the information he would seek, and because it would further add to Neuromed's litigation costs,

which were a substantial motivation for Neuromed's decision to settle with Plaintiffs. (Neuromed's Aff. in Opp'n to Cross-Mot. of Def. Waltz ¶ 4-6.)

## II. DISCUSSION
### A. Dismissal of Claims

#### 1. *Plaintiffs' Claims*

Plaintiffs in both actions and Defendant Neuromed jointly request the Court to dismiss Plaintiffs' claims against Neuromed with prejudice. Under Rule 41(a)(2) of the Federal Rules of Civil Procedure, voluntary dismissals may be granted if prejudice will not result against the other party. *Securities and Exch. Comm'n v. American Bd. of Trade, Inc.,* 750 F.Supp. 100, 105 (S.D.N.Y.1990). No party has objected on the basis of prejudice, and the Court finds none. Accordingly, Plaintiffs' claims against Defendant Neuromed are hereby dismissed with prejudice.

Similarly, Plaintiffs and Neuromed request that this Court dismiss with prejudice Plaintiffs' claim alleging Waltz' liability as a seller or distributor of the products at issue. For the reasons stated above, and because Defendant Waltz has not opposed this request, those claims are hereby dismissed with prejudice.

#### 2. *Waltz' Cross-Claims Against Neuromed*

Plaintiffs and Defendant Neuromed also request that the cross-claims asserted by Defendant Waltz be dismissed against Neuromed pursuant to Rules 12(c) and 12(h)(2) of the Federal Rules of Civil Procedure. (Pls.' and Neuromed's Mot. at 1.) Waltz' cross-claim seeks contribution and/or indemnification from Neuromed if he is found liable in this action. Plaintiffs and Neuromed assert, however, that because Plaintiffs have dismissed their claims against Waltz in respect to him being a seller or distributor of Neuromed's device, Waltz no longer has any possible right to contribution or indemnification from Neuromed. (Pls.' and Neuromed's Mem. at 1-2.) Thus, Plaintiffs and Defendant Neuromed contend that Waltz' cross-claim should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(c) and (h)(2) of the Federal Rules of Civil Procedure. (Pls.' and Neuromed's Mot. at 1.) Because Waltz does not

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 419907 (S.D.N.Y.)
**(Cite as: 1996 WL 419907 (S.D.N.Y.))**

Page 3

oppose this request, and because Plaintiffs' and Defendant Neuromed's legal analysis is sound, *see First Fed. Sav. and Loan Ass'n of Pittsburgh v. Oppenheim, Appel. Dixon & Co., 631 F.Supp. 1029, 1032- 34 (S.D.N.Y.1986); In re Poling Transp. Corp., 784 F.Supp. 1045, 1048 (S.D.N.Y.1992),* [FN4] that motion is granted. Accordingly, Defendant Waltz' cross-claim against Neuromed is hereby dismissed with prejudice.

> FN4. Relying on *First Federal, 631 F.Supp. at 1032-34,* movants correctly argue that the Releases executed by Plaintiffs as to Neuromed bar any right to contribution which Defendant Waltz may have had against Neuromed. Furthermore, movants correctly cite *Poling Transp., 784 F.Supp. at 1048,* for the proposition that no right to indemnification exists when the proposed indemnitee (Waltz, in this instance) retains a duty owed directly to the plaintiff.

**B.** *Further Pre-trial Discovery*

**\*3** By attorney affidavit, Defendant Waltz asks the Court to permit him to serve discovery subpoenas on Neuromed's present counsel, rather than require him to follow the normal procedures under the Federal Rules of Civil Procedure for non-party discovery. (Waltz' Aff. in Supp. of Cross.Mot. ¶ 3.) Defendant Waltz cites no case authority, and merely argues that such an extension is necessary to conserve his client's resources. Defendant Waltz presents no compelling reason to the Court as to why it should require Defendant Neuromed to retain their present counsel for the purpose of receiving and transmitting discovery requests from Defendant Waltz. Accordingly, this aspect of Defendant Waltz' cross-motion is denied.

Further, in the Court's Order dated March 11, 1996, the Court extended discovery for an additional sixty (60) days and stated that no additional extensions of the discovery deadline would be granted. As management of pre-trial discovery is firmly within the discretion of the Court and sufficient time and notice were given to both parties to complete pre-trial activities, the Court denies Waltz' *implied* application for an extension of discovery.

**C.** *Admissibility of Evidence at Trial*

In his papers, Waltz also petitions the Court for permission to present evidence at trial that he contends will show that any liability in this action attaches solely to Neuromed. (Waltz' Aff. in Supp. of Cross Mot. ¶ 3.) As presented, this motion is both vague and premature; the Court therefore denies the motion.

### III. CONCLUSION

For the reasons stated above, it is hereby ordered that:

(1) All Plaintiffs' claims against Defendant Neuromed are hereby dismissed with prejudice;

(2) All Plaintiffs' claims against Defendant Waltz as a seller or distributor of Defendant Neuromed's products are hereby dismissed with prejudice;

(3) Defendant Waltz' cross-claims against Defendant Neuromed are hereby dismissed with prejudice;

(4) Defendant Waltz' application to allow him to serve discovery requests on Defendant Neuromed's counsel following Neuromed's dismissal from this action is denied; and,

(5) Defendant Waltz' motion for an order declaring the admissibility of certain evidence is denied as vague and premature.

SO ORDERED

Not Reported in F.Supp., 1996 WL 419907 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.                                                                                           Page 1
Not Reported in F.Supp., 1997 WL 129399 (S.D.N.Y.), 1997 Copr.L.Dec. P 27,627, 42 U.S.P.Q.2d 1729

▷Great American Fun Corp. v. Hosung New York
Trading, Inc.
S.D.N.Y.,1997.

United States District Court,S.D. New York.
GREAT AMERICAN FUN CORP., Plaintiff,
v.
HOSUNG NEW YORK TRADING, INC.,
Kingsland, Inc. and F.A.O. Schwarz, Inc.,
Defendants.
**No. 96 Civ. 2986(LAK).**

March 21, 1997.

Kenneth A. Plevan, Susanna Fischer, Skadden, Arps,
Slate, Meagher & Flom, New York City, Eric L.
Brown, for Plaintiff.
Carl W. Oberdier, Debevoise & Plimpton, Joseph A.
Kolasch, Robert J. Kenney, Bernard L. Sweeney,
Birch, Stewart, Kolasch & Birch, Falls Church, VA,
for Defendants.

*Facts*

KAPLAN, District Judge.
**\*1** On April 24, 1996, plaintiff Great American Fun
Corp. ("GAF") brought this action under the
Copyright Act, 17 U.S.C. § 101*et seq.,* the Lanham
Act, 15 U.S.C. § 1051*et seq.,* and asserted a pendent
state law unfair competition claim, alleging that
defendants were selling puppets which infringed on
plaintiff's copyright for its Limber Louie puppet. Two
days later, GAF sought a preliminary injunction by
order to show cause. Defendants were ordered to
respond by April 30, and the Court set oral argument
for 9:30 A.M. of May 1.

On April 30, 1996, GAF received defendants'
response papers. Defendants had investigated
plaintiff's infringement claim and determined that, in
fact, a company named Chico Art based in El Paso,
Texas, had marketed a puppet named Walking Willie,
which was substantially similar to Limber Louie,
prior to the alleged creation of Limber Louie.
(Kenney Supp. Dec.) Hours later, GAF served
defendants with a notice of dismissal without
prejudice, pursuant to Rule 41(a)(1) of the Federal

Rules of Civil Procedure. Plaintiff subsequently
purchased the Walking Willie copyright and filed a
new lawsuit which was tried before this Court and is
now *sub judice. Great American Fun Corp. v.
Hosung New York Trading, Inc.,* No. 96 Civ.
4100(LAK) ("GAF II").

Defendants now move for attorney's fees and costs in
the sum of $29,109.70 under the Copyright
Act.[FN1] For the foregoing reasons, defendants' motion
is granted.

> FN1. Defendants move also for attorney's
> fees under the Lanham Act and the inherent
> authority of the Court. The Court need not
> address these claims, as it grants defendants'
> motion under the Copyright Act.

*Discussion*

Section 505 of the Copyright Act of 1976, 15 U.S.C.
§ 505, provides for the award of costs and attorneys'
fees in appropriate cases:

"In any civil action under this title, the court in its
discretion may allow the recovery of full costs by or
against any party other than the United States or an
officer thereof. Except as otherwise provided by this
title, the court may also award a reasonable attorney's
fee to the prevailing party as part of the costs."

Plaintiff makes three arguments in opposition to
defendants' motion: (1) the Court should defer
decision on the motion pending resolution of *GAF II;*
(2) defendants are not a "prevailing party" within
the meaning of Section 505; and (3) the Court should
not exercise its discretion to award fees to
defendants.

*Further Deferral Is Improper*

GAF's first argument-that *GAF II* involves
"essentially the same issues as the withdrawn
lawsuit" and that the motion at bar therefore is
premature-is unconvincing. (Pl.Mem.10)

*GAF II* was tried on November 13, 1996.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                    Page 2
Not Reported in F.Supp., 1997 WL 129399 (S.D.N.Y.), 1997 Copr.L.Dec. P 27,627, 42 U.S.P.Q.2d 1729

Inconsequence, all evidence relevant to this motion is now before the Court. The outcome of *GAF II* is immaterial to this motion, as there is a fundamental difference between the litigations. In plaintiff's own words, this action was brought despite the existence of a "cloud on GAF's copyright." (*Id.* 1) Prior to commencing *GAF II,* plaintiff secured an assignment of the Walking Willie copyright, thus lifting the cloud. The cases are fundamentally dissimilar, as this case was flawed at its inception in a way that *GAF II* is not. The Court therefore declines to defer its decision of this motion any further.

### Defendants Were Prevailing Parties

**\*2** Plaintiff next contends that defendants were not prevailing parties within the meaning of Section 505 because it voluntarily dismissed this lawsuit. It is well established, however, that a defendant in an action voluntarily dismissed may be a prevailing party under the Copyright Act."[W]ithdrawal of [a] claim in effect [makes] the defendants the prevailing parties on that issue." *Warner Bros. v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1126 (2d Cir.1989); *accord, Corcoran v. Columbia Broadcasting System, Inc.,* 121 F.2d 575, 576 (9th Cir.1941) (defendant was prevailing party under Copyright Act despite plaintiff's voluntary dismissal of complaint when "defendant has been put to the expense of making an appearance and of obtaining an order for the clarification of the complaint"); *Uniflow Mfg. Co. v. Superflow Mfg. Corp.,* 10 F.R.D. 589, 589 (N.D.Ohio 1950) ("A voluntary dismissal by plaintiff after the defendant has taken depositions and filed a motion for more definite statement makes the defendant the prevailing party.").

Then-District Judge Altimari addressed the issue [FN2] at length in *Fernandez v. Southside Hosp.,* 593 F.Supp. 840 (E.D.N.Y.1984):

> FN2. Even though *Fernandez* was a civil rights claim, Judge Altimari's discussion of the prevailing party issue in attorney's fee statutes was intended to be a general one, as demonstrated by the fact that it is based in significant part on *Corcoran v. Columbia Broadcasting System,* 121 F.2d 575 (9th Cir.1941), a copyright case. *Fernandez,* 593 F.Supp. at 842.

> "Certainly, it cannot be said that a defendant always prevails when a plaintiff voluntarily dismisses his lawsuit without prejudice. It would be incorrect and illogical, however, to hold that a defendant never prevails upon such a voluntary dismissal. The answer, we believe, lies in examining the circumstances surrounding the voluntary dismissal. For example, where the complaint is clearly frivolous or there have been proceedings on the merits or substantial discovery, defendants have a stronger argument that they prevail when plaintiff voluntarily discontinues suit. On the other hand, where it has not been shown that the complaint is frivolous and there have been no proceedings on the merits nor substantial pre-trial proceedings, the argument must necessarily be less persuasive." *Id.* at 843 (footnote omitted);

Although GAF dismissed this suit only days after its commencement, it forced defendants to respond quickly on the merits. Defendants engaged in substantial research, witnessed in part by their uncovering of the fact that plaintiff did not own the copyright upon which it sued and, in fact, had copied the Chico Art design. Although there was no decision on the merits, one that plaintiff was sure to lose and on which defendants had prepared thoroughly, the moment of reckoning was only hours away when plaintiff discontinued the suit. Accordingly, defendants are prevailing parties.

### Attorney's Fees and Costs Properly Are Awarded

The parties concur that an award of attorney's fees is within the Court's discretion. The Supreme Court recently provided some parameters governing the exercise of this discretion: relevant "factors include 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.' " *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (quoting *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 156 (3d Cir.1986)).

**\*3** At least two of these factors, frivolousness and a need for deterrence, are present here and prompt the Court to grant defendants' motion. Plaintiff's order to show cause included an affirmation under penalty of perjury from Morton M. Rosenberg, the alleged

Not Reported in F.Supp.                                                                    Page 3
Not Reported in F.Supp., 1997 WL 129399 (S.D.N.Y.), 1997 Copr.L.Dec. P 27,627, 42 U.S.P.Q.2d 1729

"creator" of Limber Louie. Rosenberg affirmed: "I do not believe that any product remotely similar to Limber Louie was being sold or offered for sale on the market at the time Limber Louie was first introduced to the market. Nor am I personally aware of similar puppets being sold in the past. ...*[T]he ultimate design of Limber Louie was ... the product of the creative process of designing this toy.*" (Rosenberg Aff. 3) (emphasis added)

Directly contrary to Rosenberg's sworn statement in this case, plaintiff claims in *GAF II* that "GAF used the [Chico Art]Walking Willie sample as a prototype for the design of Limber Louie." (*Id.* 3) During the trial of *GAF II,* plaintiff admitted that Rosenberg knew of the Walking Willie when he signed the affirmation in this case. (*GAF II* Tr. 47-50, 164) GAF therefore concedes that the Rosenberg affirmation was incorrect and misleading.[FN3] While plaintiff claims that it did not understand the significance of the facts that were misrepresented, the Court finds otherwise.

> FN3. The Court does not suggest that plaintiff's counsel was aware of the misinformation contained in Rosenberg's affirmation. Indeed, H. Brian Haney, GAF's owner and president, repeatedly stated during the *GAF II* trial that he had not informed counsel of the existence of the Walking Willie. (*GAF II* Tr. 45-51)

Plaintiff's assertion that it had created Limber Louie independently rested on the Rosenberg affirmation and was central to its infringement claim. GAF thus brought a copyright infringement claim against defendants despite the fact that plaintiff did not own, and knew or should have known that it did not own, the copyright. (*See GAF II* Tr. 43-44) It falsely claimed that Rosenberg was the creator of the allegedly infringed article. In addition to rendering plaintiff's claim frivolous and the affirmation dishonest, such behavior also implicates the Supreme Court's concern with deterrence. Future litigants should be discouraged from comparable behavior. Accordingly, the Court determines that an award of attorney's fees and costs is appropriate.

*Conclusion*

Defendants' motion for attorney's fees and costs is

granted. They shall have judgment against plaintiff in the amount of $29,109.70, as plaintiff has not disputed the accuracy of defendants' contentions as to the extent of the work occasioned by plaintiff's actions or the reasonableness of the charges therefor.

SO ORDERED.

S.D.N.Y.,1997.
Great American Fun Corp. v. Hosung New York Trading, Inc.
Not Reported in F.Supp., 1997 WL 129399 (S.D.N.Y.), 1997 Copr.L.Dec. P 27,627, 42 U.S.P.Q.2d 1729

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**Westlaw.**

Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2003 WL 21297291 (S.D.N.Y.), 2003 Copr.L.Dec. P 28,635

C Silberstein v. Digital Art Solutions, Inc.
S.D.N.Y.,2003.

United States District Court,S.D. New York.
Ivy SILBERSTEIN (d/b/a/ Ivy Supersonic) Plaintiff,
v.
DIGITAL ART SOLUTIONS, INC., as purported
assignee of Smart Designs, Inc., Defendant.
No. 02 CV 8187 GBD.

June 4, 2003.

Alleged owner of copyright on cartoons brought suit for monetary damages and declaratory judgment against alleged infringer. After alleged owner's motion for voluntary dismissal without prejudice was granted, alleged infringer moved for attorney fees as prevailing party under the Copyright Act. The District Court, Daniels, J., held that alleged infringer was not a prevailing party in action, given that alleged owner's action was not frivolous because she had good faith basis for believing she was assignee of copyright and reasonably sought to preserve her rights in creator's related action against alleged infringer regarding assignment, and dismissal was reasonable because creator's action would resolve issues pending between parties.

Motion denied.

West Headnotes

**Copyrights and Intellectual Property 99 ⬢90(2)**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k90 Costs
                    99k90(2) k. Attorney Fees. Most Cited Cases
Alleged infringer of copyright on cartoons held by alleged owner whom cartoon's creator had authorized to create derivative works was not prevailing party in action brought by alleged copyright owner, as required to be entitled to attorney fees under Copyright Act upon alleged owner's voluntary dismissal of action; alleged owner's action was not frivolous because she had good faith basis for believing she was assignee of copyright and sought to preserve her rights in creator's related action against alleged infringer regarding assignment, dismissal was reasonable because creator's action would resolve issues pending between parties, and there had been no ruling on the merits or substantial discovery in either action. 17 U.S.C.A. § 505.

*MEMORANDUM OPINION & ORDER*

DANIELS, J.
*1 Plaintiff brought suit against defendant on October 16, 2002, alleging violations of the Copyright Act, 17 U.S.C. § 101, *etseq.*, in connection with a "Beaver Cartoon" to which plaintiff claimed that all rights, including copyright, had been transferred and assigned to her by the cartoon's creator, Ron Szafarczyk. Plaintiff sought monetary damages and a declaratory judgment that, subject to certain limited privileges granted to defendant's predecessor in interest, she was the sole and exclusive owner of the copyright to the "Beaver Cartoon." Plaintiff then filed a Notice of Voluntary Dismissal without prejudice on January 29, 2003. This court so ordered that Notice of Voluntary Dismissal without prejudice on January 31, 2003. Defendant now moves for attorney's fees pursuant to 17 U.S.C. § 505 and Fed.R.Civ.P. 54. For the following reasons, defendant's motion is denied.

The Copyright Act provides that a court, in its discretion, may award attorney's fees to a prevailing party. *See*17 U.S.C. § 505. "Generally, the prevailing party is one who succeeds on a significant issue in the litigation [.]"*Warner Bros., Inc. v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1126 (2d Cir.1989). A party's success on a claim that is 'purely technical or *de minimus'* does not qualify him as a 'prevailing party." ' *Id.*

Where the case terminates because the plaintiff filed a Notice of Voluntary Dismissal, a court must examine the circumstances surrounding the voluntary dismissal to determine if the defendant may properly be considered a "prevailing party:"

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                       Page 2
Not Reported in F.Supp.2d, 2003 WL 21297291 (S.D.N.Y.), 2003 Copr.L.Dec. P 28,635

Certainly, it cannot be said that a defendant always prevails when a plaintiff voluntarily dismisses his lawsuit without prejudice. It would be incorrect and illogical, however, to hold that a defendant never prevails upon such a voluntary dismissal. The answer, we believe, lies in examining the circumstances surrounding the voluntary dismissal. For example, where the complaint is clearly frivolous or there have been proceedings on the merits or substantial discovery, defendants have a stronger argument that they prevail when plaintiff voluntarily discontinues suit. On the other hand, where it has not been shown that the complaint is frivolous and there have been no proceedings on the merits nor substantial pre-trial proceedings, the argument must necessarily be less persuasive.

*Great Am. Fun Corp. v. Hosung N.Y. Trading, Inc.,* No. 96 cv 2986, 1997 WL 129399, at * 2 (S.D.N.Y. March 21, 1997), *quoting Fernandez v. Southside Hosp.,* 593 F.Supp. 840, 843 (E.D.N.Y.1984). A defendant is not considered a "prevailing party," where for example, the plaintiff voluntarily dismissed because, for tactical reasons, it chose to bring its claims in state court rather than federal court, or where discovery of adverse facts or a change in the law caused the plaintiff to voluntarily dismiss. *See Espada v. Rosado,* No. 00cv6469, 2001 WL 1020549, at *2 (S.D.N.Y. Sept.5, 2001). "Where, however, a 'calculating' plaintiff obtains a dismissal in order to avoid an adverse ruling on the merits, the case for the defendant becomes more compelling ..... [A] plaintiff should not be able to avoid paying attorney's fees by bringing a frivolous claim and then obtaining a dismissal before a ruling on the merits."*Id.*

**\*2** The *Silberstein* action is the third of three related actions filed in this Court alleging copyright infringement with respect to the "Beaver Cartoon." The second action, *Szafarczyk v. Digital Art Solutions, Inc.,* 02 cv 5481(GBD), was filed on July 16, 2002 against defendant Digital by the original creator and owner of the copyright, Ron Szafarczyk.[FN1] In the *Szafarczyk* action, Szafarczyk alleged that Digital infringed upon his copyrights to 100 illustrations, including the "Beaver Cartoon." Digital filed a motion to stay, transfer venue, or in the alternative to dismiss. Defendant Digital argued in the motion that Szafarczyk had assigned his

copyrights to the illustrations, including the "Beaver Cartoon," to Digital's predecessor in interest pursuant to an agreement dated July 27, 1994. On August 15, 2002, two months after Szafarczyk filed his suit, Digital commenced arbitration proceedings in Arizona against Szafarczyk pursuant to an arbitration clause in the July 27, 1994 agreement to determine the validity of the purported assignment to Digital's predecessor in interest.

> FN1. The first lawsuit, *Silberstein v. Fox Entertainment Group, Inc.,* 02 cv 1131(GBD), was brought by Silberstein on February 13, 2002 against Fox Entertainment. In that action, Silberstein alleges that she is the lawful assignee of the copyright to the "Beaver Cartoon," and that Fox Entertainment violated her copyrights to that cartoon. That case is still pending before this Court.

In the instant action, plaintiff contends that she also has standing to pursue the copyright claim against Digital regarding the "Beaver Cartoon." Plaintiff contends that Szafarczyk authorized her to create derivative works based on the "Beaver Cartoon" in June 1999, and that they retroactively memorialized their agreement in writing on July 8, 2002. Plaintiff filed this separate lawsuit against Digital because Digital opposed her motion to intervene in the *Szafarczyk* action. The Arizona arbitration proceeding, therefore, will resolve the copyright issues raised in the *Szafarczyk* action, as well as the instant case.[FN2]

> FN2. The arbitrator in the *Digital v. Szafarczyk* arbitration issued an Order on January 30, 2003 declaring, *inter alia,* that: 1) the issue of copyright ownership of the "Beaver Cartoon" is subject to arbitration; and 2) pursuant to the 1994 agreement, Digital became the owner of the copyright in the "Beaver Cartoon" after July 27, 1999. However, on March 13, 2003, the arbitrator granted Szafarczyk's motion to reargue these issues. The arbitrator set a schedule for the exchange of pre-hearing memoranda, and a hearing date for June 5 and 6, 2003.

It can not be said that the complaint was frivolous because Silberstein attempted to intervene in the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 21297291 (S.D.N.Y.), 2003 Copr.L.Dec. P 28,635

*Szafarczyk* action to preserve her rights, and arguably had a good faith basis for believing that she was the assignee of the copyrights to the "Beaver Cartoon." Further, no rulings on the merits or substantial discovery had taken place in either the instant action, the *Szafarczyk* action, nor the Arizona arbitration when plaintiff filed the Notice of Voluntary Dismissal without prejudice. In fact, the case had only been active for four months. Under these circumstances, it can not be said that defendant is a "prevailing party" for the purposes of an award of attorney's fees.

However, even if the defendant were a "prevailing party," this Court will not exercise its discretion to award defendant attorney's fees. An award of attorney's fees is within a court's sound discretion. See*Warner Bros. Inc., 877 F.2d at 1126*. "In exercising its discretion under 17 U.S.C. § 505, a court should consider factors such as frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."*Ackerman v. Pascal,* No. 01 cv 10791, 2002 WL 31496206, at *2, (S.D.N.Y. Nov.7, 2002). The Second Circuit has given the "objective reasonableness" factor substantial weight in the calculus. See*Matthew Bender & Co., Inc. v. West Publ'g Co., 240 F.3d 116, 121 (2d Cir.2001);* *Ackerman,* 2002 WL 31496206, at *2.

**\*3** In her complaint, plaintiff asserted that defendant violated her copyrights in the "Beaver Cartoon." It is a question of fact whether Szafarczyk validly transferred his rights to Digital's predecessor in interest pursuant to the July 27, 1994 agreement, and also whether Szafarczyk had any rights to transfer to plaintiff pursuant to their June 1999 agreement. Consequently, plaintiff's complaint was not frivolous, and it was "objectively reasonable" for her to file it to preserve her rights.

Therefore, defendant's motion for attorney's fees pursuant to 15 U.S.C. § 505 and Fed.R.Civ.P. 54 is DENIED.[FN3]

> FN3. In any event, defendant's motion is likely time-barred.Fed.R.Civ.P. 54 provides that: "Unless otherwise provided by statute or order of the court, the motion [for

attorney's fees] must be filed and served no later than 14 days after entry of judgment[.]"FED. R. CIV. P. 54(d)(2)(B). Here, the Notice of Voluntary Dismissal without prejudice was so ordered on January 31, 2003 and docketed on February 4, 2003. However, defendant filed its motion for attorney's fees on March 12, 2003, more than 14 days after entry of judgment and without obtaining an extension of time to file from this Court.

S.D.N.Y.,2003.
Silberstein v. Digital Art Solutions, Inc.
Not Reported in F.Supp.2d, 2003 WL 21297291 (S.D.N.Y.), 2003 Copr.L.Dec. P 28,635

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1020549 (S.D.N.Y.)

Page 1

**C**Espada v. Rosado
S.D.N.Y.,2001.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Pedro ESPADA, Jr., Jose R. Espada, Betty Hillary,
Charlotte McDuffie, and Ethan McDuffie, Plaintiffs,
v.
David ROSADO, Freddy Perez, Jr., Roberto
Ramirez, Bronx County Democratic Committee, Guy
Velella, Bronx County Republican Committee, and
the Board of Elections in the City of New York and
Weyman Carey, President, Defendants.
**No. 00 CIV 6469 JSM, 86058.**

Sept. 5, 2001.

Nicholas J. Miglino, New York, for plaintiffs.
Flora Edwards, Robert Silverson, Paul Marks,
Assistant Corporation Counsel, New York, for
defendant.

*OPINION and ORDER*

MARTIN, District J.
**\*1** Defendants David Rosado, Freddy Perez, Jr.,
Roberto Ramirez and the Bronx County Democratic
Committee ("Defendants") move for attorney's fees
and costs pursuant to Fed.R.Civ.P. 54(d) and the
Civil Rights Attorney's Fees Awards Act, 42 U.S.C. §
1988. Their application is granted in part and denied
in part.

I. BACKGROUND

On August 29, 2000, Plaintiffs brought this suit under
42 U.S.C. § 1983 challenging the process by which
election inspectors and poll-workers are appointed by
the Democratic officials in Bronx County.
Specifically, Plaintiffs argued that loyalty to a
particular faction of the party is an unconstitutional
basis for appointment under *Elrod v. Burns*, 427 U.S.
347 (1976) and *Rutan v. Republican Party*, 497 U.S.
62 (1990). Plaintiffs sought immediate injunctive
relief replacing 880 poll-workers who were
scheduled to work in the upcoming primary election,
and appointing Plaintiffs Charlotte McDuffie, Ethan
McDuffie, and Betty Hillary as election inspectors.

Plaintiffs claimed that these individuals were denied
positions because they were not loyal to the South
Bronx Regular Democratic Club. Defendants cross-
moved to dismiss the complaint.

On September 7, 2000, this Court issued an oral
ruling denying Plaintiffs' application for immediate
injunctive relief because both Charlotte and Ethan
McDuffie had been appointed to work in the election
four days prior to the date that Plaintiffs filed their
complaint, and because Betty Hillary's application
had been delayed pending training, which she had
since undergone. The Court also denied Defendants'
cross-motion to dismiss the complaint.

In or about January 2001, Defendants served
Plaintiffs with a motion for Rule 11 sanctions. On
January 29, 2001, Plaintiffs voluntarily withdrew
their complaint with prejudice. Defendants now seek
to recover the fees that they incurred in defending
against Plaintiffs' suit and in preparing this motion
for fees.

II. DISCUSSION

Under 42 U.S.C. § 1988, "the court, in its discretion,
may allow the prevailing party ... a reasonable
attorney's fee as part of the costs" incurred in
litigating a § 1983 action. Where the prevailing party
is a defendant, that party must demonstrate that the
action was "frivolous, unreasonable, or groundless, or
that the plaintiff continued to litigate after it clearly
became so."*Colombrito v. Kelly*, 764 F.2d 122, 128
(2d Cir.1985) (quoting *Christianburg Garment Co. v.
E.E.O.C.*, 434 U.S. 412, 422 98 S.Ct. 694, 701
(1978)). The heavier burden placed upon defendants
serves to balance the policies in favor of encouraging
private citizens to vindicate constitutional rights with
those aimed at deterring frivolous or vexatious
lawsuits. See *Christianburg*, 434 U.S. at 422, 98 S.Ct.
at 701.

Before one reaches the question of frivolousness,
however, a defendant must first establish that it is in
fact the prevailing party. This is not a simple question
when the case halts before a final adjudication on the
merits. Defendants argue that they are the prevailing

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                        Page 2
Not Reported in F.Supp.2d, 2001 WL 1020549 (S.D.N.Y.)

party in this action because Plaintiffs' request for injunctive relief was denied and because Plaintiffs later voluntarily withdrew their complaint after receiving Defendants' Rule 11 motion. Plaintiffs respond that because there was no adjudication on the merits of the action, it cannot be said that any party "prevailed." The Second Circuit has not directly addressed the issue of whether a defendant seeking fees under § 1988 should be considered the prevailing party where the plaintiff voluntarily withdraws its complaint.[FN1] Other courts, however, have analyzed this question.

> FN1. In *Nemeroff v. Abelson,* 620 F.2d 339, 350 (2d Cir.1980), the Second Circuit noted in the context of a motion for costs under Rule 54(d) that "generally the defendant is not considered the prevailing party when ... there is a voluntary dismissal of the action by the plaintiff with prejudice."Five years later, in *Colombrito v. Kelly,* 764 F.2d 122, 130 (2d Cir.1985), the Court indicated that it had previously ordered that the plaintiff's request to dismiss its complaint with prejudice be granted "without prejudice" to an application for attorney's fees because the statement in *Nemeroff* indicated that "defendants might have been barred from seeking fees under § 1988."In *Colombrito,* the defendants had succeeded in having one claim dismissed before the plaintiffs voluntarily dismissed their other claims. Although it has not elaborated further, the Court has noted in passing that under the fee-shifting statutes a defendant is a prevailing party where the plaintiff obtains a voluntary dismissal of a groundless complaint (tracking the House Report language).See *McGill v. Sec'y of Health & Human Servs.,* 712 F.2d 28, 30 (2d Cir.1983).

**\*2** In *Marquart v. Lodge,* 26 F.3d 842, 851-52 (8th Cir.1994), the Eighth Circuit held that in order to merit prevailing party status, a defendant must benefit from a judicial determination going to the merits of the case. *See also Hughes v. Unified Sch. Dist.,* 872 F.Supp. 882, 884-88 (D.Kan.1994). The *Marquart* court contemplated that this means a ruling on a summary judgment motion that addresses the merits of the case, as opposed to a dismissal on

jurisdictional or statute of limitations grounds. *Marquart,* 26 F.3d at 852. *Marquart* also implicitly recognized an additional exception where the plaintiff withdrew its complaint to escape a disfavorable judicial ruling. *Id.*

Expanding on *Marquart,* the Fifth Circuit has focused on whether "the defendant can demonstrate that the plaintiff withdrew to avoid a disfavorable judgment on the merits."*Dean v. Riser,* 240 F.3d 505, 511 (5th Cir.2001). This approach calls for an examination of why the plaintiff sought a voluntary dismissal. For example, a defendant should not be considered a prevailing party if the plaintiff was merely pursuing a change in litigation strategy, such as choosing to bring its claims in state court rather than federal court, or if discovery of adverse facts or a change in the law caused the plaintiff to seek a dismissal. *See id. at 510-11.*Where, however, a "calculating" plaintiff obtains a dismissal in order to avoid an adverse ruling on the merits, the case for the defendant becomes more compelling. *See id.*Thus, a plaintiff should not be able to avoid paying attorney's fees by bringing a frivolous claim and then obtaining a dismissal before a ruling on the merits. This approach protects a defendant who has not yet had the opportunity to obtain a ruling on the merits.

In *Fernandez v. Southside Hospital,* 593 F.Supp. 840, 843-44 (E.D.N.Y.1984), the district court required that a defendant seeking fees under § 1988 either vindicate rights by obtaining a judicial ruling on the merits or demonstrate that the complaint was dismissed because it was groundless.[FN2] The court explicitly noted that a defendant who prevails on a plaintiff's motion for preliminary injunctive relief has a strong argument that it is a prevailing party. *See id.* at 843 n. 1;*see also Easily v. Norris,* 107 F.Supp.2d 1332, 1341 (N.D.Okla.2000) (denial of the plaintiff's request for injunctive relief, where complaint requested only injunctive relief, was a judicial determination on the merits).

> FN2. The *Riser* and *Fernandez* courts essentially collapse the "prevailing party" analysis with the "frivolous or meritless" complaint analysis by calling a defendant a prevailing party if it can show that the complaint was withdrawn because the plaintiff knew it was groundless. This approach has nothing to do with a logical

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1020549 (S.D.N.Y.)

definition of "prevailing party," but serves to further protect a defendant from frivolous litigation.

Consistent with the analyses contained in these cases, it is appropriate for a court confronted with a defendant's § 1988 fee request, submitted after a plaintiff has voluntarily dismissed its complaint, to examine the particular circumstances surrounding the litigation. A court should first ask whether there has been a judicial ruling on the merits in favor of the defendant; if so, then the defendant is a prevailing party as to the issues decided in its favor. If no ruling on the merits has been made, a court should conduct an inquiry into whether the complaint was voluntarily dismissed by a "calculating" plaintiff in order to avoid a judicial ruling on the merits, rather than for legitimate reasons relating to litigation strategy, new developments in the law, or discovery of additional facts. This approach, similar to that espoused in *Fernandez,* combines the approaches in *Marquart* and *Riser* in order to protect defendants who have either succeeded on the merits or defended frivolous or vexatious lawsuits. Of course, in order to merit a fee award, defendants in either category must go on to show that the complaint was frivolous or unreasonable under the *Christianburg* standard, an analysis that will in some cases overlap with the prevailing party analysis.

**\*3** Here, the Court denied Plaintiffs' motion for a preliminary injunction to replace all poll-workers in the September election and to appoint the three named plaintiffs as inspectors, in part because those individuals who were claiming that they were wrongfully denied positions had in fact been appointed. The Court also denied Defendants' cross-motions to dismiss the complaint. Thus, while Plaintiffs' application for injunctive relief was denied in part because the requested relief had already been obtained, Plaintiffs' underlying constitutional challenge survived. As a result, Defendants can only be considered prevailing parties as to the claims relating to the motion for a preliminary injunction.[FN3] *See Marquart, 26 F.3d at 851-52;McGregor v. Board of Cty. Commissioners, 130 F.R.D. 464, 467 (S.D.Fla.1990)* (defendants were a prevailing party only as to claim that was dismissed as legally insufficient), *aff'd,956 F.2d 1017 (11th Cir.1992).*

FN3. The fact that Plaintiffs dismissed their suit after Defendants served them with a Rule 11 motion does not necessarily indicate that the underlying claims were baseless or that Plaintiffs dismissed their case to escape a ruling on the merits. It may be that because the plaintiff-applicants obtained the immediate relief that they desired (jobs as election inspectors), Plaintiffs simply lost interest in litigating the weightier constitutional questions raised in the complaint. Defendants present no other evidence that Plaintiffs dismissed their suit in order to avoid an adverse judicial ruling.

Once a defendant's prevailing party status has been determined, the next question under § 1988 is whether Plaintiffs' claims were "frivolous, unreasonable, or groundless, or [they] continued to litigate after [the claims] clearly became so."*Colombrito, 764 F.2d at 128* (quoting *Christianburg Garment Co. v. E.E.O.C., 434 U.S. 412, 422 98 S.Ct. 694, 701 (1978)*).

Plaintiffs' underlying constitutional challenge was certainly not frivolous. Plaintiffs alleged, *inter alia,* that prospective election workers were told that if they wanted to be employed as election officials, they would have to join a particular Democratic club and pay dues of $25. While there was District Court authority to support Defendants' claim that intra-party affiliation may be taken into account in appointing election inspectors, *see Mirabella v. Board of Elections, 507 F.Supp. 338 (S.D.N.Y.1980),* this Court is well aware from its own experience with appellate review that the views of a district court are far from the final answer. To pursue a claim in the face of an adverse district court ruling is not "unreasonable." Moreover, *Mirabella* did not involve a claim that a payment of money to a particular club as a prerequisite for public employment violated the plaintiff's constitutional rights. Thus, even though this Court may ultimately have ruled for Defendants on the merits of Plaintiffs' claims, it cannot be said that those claims were "frivolous, unreasonable, or groundless."

Plaintiffs' request for injunctive relief presents a closer question. Two of the plaintiffs who were seeking appointment as election inspectors had already obtained the relief requested when the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1020549 (S.D.N.Y.)

complaint and order to show cause were filed, and the third (who had not attended training) had obtained relief by the time of oral argument. However, Plaintiff Jose R. Espada was a Democratic district leader who alleged that his right to designate a certain number of election officials was being wrongfully denied. Plaintiff Pedro Espada, Jr. was a candidate running in the primary for State Senator and alleged that the system of requiring the approval of certain Democratic Party officials threatened his right to a fair election. Plaintiffs thus sought the replacement of all poll-workers prior to the election. While the appointment of the other plaintiffs by the Board of Elections clearly weakened Plaintiffs' claim for immediate injunctive relief, it did not render their claims moot. Given the importance to the Espadas of having the election monitored by a fairly balanced team of poll-watchers and inspectors, it was not unreasonable for them to pursue their claims for injunctive relief.

**4** Not only were Plaintiffs' claims not frivolous, but the policies underlying an award of fees under § 1988 suggest that such an award would not be appropriate in this case. *See Christianburg, 434 U.S. at 422, 98 S.Ct. at 701.* The rights of all contestants in an election to a constitutionally fair election process is essential to our democracy. Those who believe that the entrenched party officials are abusing their power in order to help a particular candidate should feel free to seek the aid of the courts to protect their right to a fair election. To confront them with the prospect of having to pay their adversary's attorney's fees simply because the court found their claims to be without merit would unduly chill the exercise of these important constitutional rights. *See generally Wesberry v. Sanders, 376 U.S. 1, 17-18, 84 S.Ct. 526, 535 (1964).*

For the foregoing reasons, the application for attorney's fees is denied.

SO ORDERED.

S.D.N.Y.,2001.
Espada v. Rosado
Not Reported in F.Supp.2d, 2001 WL 1020549 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2006 WL 1376931 (S.D.N.Y.)

**C**TRF Music Inc. v. Alan Ett Music Group, LLC
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
TRF MUSIC INC., Plaintiff,
v.
ALAN ETT MUSIC GROUP LLC, et. al.,
Defendants.
**No. 06 Civ. 0349(PKC).**

May 18, 2006.

*MEMORANDUM AND ORDER*

CASTEL, J.
**\*1** Plaintiff, a corporation engaged in licensing music
to various entities for use in television, film, and
radio, commenced this action by filing a complaint
on January 17, 2006. Plaintiff alleged that defendant
Alan Ett Music Group ("AEMG") "sub-administered
and sub-licensed" approximately 1060 "music cues"
to which plaintiff held the rights, and, without
authorization, licensed the cues out to the other
defendants for use in television shows. As such,
plaintiff asserted a cause of action for copyright
infringement, and a second cause of action for an
accounting of all unauthorized uses of plaintiff's
music cues. On February 17, 2006, plaintiff filed an
amended complaint, eliminating diversity of
citizenship as a purported basis for jurisdiction, but
asserting the same claims against the same
defendants.

The Court granted several stipulated extensions of
time to answer or move, and, on March 14, 2006,
AEMG, by its counsel, requested, pursuant to the
Court's individual practices, a pre-motion conference
on a proposed motion to dismiss pursuant to Rule
12(b)(6), Fed.R.Civ.P. In the letter, counsel briefly
set forth AEMG's arguments for dismissal, including
that plaintiff lacked standing to assert copyright
claims as plaintiff was not the owner of the
copyrighted works and, even if plaintiff had standing,
the amended complaint failed to properly plead a
cause of action for copyright infringement, as
plaintiff failed to identify the copyrighted works at
issue, and failed to allege that copyrights on the
works had been registered. The Court ordered

plaintiff to respond to AEMG's letter, and, in a letter
dated March 21, 2006, plaintiff's counsel, while
arguing that plaintiff was, in fact, the owner of the
works for purposes of the copyright statute, conceded
that "a material portion" of the works at issue were
not registered with the United States Copyright
Office. As such, plaintiff notified the Court of its
intent to voluntarily dismiss this action without
prejudice, pursuant to Rule 41(a)(1), Fed.R.Civ.P.
Plaintiff filed a notice of voluntary dismissal that
very day.

After plaintiff dismissed the case, defendants filed
motions for attorneys' fees pursuant to 17 U.S.C. §
505. Section 505 provides that, in a copyright action,
"the court in its discretion may allow the recovery of
full costs by or against any party other than the
United States or an officer thereof. Except as
otherwise provided by this title, the court may also
award a reasonable attorney's fee to the prevailing
party as part of the costs."17 U.S.C. § 505.
Defendants contend that they are "prevailing parties"
by nature of plaintiff having voluntarily dismissed
this action without prejudice prior to defendants
filing an answer or moving against the complaint. For
the reasons outlined below, defendants' motions are
denied.

In *Buckhannon Bd. and Care Home, Inc. v. W. Va.
Dep't of Health & Human Res.,* 532 U.S. 598 (2001)-
a case neither side cited-the Supreme Court held that,
in order to be considered a prevailing party for
purposes of federal fee shifting statutes, a party must
"secure a judgment on the merits or a court-ordered
consent decree."*Id.* at 600. The Court reasoned that,
while a voluntary change in one party's conduct
might effectively result in the other party receiving
all the relief it sought in the suit, the term "prevailing
party" as used by Congress requires a "judicially
sanctioned change in the legal relationship of the
parties."*Id.* at 605. Thus, in *Buckhannon,* the Court
held that plaintiffs were not entitled to attorneys' fees
where defendants' motion to dismiss an action as
moot had been granted by the district court after the
West Virginia legislature amended state law to
eliminate provisions which plaintiffs had challenged
as violating the federal Fair Housing Amendments
Act ("FHAA"), 42 U.S.C. § 3601*etseq.,* and

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1376931 (S.D.N.Y.)

Americans with Disabilities Act ("ADA"), 42 U .S.C. § 12101 *etseq.Id.* at 601. Though plaintiffs might have been said to have accomplished what they set out to achieve in filing the suit, *i.e.*, compelled a change in state law, the Court held that they did not "prevail" in the sense that term is used in the fee-shifting provisions of the various federal statutes which contain such provisions. *Id.* at 605-06; *seealsoid.* at 620 (Scalia, J., concurring) ("One does not prevail in a suit that is never determined.").

**\*2** Though *Buckhannon* dealt with the attorneys' fee provisions under the FHAA and ADA, the Court made clear that its holding was equally applicable to the "[n]umerous federal statutes [that] allow courts to award attorney's fees and costs to the 'prevailing party.' " *Buckhannon,* 532 U.S. at 600; *seealsoJ.C. v. Reg'l School Dist. 10, Bd. of Educ.,* 278 F.3d 119, 123-24 (2d Cir.2002) (recognizing the *Buckhannon* decision "expressly signaled [the] wider applicability" of its definition of "prevailing party"). The requirements for "prevailing party" status set forth in *Buckhannon* have been applied to the fee-shifting provision under the Copyright Act. *See,e.g.,Chambers v. Time Warner, Inc.,* 279 F.Supp.2d 362, 365 n. 4 (S.D.N.Y.2003) ("Although *Buckhannon* concerned the fee-shifting provisions of the Fair Housing Amendments Act of 1988 and the Americans with Disability [sic] Act of 1990, it is clear that *Buckhannon* applies with equal force to the fee-shifting provision of the Copyright Act.") (citations omitted); *Philadelphia Stock Exch. v. Int'l Sec. Exch.,* 2005 WL 2923519 at \*2 (S.D.N.Y. Nov. 2, 2005) ("This definition of 'prevailing party' applies to that term as it is used in the Copyright Act.") (citations omitted); *Bridgeport Music, Inc. v. London Music, U.K.,* 345 F.Supp.2d 836, 838-39 (M.D.Tenn.2004).

Here, defendants cannot be said to have prevailed under the standard set forth in *Buckhannon.*Plaintiff, less than two months after commencing this action, prior to any defendant answering or moving against the complaint, voluntarily dismissed its claims without prejudice. Since defendants had not yet answered, plaintiff was entitled to do so as of right under Rule 41(a)(1), without seeking leave of Court, without so much as the Court endorsing the notice of dismissal as "So Ordered." The voluntary dismissal "lacks the judicial *imprimatur*" to render defendants prevailing parties. *Buckhannon,* 532 U.S. at 605.

Examination of some of the other copyright cases in which defendants were deemed not to have prevailed for purposes of motions for attorneys' fees demonstrates the comparative weakness of the claim for fees here. In *Philadelphia Stock Exchange,* the court had initially granted a Temporary Restraining Order ("TRO") for a period of 24 hours, preventing trading of options on a certain commodities index created by defendant, which plaintiff contended was an "unauthorized copy" of its own index. After review of the parties' submissions, the court declined to extend the TRO. Plaintiff then filed an amended complaint in which it withdrew its claim for copyright infringement. *Philadelphia Stock Exch.,* 2005 WL 2923519 at \*1. The court held that the refusal to extend the TRO and subsequent withdrawal of the copyright claim was insufficient to render defendant a prevailing party for purposes of Section 505. "[S]ince plaintiff's decision to withdraw its claim was completely voluntary and thus lacking the requisite judicial *imprimatur,* as a matter of law, defendant could not be the prevailing party on plaintiff's copyright claim and would not be entitled to attorney's fees under the Copyright Act."*Id.* at \*2.

**\*3** In *Chambers,* defendants had initially succeeded in getting plaintiffs' complaint (containing copyright and trademark, as well as certain state law claims) dismissed for failure to state a claim pursuant to Rule 12(b)(6). However, the Second Circuit reversed and remanded on the ground that the district court had improperly considered matters outside the pleadings.*Chambers,* 279 F.Supp.2d at 364 (citations omitted). On remand, after plaintiffs filed a second amended complaint, in which they withdrew all federal claims against certain defendants (the "Record Companies"), they entered into a stipulation of dismissal with the Record Companies, which stipulation recited that the action was being dismissed "for lack of subject-matter jurisdiction." [FN1]The defendants then moved for attorneys' fees under Section 505, claiming they were "prevailing parties" as to the copyright claims which had been dismissed, first by the court, and then, on remand, by stipulation. *Id.*

FN1. The Record Companies had, prior to the stipulation, moved to dismiss the complaint on subject matter jurisdiction grounds.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1376931 (S.D.N.Y.)

The court held that, while there was initially a judgment on the merits in defendants' favor, the Second Circuit's reversal precluded that judgment from being considered as a basis to deem defendants to have prevailed. *Id.* at 365. The withdrawal of the copyright claims in the second amended complaint "was a voluntary act and did not involve any judicial determination that these claims could not withstand a renewed motion to dismiss or otherwise."*Id.* Even if, in certain cases, amendment of a pleading to withdraw certain claims "may be considered the equivalent of a decision on the merits," in *Chambers,* the court recognized that it "did not exercise that degree of judicial oversight and involvement" in bringing about the amendment so as to bring it within the rule of *Buckhannon.Id.* Finally, with regard to the stipulation of dismissal of the remaining claims against the Record Companies, the court recognized that such a dismissal "included no determination whatever regarding the copyright claims," which were no longer in the case. *Id.*

Both of these cases involved significantly more judicial action prior to the ultimate dismissal than did this case, and the courts nevertheless recognized that they could not, consistent with *Buckhannon,* award attorneys' fees to the defendants. Though defendants in those cases were likely pleased after the dismissals, and likely considered themselves the victors, "it is the nature of the judicial involvement in the outcome, rather than its practical effects, that determine whether one party has prevailed."*Bridgeport Music, 345 F.Supp.2d at 839.* Here, the Court had no involvement whatsoever in the outcome of the case. Plaintiff voluntarily dismissed the action, as was its right under the Federal Rules of Civil Procedure, and I conclude on the record before me that they are not prevailing parties.[FN2]

> FN2.*Seealso,e.g.,Shady Records, Inc. v. Source Enters., Inc., 371 F.Supp.2d 394, 399 (S.D.N.Y.2005)* (denying defendant's motion for fees pursuant to discretion under statute after post-answer voluntary dismissal motion granted); *Szafarczyk v. Digital Art Solutions, Inc., 2003 WL 21297293 (S.D.N.Y. June 4, 2003)* (defendant not a prevailing party where plaintiff joined defendant's motion to stay and thereafter

voluntarily dismissed action); *Silberstein v. Digital Art Solutions, Inc., 2003 WL 21297291 (S.D.N.Y. June 4, 2003)* (defendant not a prevailing party where plaintiff had voluntarily dismissed action without prejudice four months after commencement).

Even were the defendants "prevailing parties" within the meaning of section 505, the Court would decline to award them fees under that section, which provides that any decision to do so is within the Court's discretion. *SeeFogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994).* Factors which should be considered in employing that discretion include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."*Id.* at 534 n. 19 (internal quotation marks and citation omitted). The Second Circuit has held that the "objective reasonableness" factor is to be given substantial weight, as "the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act."*Matthew Bender & Co. v. West Publ'g Co., 240 F.3d 116, 122 (2d Cir.2001).* There is no indication that plaintiff filed this suit for any improper motive. Plaintiff jumped the gun by filing suit without confirming that it had, in fact, registered all relevant copyrights, but it promptly dismissed the action. I decline to award defendants attorneys' fees.

**\*4** For the reasons set forth above, defendants' motions are DENIED. As the complaint in this action has already been dismissed, the Clerk is directed to close the case.

SO ORDERED.

S.D.N.Y.,2006.
TRF Music Inc. v. Alan Ett Music Group, LLC
Not Reported in F.Supp.2d, 2006 WL 1376931 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 2923519 (S.D.N.Y.)

C Philadelphia Stock Exchange v. International
Securitites Exchange, Inc.
S.D.N.Y.,2005.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
PHILADELPHIA STOCK EXCHANGE, Plaintiff,
v.
INTERNATIONAL SECURITIES EXCHANGE,
INC., Defendant.
No. 05 Civ. 5390(NRB).

Nov. 2, 2005.

Hara K. Jacobs, Stephen J. Kastenberg, Eric S.
Santoro, Ballard Spahr Andrews & Ingersoll, LLP,
Philadelphia, PA, for Plaintiff.
Parker H. Bagley, Renee H. Sekino, Milbank, Tweed,
Hadley & McCloy LLP, New York, NY, for
Defendant.

MEMORANDUM AND ORDER

BUCHWALD, J.
*1 Plaintiff Philadelphia Stock Exchange, Inc.
("PHLX" or "plaintiff") has brought this action
against defendant International Securities Exchange,
Inc. ("ISE" or "defendant"), alleging
misappropriation, reverse passing off, common law
unfair competition and unjust enrichment. Defendant
has counterclaimed against plaintiff for tortious
interference with contract and tortious interference
with economic gain. It has also requested attorneys'
fees as a "prevailing party" under the Copyright Act.
Plaintiff now moves to strike from defendant's
counterclaim its allegation that it is a "prevailing
party" and its prayer for attorneys' fees under the
Copyright Act. For the reasons set forth herein,
plaintiff's motion is granted.

*BACKGROUND*

On June 7, 2005, plaintiff filed a complaint against
defendant, alleging that defendant's newly created
ISE Gold Index ("HVY index") was an unauthorized
copy of its PHLX Gold/Silver Sector Index ("XAU
index"). On that basis, plaintiff asserted five claims,
including a claim for copyright infringement. In its

initial complaint, plaintiff also requested a
Temporary Restraining Order ("TRO") to prevent the
trading of options on the HVY index. On June 7,
2005, Judge Harold Baer, Jr. granted an injunction
for twenty-four hours so that he could read the
submissions of the parties, but lifted it the next day in
his June 8, 2005 Order ("Order"). In declining to
extend the TRO, Judge Baer reasoned in part that:

Plaintiff has not shown irreparable injury ... Also, any
argument that the public or industry professionals
would be confused is unavailing. The Defendants are
not using Plaintiff's name to market its index.

Likewise, Plaintiff has not shown a likelihood of
success sufficient to grant a TRO. Plaintiff alleges
that the index created by the Defendant is a "copycat"
of its own index, XAU, which tracks gold and silver
commodities. Here, the witness produced by the
Defendant made it clear it took nothing from the
Plaintiff's XAU index and rather composed its own
list of gold stocks with its own weighing formula so
that success on the merits seems unlikely[.]

(Order at 2.)

Following Judge Baer's Order, plaintiff filed its First
Amended Complaint ("Amended Complaint") on
June 24, 2005, in which it voluntarily withdrew its
claim for copyright infringement. Defendant
subsequently filed its First Amended Answer and
Counterclaim ("Amended Answer") on August 2,
2005, in which it asserted, *inter alia*, that it was the
prevailing party on plaintiff's copyright infringement
claim and thus entitled to attorneys' fees under 17
U.S.C. § 505. Plaintiff now moves, pursuant to Rule
12(f) of the Federal Rules of Civil Procedure, to
strike from defendant's counterclaim its allegation
that it is the prevailing party under the Copyright Act
and its prayer for attorneys' fees.

*DISCUSSION*

"Upon motion made by a party ... the court may order
stricken from any pleading any insufficient defense
or any redundant, immaterial, impertinent, or
scandalous matter."Fed.R.Civ.P. 12(f). Motions to

Not Reported in F.Supp.2d                                                     Page 2
Not Reported in F.Supp.2d, 2005 WL 2923519 (S.D.N.Y.)

strike are generally disfavored and if there are questions of fact or disputed questions of law, the motion should be denied. See*Salcer v. Envicon Equities Corp.* 744 F.2d 935, 938 (2d Cir.1984) (*vacated* on other grounds). Where a demand for damages is not recoverable as a matter of law, however, it may be stricken. See*Seippel v. Jenkens & Gilchrist, P.C.,* 341 F.Supp.2d 363, 383 (S.D.N.Y.2004) (citing *Nash v. Coram Healthcare Corp.,* 96 Civ. 0298, 1996 WL 363166, *4 (S.D.N.Y. June 28, 1996).

**\*2** A court may award attorneys' fees to a "prevailing party" in any civil action under the Copyright Act. 17 U.S.C.A. § 505. A "prevailing party" is a party that has been awarded some relief from the court, such as a judgment on the merits or a consent decree. See*Buckhannon Bd. and Care Home v. W. Va. Dep't of Health and Human Res.,* 532 U.S. 598, 603-04 (2001)."A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change."*Id.* at 605.Therefore, attorneys' fees will not be awarded without "a corresponding alteration in the legal relationship of the parties."See*id.*

This definition of "prevailing party" applies to that term as it is used in the Copyright Act. See*J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.,* 278 F.3d 119, 123 (2d Cir.2002) (noting that the *Buckhannon* Court "expressly signaled" that its interpretation of "prevailing party" applied generally to federal fee-shifting statutes); [FN1]*seealsoChambers v. Time Warner, Inc.* 279 F.Supp.2d 362, 365, n. 4 (S.D.N.Y.2003) ("Although *Buckhannon* concerned the fee-shifting provisions of the Fair Housing Amendments Act of 1988 and the Americans with Disability Act of 1990, it is clear that *Buckhannon* applies with equal force to the fee-shifting provision of the Copyright Act at issue here.").[FN2]

> FN1. We are troubled by defendant's failure to even mention this case in the section of its brief entitled, "The Second Circuit Court Of Appeals Has Not Extended *Buckhannon* To The Copyright Act."Def. Mem. at 9.

> FN2. Defendant's reliance on *Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994), a case pre-dating *Buckhannon,* is unavailing given

the different policy concerns implicated in that case.

Judge Baer's Order declining to extend the TRO (and plaintiff's subsequent withdrawal of its copyright claim) does not constitute the kind of court-ordered change in the legal relationship between parties that would render defendant a prevailing party. See*Buckhannon,* 532 U.S. at 604. Judge Baer's Order was not a final judgment on the merits, but rather a determination of what measures, if any, should be taken to prevent irreparable injury while claims were pending. See*Irish Lesbian and Gay Org. v. Giuliani* 143 F.3d 638, 644 (2d Cir.1998) ("Ordinarily, findings of fact and conclusions of law made in a preliminary injunction proceeding do not preclude reexamination of the merits at a subsequent trial.") (citations omitted). Therefore, even if it were assumed that plaintiff's decision to withdraw its copyright infringement claim was based in large part on Judge Baer's Order, it still would not render defendant a prevailing party. See*Chambers,* 279 F.Supp.2d at 365 (finding that an adversary is not made a prevailing party upon voluntary withdrawal of a claim when there has been no judicial determination that the claim could not stand). Additionally, the court had no other involvement in plaintiff's decision to withdraw the claim. In short, "the Court did not exercise that degree of judicial oversight and involvement in permitting the amendment to make it the equivalent of a judgment, consent decree, or other such judicial determination meeting the standards of *Buckhannon.*"See*Chambers,* 279 F.Supp.2d at 465. Therefore, since plaintiff's decision to withdraw its claim was completely voluntary and thus lacking the requisite judicial *imprimatur,* as a matter of law, defendant could not be the prevailing party on plaintiff's copyright infringement claim and would not be entitled to attorney's fees under the Copyright Act.

### CONCLUSION

**\*3** For the reasons set forth above, plaintiff's motion to strike is granted in its entirety.

SO ORDERED.

S.D.N.Y.,2005.
Philadelphia Stock Exchange v. International

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2923519 (S.D.N.Y.)

Securitites Exchange, Inc.
Not Reported in F.Supp.2d, 2005 WL 2923519
(S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 31496206 (S.D.N.Y.), 2002 Copr.L.Dec. P 28,524

---

Ackerman v. Pascal
S.D.N.Y.,2002.

United States District Court,S.D. New York.
Meyer ACKERMAN and Julian Schlossberg,
Plaintiffs,
v.
Francine PASCAL, as Executor of the Estate of
Michael Stewart, and Francine Pascal, as Trustee of
the Stuart M. Robinson Trust, Defendants.
No. 01 Civ. 10791(JSM).

Nov. 7, 2002.

Prospective producers of musical sued successors in interest of contributor to earlier stage version, seeking declaration limiting successors' copyrights. Producers withdrew suit and successors applied for attorney fees as prevailing party in copyright litigation. The District Court, Martin, Jr., J., held that successors were not prevailing parties, as withdrawal was based on conclusion that suit was not needed, rather than conclusion that producers would lose.

Application denied.

West Headnotes

**Copyrights and Intellectual Property 99 €⇒90(2)**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
         99I(J)2 Remedies
            99k90 Costs
               99k90(2) k. Attorney Fees. Most
Cited Cases
Successors in interest of contributor to earlier stage version of musical were not prevailing parties in copyright action, entitled to attorney fees, when parties seeking to revive musical instituted suit for declaratory judgment limiting scope of successor's interest, and then withdrew suit, after review of contract for stage production convinced them they could proceed without suing to establish rights. 17 U.S.C.A. § 505.

OPINION AND ORDER

MARTIN, J.
*1 On November 3, 2001, Plaintiffs Meyer Ackerman and Julian Schlossberg filed this action for a declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202. Plaintiffs want to produce the musical *Carnival* based on the script written by Helen Deutsch, the author of the original screenplay on which the stage musical *Carnival* was based. Plaintiffs sought a declaration that the rights of the Defendants, who are successors in interest to Michael Stewart, who contributed to the stage version in 1961, are limited to the contributions he made to that derivative work.

In response to the Complaint, Defendants drafted papers in support of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, on the ground that Plaintiffs' action did not present a justiciable controversy under the Declaratory Judgment Act because Plaintiffs did not have the present intent and ability to produce *Carnival.*In the course of discovery on the issues raised by the motion, Plaintiffs' counsel reviewed the 1961 contract for the stage production. Plaintiffs claim that, upon reviewing the 1961 contract, they realized that they could proceed with the production of *Carnival,* without first obtaining a judicial declaration of their right to do so. Plaintiffs thus withdrew their Complaint pursuant to Fed.R.Civ.P. 41(a)(1)(i).

Defendants now seek attorney's fees pursuant to 17 U.S.C. § 505 on the ground that Plaintiffs' action for a declaratory judgment was objectively unreasonable. Defendants argue that Plaintiffs should have reviewed the 1961 contract and other documents which were in the possession of their co-counsel before filing this action: "It was objectively unreasonable for plaintiffs to have required defendants to defend against a lawsuit that plaintiffs later decided was unnecessary, when that decision was based on documents they had previously relied upon in their complaint."

DISCUSSION

---

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2002 WL 31496206 (S.D.N.Y.), 2002 Copr.L.Dec. P 28,524

Under the Copyright Act, a district court has the discretion to "allow the recovery of full costs by or against any party other than the United States or an officer thereof ... [T]he court may also award a reasonable attorney's fees to the prevailing party as part of the costs." 17 U.S.C. § 505 (1996).

The first question to be decided is whether the Defendants are prevailing parties. There is authority for the proposition that where a complaint is dismissed without prejudice under Rule 41, the defendant cannot be considered a "prevailing party." *Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073 (7th Cir.1987). However, some courts have found that a defendant in an action dismissed without prejudice under Rule 41 may be considered a "prevailing party" for purposes of awarding attorney's fees. See*Great American Fun Corp. v. Hosung N.Y. Trading, Inc.,* No. 96 Civ. 2986, 1997 WL 129399, at *2 (S.D.N.Y. Mar.21, 1997), in which Judge Kaplan of this Court quoted with approval the following passage from the decision of then District Judge Altimari in *Fernandez v. Southside Hosp.,* 593 F.Supp. 840, 843 (E.D.N.Y.1984):

*2 Certainly, it cannot be said that a defendant always prevails when a plaintiff voluntarily dismisses his lawsuit without prejudice. It would be incorrect and illogical, however, to hold that a defendant never prevails upon such a voluntary dismissal. The answer, we believe, lies in examining the circumstances surrounding the voluntary dismissal. For example, where the complaint is clearly frivolous or there have been proceedings on the merits or substantial discovery, defendants have a stronger argument that they prevail when plaintiff voluntarily discontinues suit. On the other hand, where it has not been shown that the complaint is frivolous and there have been no proceedings on the merits nor substantial pre-trial proceedings, the argument must necessarily be less persuasive.

It may be appropriate to award fees to a defendant who has been subjected to a frivolous claim, as was the case in *Szabo* where discovery revealed that the plaintiff's copyrighted character had been copied from someone else's earlier work. Here, however, Plaintiff's claim was not frivolous and it was not abandoned because discovery revealed that it lacked merit. Rather, Plaintiffs had a good faith basis for

their claim that Defendants had been interfering with their right to produce a version of *Carnival* based upon the original copyrighted script. They dismissed the action not because they came to doubt their rights, but rather because they became convinced that they had sufficient documentation to refute any claim that Defendants might make to a potential investor in their venture, that the work could not be produced without their consent. Thus, in dismissing the action, Plaintiff could not be considered to have been admitting that, had it continued, Defendants would have prevailed.

In any event, even if Defendants could be considered the prevailing party, the Court would not exercise its discretion to award them attorneys' fees. In exercising its discretion under 17 U.S.C. § 505, a court should consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."*Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 535, 114 S.Ct. 1023, 1033, 127 L.Ed.2d 455 (1994) (internal quotation marks omitted). The Second Circuit has "accorded the objective reasonableness factor substantial weight in determinations whether to award attorney's fees."*Matthew Bender & Co., Inc. v. West Publ'g Co.,* 240 F.3d 116, 121 (2d Cir.2001). There was nothing frivolous about Plaintiffs' assertion that as successors in interest to the reversion rights to the screenplay on which *Carnival* was based, they were entitled to a declaration that they could produce the musical based on the original script. Thus, it was not objectively unreasonable for them to commence this litigation to protect their rights from interference by the Defendants.

*3 While Defendant argues that it was objectively unreasonable for Plaintiffs not to have reviewed the 1961 contract before commencing this action, that is not relevant. It makes no sense to say that a party cannot institute a lawsuit because there is too much evidence that it will prevail on the merits. Absent stronger evidence than Defendants have been able to produce here that the reason for the dismissal was a recognition by the plaintiff that it could not prevail on the merits, a party's right to discontinue an action without prejudice should not be burdened by the fear that the exercise of that right could give rise to a liability for attorneys' fees.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2002 WL 31496206 (S.D.N.Y.), 2002 Copr.L.Dec. P 28,524

For the foregoing reasons, Defendants' application for attorney's fees is denied. While the court finds Defendants' application to be without merit, it was not so frivolous as to entitle Plaintiffs to their attorneys' fees for responding to the motion. Therefore, Plaintiffs' application for attorneys' fees is also denied.

SO ORDERED.

S.D.N.Y.,2002.
Ackerman v. Pascal
Not Reported in F.Supp.2d, 2002 WL 31496206 (S.D.N.Y.), 2002 Copr.L.Dec. P 28,524

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.